**Eric B. Swartz, ISB #6396**
**JONES & SWARTZ PLLC**
623 W. Hays Street
Telephone: (208) 489-8989
Facsimile: (208) 489-9888
Email: eric@jonesandswartzlaw.com

**Steven L. Woodrow***
**Patrick H. Peluso***
**Woodrow & Peluso, LLC**
3900 E Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Email: swoodrow@woodrowpeluso.com
          ppeluso@woodrowpeluso.com

*Pro Hac Vice*

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GLORIA MITCHELL, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>WINCO FOODS, LLC, a Delaware limited liability company,<br><br>　　　　　　Defendant. | Case No. 1:16-cv-00076-BLW<br><br>**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR IN THE ALTERNATIVE STAY** |

## INTRODUCTION

This case challenges WinCo Foods, LLC's ("Defendant" or "WinCo") serial violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA" or the "Act"). In short, WinCo fails to provide "stand-alone" disclosures (as required under § 1681b of the Act) when procuring background checks on its employees and job applicants.

In an effort to dodge what amounts to clear liability—and seeking to deny Plaintiff Gloria Mitchell ("Plaintiff" or "Mitchell") her day in court—WinCo moves to dismiss on two main grounds: (1) that its disclosure complies with the FCRA and Mitchell thus hasn't sufficiently alleged a FCRA violation, and (2) that any violations weren't willful. Indeed, to hear WinCo tell it, the case should be dismissed because Plaintiff is supposedly "pursuing a windfall" and trying "to make something out of nothing" (Def. Mot. at 1, 11), or, alternatively, the case should be stayed pending a decision from the Supreme Court in the case of *Spokeo v. Robins*, which has since been issued.

Fortunately for Mitchell and the thousands of other WinCo applicants and employees who've had their FCRA rights similarly violated, WinCo's Motion to Dismiss should be denied. Plaintiff has plainly alleged facts demonstrating that WinCo willfully violated the FCRA—she need not prove willfulness to overcome a motion to dismiss. And despite WinCo's rhetoric to the contrary, Plaintiff is not seeking a windfall. Rather, she is seeking recovery for herself and all others similarly situated for WinCo's violations of clear and long-standing statutory requirements. Moreover, the Supreme Court issued its opinion in *Spokeo* after WinCo filed its Motion and the opinion in no way strips Plaintiff of her Article III standing here.

Accordingly, and as explained below, the Court should deny Defendant's Motion to Dismiss.

## STATEMENT OF FACTS

In or around April 2015, Plaintiff Mitchell applied for a job with WinCo using WinCo's online application. (Compl. ¶ 17.) Shortly thereafter WinCo hired her as a deli clerk at WinCo's Lewisville, Texas store. (*Id.* ¶ 18.) During the application process, Plaintiff was presented with an FCRA disclosure and authorization form that was riddled with extraneous information. (*See* Compl. Ex. A.) On information and belief, Plaintiff alleges that WinCo presents its disclosure form and its authorization form during the same application process and at approximately the same time, such that the forms should be read simultaneously. (Compl. ¶ 38.)

Plaintiff filed her Complaint on February 18, 2016. (Dkt. 1.) The Parties subsequently stipulated to two extensions of WinCo's responsive pleading deadline. (Dkts. 6, 8.) On April 20, 2016 Plaintiff filed her First Amended Complaint and WinCo moved to dismiss on May 9, 2016. (Dkts. 10, 12.)

## ARGUMENT

WinCo makes two arguments for why the case should be dismissed, both of which lack merit. First, WinCo argues that Plaintiff does not allege sufficient facts to state a claim for an FCRA violation because, according to WinCo, its disclosure "stands alone" and thus complies with the FCRA. Similarly, for its second argument, WinCo asserts that Plaintiff Mitchell hasn't sufficiently pleaded that its violations of the FCRA's stand-alone disclosure rule were willful. Finally, WinCo makes a request—that the case be stayed pending a ruling in *Spokeo*— that is now moot. The Supreme Court has issued its decision in *Spokeo*, and it has no impact on Plaintiff's standing here.

As such, and as explained more fully below, Mitchell sets forth specific facts that, if proven, would show WinCo willfully violated the FCRA. WinCo's Motion to Dismiss should be denied accordingly.

## A. Mitchell has Sufficiently Alleged that WinCo's Disclosure Violates the FCRA.

"On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Johnson v. Lucent Tech. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). In deciding a Rule 12(b)(6) motion to dismiss, "the Court uses Plaintiff's Complaint to establish the factual background to decide this motion." *Queen's Med. Cntr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp. 2d 1131, 1138 (D. Haw. 2013) (citing *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir.2012)). The court must draw all reasonable inferences in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1043 n. 2 (9th Cir. 2008). While federal pleading standards require more than "formulaic recitation of the elements" of a claim or "naked assertions," a complaint survives dismissal where it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555-57 (2007)). The Complaint readily satisfies federal pleading standards.

Even though Defendant states that "[a] simple review of Plaintiff's amended complaint and the attached Exhibits shows that she has failed [her] pleading burden" (Def. Mot. at 2), the opposite is true. Plaintiff's Complaint plainly shows that she has sufficiently alleged WinCo violated the FCRA in at least two ways.

> **1. WinCo's disclosure improperly contains information regarding the nature and scope of an investigative consumer report that may be procured, such that the disclosure cannot be said to "stand-alone" as required.**

First, WinCo's disclosure violates the FCRA because it combines the disclosure and authorization with extensive information about the nature and scope of an <u>investigative consumer report</u> that may be procured. This has been improper for 17 years. The FCRA provides that:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists ***solely of the disclosure***, that a consumer report may be obtained for employment purposes . . . .

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

> The term "consumer report" is defined in the FCRA as:
>
> . . . any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumers' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or excepted to be used or collected in whole or in part for the purpose of serving as a factor establishing the consumer's eligibility for . . .
>
>   (B) employment purposes . . . .

15 U.S.C. § 1681a(d)(1). An "investigative consumer report," however, is something different entirely. It is separately defined under the Act as:

> a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained ***through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information***.

*See* 15 U.S.C. § 1681a(e) (emphasis added).

Not only do "consumer reports" and "investigative consumer reports" have different meanings under the Act, the FCRA includes distinct disclosure requirements for each type of report. That is, 15 U.S.C. § 1681d(a) and 15 U.S.C. § 1681d(b) set forth the requirements for disclosing that investigative consumer reports may be procured and for disclosing the nature and

scope of such investigative consumer reports. On the other hand, 15 U.S.C. § 1681b(b)(2)(i)—the relevant FCRA section in this case—provides that:

> a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, **in a document that consists solely of the disclosure**, that a consumer report may be obtained for employment purposes." (emphasis added.)

The FTC has provided clarification and guidance on the interplay of these separate disclosures.[1] Specifically, the FTC's March 25, 1999 "Advisory Opinion to Willner" ("Willner Advisory Opinion") states:

> [W]e [previously] opined that the employer could also include the authorization required by Section [1681b(b)(2)(A)(ii)] because the authorization would contain limited verbiage and would enhance the Section [1681b(b)(2)(A)(i)] disclosure, rather than detract from it. We believe that a limited Section [1681d(a)] disclosure would also be permissible, on the same theory. For example:
>
>> A consumer report may be obtained on you for employment purposes. It may be an "investigative consumer report" that includes information as to your character, general reputation, personal characteristics and mode of living. You have a right to request disclosure of the nature and scope of the report, which involves personal interviews with sources such as your neighbors, friends, or associates.
>
> The first sentence (the general consumer report disclosure for employers) sets forth the disclosure without elaboration, and the second and third sentences (the initial investigative consumer report disclosure) are sufficiently brief and in accord with

---

[1] Courts routinely look to FTC Opinions when interpreting the FCRA. *See, e.g.*, *Case v. Hertz Corp.*, No. 15-CV-02707-BLF, 2016 WL 1169197, at *3, 4 (N.D. Cal. Feb. 26, 2016) (relying on FTC Advisory Opinions to Coffee, Leathers, Hauxwell, and Steer); *Singleton v. Domino's Pizza, LLC*, No. CIV.A. DKC 11-1823, 2012 WL 245965, at *9 (D. Md. Jan. 25, 2012) (relying on FTC Opinions and stating that "while the *Safeco* Court concluded that FTC advisory opinions did not constitute *"authoritative* guidance" on the FCRA . . . numerous courts interpreting the FCRA after *Safeco* have found such opinion letters *persuasive*" (emphasis in original)(citations omitted); *Milbourne v. JRK Residential Am., LLC*, 92 F. Supp. 3d 425, 431 (E.D. Va. 2015) (relying on FTC Advisory Opinions and approving of Singleton's reasoning by stating "[t]he approach taken in *Singleton* is a sound and reasonable one because it abides by the rule of *Safeco* while considering the views of the FTC staff to be informative, but not to be entitled to the deference that is owed to a formal Commission Opinion.").

>the first sentence that we would consider it as emphasizing the Section [1681b(b)(2)(A)(i)] disclosure, and thus be permissible under that section on the theory set forth in the Steer letter. **However, a Section [1681d(b)] notice setting forth the nature and scope of the investigation would of necessity be much more detailed and would likely be held to overshadow [the 1681b(b)] disclosure in violation of [1681b(b)(2)(A)(i)]. Therefore, we believe that an employer may combine only a very limited Section [1681d] notice with the general Section [1681b(b)(2)(A)(i)] notice without running afoul of the latter section's requirement that the required disclosure be in a stand-alone document.** The surest way for an employer to comply, of course, would be to provide the Section [1681b(b)(2)(A)(i)] notice and the Section [1681d] notice in separate documents.

*See* Willner Advisory Opinion, *available at* https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-willner-03-25-99 (last visited June 1, 2016).

Ignoring such guidance, WinCo's disclosure form contains information regarding the nature and scope of an investigative consumer report that may be procured such that the disclosure mandated by 15 U.S.C. § 1681b(b)(2)(i) cannot be said to "stand alone" as required. WinCo's disclosure states, in relevant part:

>The report may contain information bearing on your character, general reputation, personal characteristics, mode of living and/or credit standing. The information that may be included in your report include: *social security number trace, authorization to work checks, criminal records checks, civil record checks, financial information and credit checks (Experian U.S. Credit), federal record checks, public court records checks, driving records checks, drug tests, physical tests, education records checks, employment history verification, reference checks, sanction, licensing, and certification checks.* The information contained in the report will be obtained from private and/or public record sources, including sources identified by you in your job application or through interviews or correspondence with your past or present coworkers, neighbors, friends, associates, current or former employers, educational institutions or other acquaintances. You have the right, upon written request made within a reasonable time after receipt of this notice, to request disclosure of the nature and scope of any investigative consumer report from the Company.

(*See* Compl. Ex. A) (Emphasis in original). This disclosure contains far more information about an investigative consumer report than the FTC indicated may be included without causing the

disclosure to violate 1681b(b)(2)(A)(i)'s requirement that the consumer report disclosure "stand-alone." Again, the FTC's sample permissible clause states:

> A consumer report may be obtained on you for employment purposes. It may be an "investigative consumer report" that includes information as to your character, general reputation, personal characteristics and mode of living. You have a right to request disclosure of the nature and scope of the report, which involves personal interviews with sources such as your neighbors, friends, or associates.

(*See* Willner Advisory Opinion.) Simply put, WinCo's disclosure contains excessive extraneous information and cannot be said to "stand alone." It is far more detailed and overshadows the 1681b(b) disclosure.

Seeking to skirt around this FTC guidance, WinCo protests its applicability, characterizing its Section 1681d(b) description of the nature and scope of an investigative consumer report as a "minimal, one sentence explanation." (Def. Mot. at 12.) While it is technically accurate to claim that the Section 1681d description contained in WinCo's consumer report disclosure is one sentence long, the sentence consists of fifty-nine (59) words, lists seventeen (17) different categories of information that may be included in its investigative consumer report, and continues on for several lines. Thus, characterizing this investigative consumer report description as a "minimal inclusion" (Def. Mot. at 12) is both spurious and simply contrary to the well-pleaded allegations.

As the FTC's Willner Advisory Opinion indicates, the Section 1681d(b) notice setting forth the nature and scope of the investigation that WinCo included in its consumer report disclosure is extensive and detailed—it plainly overshadows the consumer report disclosure. WinCo has failed to heed the FTC's warning that "an employer may combine only a very limited [investigative consumer report] notice with the general [consumer report] notice without running

afoul of the . . . requirement that the required [consumer report] notice be in a stand-alone document." *See* Willner Advisory Opinion.

Thus, far from an attempt "to make something out of nothing" as WinCo claims (Def. Mot. at 11), Plaintiff's allegations regarding WinCo's inclusion of an extensive investigative consumer report notice within its consumer report disclosure are well-pleaded and demonstrate that WinCo has violated the FCRA. At the very least, the allegations are such that a fact finder can plausibly determine at an appropriate time that the investigative consumer report notice overshadows the consumer report notice. Defendant's Motion to Dismiss must, therefore, be denied.

### 2. WinCo's disclosure is presented at approximately the same time as its authorization form and the forms must be read simultaneously

The second way WinCo's disclosure runs afoul of the FCRA is that the disclosure is presented, on information and belief, during the same application process and at approximately the same time, such that the forms must be read simultaneously. (Compl. ¶ 38.) Because Defendant's disclosure and authorization forms must be viewed as one document, and because the combined form plainly contains extraneous information, WinCo is in violation of the FCRA.

To be sure, Defendant's "Authorization for Background Check" form is riddled with extraneous information, including but not limited to: (1) a statement that "I understand that nothing herein shall be construed as an offer of employment or contract for services," (2) an acknowledgment that the consumer "consent[s] to the preparation of background reports by TalentWise…," (3) a statement that "I have received a copy of the 'Summary of Your Rights Under the Fair Credit Reporting Act' and any applicable state or local notices of rights provided with these documents," (4) a statement that "I have had the opportunity to review my rights," (5) a certification that the information provided is true, accurate, and complete, including

information regarding the consumer's IP Address, (6) an agreement that faxed, photocopied, or electronic forms will be valid, and (7) an authorization for a host of persons, agencies, and institutions to furnish information to the consumer reporting agency, including schools, record/data repositories, courts, motor vehicle record agencies, past or present employers, the military and other individuals. (*See* Ex. A.)

> Analyzing similar allegations, the Middle District of Florida has held:
>
> Plaintiff alleges that Whole Foods intends for the disclosure form to satisfy 15 U.S.C. § 1681(b)(2)(A)(i), but the simultaneous presentation of the consent form to the applicant "renders [the disclosure form] meaningless in terms of FCRA compliance." "The mere fact that the documents are both single page documents does not *ipso facto* make Defendant's [disclosure form] compliant with the FCRA." Plaintiff alleges that the consent form is both an authorization to procure a consumer report and a release, violative of the FCRA, because both the disclosure and consent forms must be read and reviewed at the same time
>
> ******************************************************************
>
> In the instant case, Plaintiff alleges that the disclosure form and the consent form were in fact one document or application that was read and signed by the applicant at the same time. Thus, alleges Plaintiff, the inclusion of the waiver along with the disclosure violated the FCRA. **While Defendant asks this Court to consider on a motion to dismiss that the documents are free-standing, with the waiver appearing in a separate document, this Court cannot consider facts outside the complaint or its attachments. Based on the allegations, with all inferences drawn in favor of Plaintiff, if both the disclosure and the consent forms combined and read as one document with the waiver and release included simultaneously with the disclosure, the complaint states a claim for relief.** *See Avila* (denying motion to dismiss where plaintiff signed two documents, one including a statement that the employer will obtain a background report and the other containing both an authorization to obtain background and a liability release). As such, the complaint withstands dismissal.

*Speer v. Whole Food Mkt. Grp., Inc.*, No. 8:14-CV-3035-T-26TBM, 2015 WL 1456981, at *1, *3 (M.D. Fla. Mar. 30, 2015) (emphasis added). Far from being "inapposite" (Def. Mot. at 11), the *Speer* decision is directly on point. There, as here, the Plaintiff alleged that two forms were presented at the same time and must be read together. And there, as here, the combined form

contained extraneous information such that the disclosure cannot be said to "stand-alone" as required.

Though WinCo takes issue with the fact that the *Speer* case dealt with a situation where the combined form contained a liability waiver and that no such waiver is present here (Def. Mot. at 11), this is a distinction without a difference. The inclusion of a liability waiver is a common way that employers run afoul of the FCRA's stand-alone disclosure requirement, but it is surely not the only way they do so. *See, e.g.*, *Case v. Hertz Corp.*, No. 15-CV-02707-BLF, 2016 WL 1169197, at *5 (N.D. Cal. Feb. 26, 2016) ("The Court finds that Case's allegations are sufficient to state a claim. The form includes, among other things, information regarding time frames within which the applicant must challenge the accuracy of his or her consumer report, disclosures regarding the circumstances under which the applicant may receive a copy of the report, an acknowledgement that 'all employment decisions are based on legitimate non-discriminatory reasons,' and a state-specific disclosure unrelated to Case's potential employment in California, together constitute extraneous information in violation of the FCRA stand-alone requirement"); *see also Miller v. Quest Diagnostics,* 85 F. Supp. 3d 1058, 1060 (W.D. Mo. 2015) (holding that the applicable disclosure form did not "stand alone" because it included state-specific information and a statement that the consumer "fully understand[s] that all employment decisions are based on legitimate non-discriminatory reasons").

As stated above, and as is evident from a review of Exhibit A to the Complaint, WinCo's combined form contains at least seven (7) categories of extraneous information. The Court should not be distracted by WinCo's argument that no liability waiver is present—there is more than one way for the form to not "stand alone."

WinCo also relies on two cases—*Newton v. Bank of America*, 2015 WL 1043507 (C.D. Cal. May 12, 2015) and *Coleman v. Kohl's Dep't Stores*, 2015 U.S. Dist. LEXIS 135746 (N.D. Cal. Oct. 5, 2015)—for the proposition that it did not violate the FCRA. Both cases are readily distinguishable. In *Newton*, the Plaintiff argued that the consumer report disclosure was not "clear and conspicuous" because it was included in the job application packet and, therefore, applicants were distracted by other information. *Newton*, 2015 WL 10435907 at *7. The Court—analyzing the argument in the context of summary judgment—agreed. *Id.* at *7-*8. Here, Plaintiff has pleaded that the disclosure form and the authorization form are presented at approximately the same time, "such that the forms must be read simultaneously" and that because "the combined form plainly contains extraneous information, WinCo is in violation of the FCRA". (Compl. ¶¶ 38, 39.) Arguing otherwise simply disagrees with Plaintiff's Complaint, which is not a proper basis for dismissal of the pleadings on a Rule 12(b)(6) motion.

In *Coleman*, the Plaintiff argued that a "Consent and Disclosure Form" and the "Employment Application" were not separate documents. The Court held that "the Employment Application appears to serve a different and distinct function. It requests certain employment-related information about the applicant such as basic identifying information, criminal history, and authorization and release for the company to 'contact...employment references and personal references, as well as education institutions.' In contrast, the Consent and Disclosure Form is formatted in portrait, and bears a distinct title and form code. **Neither party disputes that the purpose of this document relates to consumer reports only**." *Coleman*, 2015 WL 5782352, at *5 (emphasis added). Here, of course, WinCo's authorization and disclosure forms both relate to consumer reports only—the headings are "Authorization for Background Check" and

"Disclosure for Background Check". (*See* Compl. Ex. A.)[2] At the end of the day, Plaintiff has alleged that the "Authorization for Background Check" and "Disclosure for Background Check" forms are presented so closely together that the forms should be construed as one and that the combined form contains extraneous information. This is enough to survive an attack on the pleadings.

WinCo's Motion to Dismiss on such grounds must, therefore, be denied, as well.

**B.     Mitchell has sufficiently pleaded that WinCo's FCRA Violations Were Willful.**

Next, WinCo—relying exclusively on *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47 (2007)—contends that Plaintiff has not sufficiently alleged willfulness. (Def. Mot. at 6-8.) While Plaintiff does not dispute that *Safeco* established guidelines for analyzing willfulness under the FCRA, a bevy of opinions after *Safeco* (none of which are cited by Defendant) have found similar pleadings to be sufficient.

At this stage of the litigation, Plaintiff "simply must allege sufficient facts to demonstrate the alleged violation, as pled, amounts to an objectively unreasonable reading of the statute." *Moore v. Rite Aid Hdqtrs Corp.*, No. CIV. A. 13-1515, 2015 WL 3444227, at *10 (E.D. Pa. May 29, 2015) (evaluating a defendant's motion to dismiss in a substantially-similar FCRA case that raised a similar argument regarding willfulness and explaining that the attack improperly "go[es] to the merits of plaintiff's case".) The decision in *Moore* is instructive, where the court held:

---

[2] Moreover, it's worth noting that the *Coleman* Court appears to have misconstrued the issues presented in *Speer*. The *Coleman* Court stated that "In [Speer], the employer presented a release of liability with either a disclosure or authorization provision together *in the same document*." *Coleman*, 2015 WL 5782352, at *6. In *Speer*, of course, the Plaintiff alleged (as Mitchell does here) that separate documents were simultaneously presented and thus the documents must be construed as only one document, which "renders [the disclosure form] meaningless in terms of FCRA compliance". *Speer*, 2015 BWL 1456981, at *1.

Plaintiff's allegation that the disclosure was placed on a form with additional liability provisions and waivers is enough to state a plausible claim of willfulness.

Looking first to the plain language of § 1681b(b)(2)(A), the Court notes that the statute unambiguously provides that the disclosure must be "clear and conspicuous" and set forth "in a document that consists *solely* of the disclosure." 15 U.S.C. § 1681b(b)(2)(A) (emphasis added); *Reardon,* 2013 WL 6231606 at *10 (noting that § 1681b(b)(2)(A) "is unambiguous and not susceptible of differing interpretations."). The only exception to the requirement that the disclosure be provided on a stand-alone form is that "the required written authorization may be made on the same document" as the disclosure. *Reardon,* 2013 WL 6231606 at *10. As the district court noted in *Reardon v. ClosetMaid Corp.,* the language of the statute provides a "clear prohibition on an employer's inclusion of *any* additional provision, excluding the authorization itself, in the disclosure form." *Id.* (emphasis added).

The FTC has also advanced this understanding of § 1681b(b)(2) (A) in its administrative guidance. In an Opinion Letter dated June 12, 1998, the FTC advised against including material—particularly a waiver of consumer rights provision—other than the disclosure and authorization in the form, as the inclusion of the additional language would violate the FCRA. Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998), 1998 WL 34323756 (F.T.C.), 1. Other FTC opinion letters have advised that the disclosure form "should include *nothing more* than the disclosure and the authorization for obtaining a consumer report," Letter from Cynthia Lamb, Investigator, Div. of Credit Practices, Fed. Trade Comm'n, to Richard Steer, Jones Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C.), 1 (emphasis added), and that "[n]othing else may appear on the document that detracts from the disclosure." Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Harold Hawkey, Employers Assoc. of N.J. (Dec. 18, 1997), 1997 WL 33791224 (F.T.C.), 1 n. 3.

In this case, plaintiff alleges that defendant provided the required disclosure on forms that included additional language, such as releases of liability and waivers. At the time of the alleged violation, both the text of the statute and the available agency guidance demonstrated that the inclusion of information on the form apart from the disclosure and related authorization violates § 1681b(b)(2)(A). Taken as true, plaintiff's allegations are sufficient to show that defendant's conduct was objectively unreasonable in light of the clear state of the law and thus plaintiff has stated a plausible claim for a willful violation of § 1681b(b)(2)(A).

*Moore*, 2015 WL 3444227, at *11-12. *See also Harris v. Home Depot U.S.A., Inc.*, 114 F. Supp. 3d 868, 870 (N.D. Cal. 2015) (finding that willfulness was sufficiently alleged and stated that "[t]his is particularly true given the existence of an FTC opinion letter at the time of Home Depot's conduct which explained that the conduct is unlawful"); *Hertz Corp.*, 2016 WL 1169197, at *5 (finding that the "facts, coupled with the FCRA's longstanding history and guidance from the FTC, show that Hertz acted willfully when it failed to distribute its FCRA disclosures and authorizations 'in a document that consists solely of the disclosure.'"); *Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825, at *3 (N.D. Ill. July 17, 2014) ("Avila alleges that NOW willfully breached the FCRA because it 'violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2)' and that its conduct is 'contrary to long-standing regulatory guidance and case law.' . . . These allegations are sufficient to allege a knowing or reckless violation of the FCRA, which are required for a finding of willfulness"); *Speer*, 2015 WL 1456981, at *4 ("The allegations that Defendant had access to legal advice and guidance from the Federal Trade Commission, yet it knew that its conduct was inconsistent with that guidance and the plain terms of the statute, are sufficient to withstand attack at this stage of the proceedings on a motion to dismiss.").

Applied here, in addition to pleading that the disclosure contained extraneous information such that it did not stand alone, Plaintiff specifically details how WinCo's violations were willful in light of WinCo's ability to retain counsel and on-point FTC guidance.[3] (*See* Compl. ¶¶ 35, 36, 42.) Such allegations are sufficient to negate a finding, as urged by WinCo, that it didn't act willfully as a matter of law, and Defendant's Motion to Dismiss on such grounds must be denied.

---

[3] Indeed, one of the factors enumerated in *Safeco* is whether a defendant has "guidance from . . . the Federal Trade Commission (FTC) that might have warned it away from the view it took". 551 U.S. at 70.

**C.      WinCo's Request for a Stay is Moot—the *Spokeo* Case has been Decided and the Opinion does not Impact Plaintiff's Standing in this Case.**

The remainder of WinCo's Motion to Dismiss focuses on its alternative request for a stay pending the Supreme Court's decision in *Spokeo v. Robins*. (Def. Mot. at 13-18.) The *Spokeo* decision was issued on May 16, 2016, however, and the decision does not impact Plaintiff's standing in this case.

*Spokeo* concerned a data aggregator that collects information about individuals from various sources and makes that data available for purchase on its website, www.spokeo.com. (*See Robins v. Spokeo, Inc.*, No. 2:10-cv-05306 (C.D. Cal.), Dkt. 40.) The crux of the *Spokeo* case is the claim that Spokeo is a consumer reporting agency and that it failed to, as required by the statute, maintain reasonable procedures to ensure the maximum possible accuracy of the information it published about consumers, including Robins. (*See id.*) Spokeo argued that even if the information it held about Robins was inaccurate, that was insufficient to confer Article III standing because, among other reasons, the information about Robins on Spokeo's website showed he was better off financially than he claimed to be and because Robins never alleged that he was denied employment or insurance due to Spokeo's inaccurate information. According to Spokeo, a bare violation of the FCRA alone could not confer standing. The district court granted Spokeo's motion to dismiss for lack of standing, but the Ninth Circuit reversed on the grounds that Robins had alleged a violation of the statute, which Congress was empowered to enact. *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014).[4] Subsequently, the Supreme Court granted certiorari to consider the question of "whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the

---

[4] Plaintiff's counsel in this case, Steven Woodrow, successfully argued the *Spokeo* appeal in the Ninth Circuit. As the matter remains with his prior firm, he is no longer an attorney on the case.

jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute."

"The Supreme Court handed down its decision in *Spokeo* on May 16, 2016, and in doing so, declined to decide the key standing issue." *Errington v. Time Warner Cable Inc.*, No. 215CV02196RSWLDTB, 2016 WL 2930696, at *3 (C.D. Cal. May 18, 2016). As *Errington* explains:

> Rather, the Court threw out the Ninth Circuit's ruling in favor of the plaintiffs, reasoning that the Ninth Circuit's standing analysis was 'incomplete.' *Id.* at * 1. Justice Alito, writing on behalf of the majority, noted that the Court took "no position on the correctness of the Ninth Circuit's ultimate conclusion." *Id.* at *2. The Ninth Circuit's ruling was vacated and remanded for further analysis of the standing issue. Consequently, this Court cannot speculate as to when the standing issue in *Spokeo* will be resolved, or whether the issue will be resolved with such expedience sufficient to warrant a stay. For this reason, the Court declines to grant Defendant's Motion to Stay the action pending resolution of the standing issue in *Spokeo*.

(*Id.*) As the *Errington* Court correctly summarized, *Spokeo* was simply remanded back to the Ninth Circuit for a further analysis because "[t]he Ninth Circuit's analysis focused on the second characteristic [of an injury-in-fact analysis] (particularity), but it overlooked the first (concreteness). We therefore vacate the decision below and remand for the Ninth Circuit to consider *both* aspects of the injury-in-fact requirement." *Spokeo, Inc. v. Robins*, No. 13-1339, 2016 WL 2842447, at *3 (U.S. May 16, 2016)[5]. Thus, the *Spokeo* decision did not alter Article III standing and instead held that the Ninth Circuit simply conducted an incomplete analysis.

To the extent the Court is considering a stay while *Spokeo* is re-decided by the Ninth Circuit or wishes to consider any aspect of Plaintiff's standing in light of *Spokeo*, Plaintiff

---

[5] Justice Ginsburg's dissent, to which Justice Sotomayor joined, stated "I . . . see no utility in returning this case to the Ninth Circuit to underscore what Robins' complaint already conveys concretely: Spokeo's misinformation 'cause[s] actual harm to [his] employment prospects.'" *Spokeo*, 2016 WL 2842447, at *16.

requests leave to file a more fulsome memorandum on this issue setting forth the "concreteness" of her claimed injuries, which are evident given her claim that she has been denied documents, information and paperwork that Congress has decided she has a right to receive.

## CONCLUSION

The Court should deny Defendant's Motion to Dismiss. Plaintiff pleads sufficient facts to make a plausible showing that WinCo violated the FCRA and that its violation was willful. Likewise, no stay is necessary as Plaintiff's injuries are sufficiently "concrete" here. As such, this Court should deny Defendant's Motion, permit Plaintiff her day in Court, and award such additional relief as it deems necessary and just.

Respectfully Submitted,

Dated: June 3, 2016

**GLORIA MITCHELL**, individually,
and on behalf of all others similarly situated,


By:   /s/ Patrick H. Peluso


Eric B. Swartz
**JONES & SWARTZ PLLC**
623 W. Hays Street
Telephone: (208) 489-8989
Facsimile: (208) 489-9888
Email: eric@jonesandswartzlaw.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: (720) 213-0675
*Counsel for Plaintiff and the Putative Class*

*pro hac vice

## CERTIFICATE OF SERVICE

I am a resident of the State of Colorado, over the age of eighteen years old, and am not a party to this lawsuit. My business address is 3900 E. Mexico Avenue, Suite 300, Denver, Colorado 80210. I HEREBY CERTIFY that on the 3rd day of June 2016, I filed the foregoing **RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR IN THE ALTERNATIVE STAY** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Rick D. Roskelley, Attorney for Defendant WinCo Foods, LLC. Mr. Roskelley's email address is rroskelley@littler.com.

I declare that the foregoing is true and correct.

/s/ Patrick H. Peluso