**Eric B. Swartz, ISB #6396**
**JONES & SWARTZ PLLC**
623 W. Hays Street
Telephone: (208) 489-8989
Facsimile: (208) 489-9888
Email: eric@jonesandswartzlaw.com

**Steven L. Woodrow***
**Patrick H. Peluso***
**Woodrow & Peluso, LLC**
3900 E Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Email: swoodrow@woodrowpeluso.com
        ppeluso@woodrowpeluso.com

*Pro Hac Vice*

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GLORIA MITCHELL, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>WINCO FOODS, LLC, a Delaware limited liability company,<br><br>　　　　　　Defendant. | Case No.  1:16-cv-00076-BLW<br><br>**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS [ARTICLE III STANDING] (DKT. 20)** |

## INTRODUCTION

This case challenges WinCo Foods, LLC's ("Defendant" or "WinCo") serial violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA" or the "Act"). In short, WinCo fails to provide "stand-alone" disclosures (as expressly required under § 1681b of the Act) when procuring background checks on its employees and job applicants like Plaintiff Gloria Mitchell ("Plaintiff" or "Mitchell"). In the process, WinCo deprives employees and applicants of information that Congress specifically mandated they receive before their employers pry open their personal histories.

Following up on its 12(b)(6) Motion to Dismiss (dkt. 12), WinCo now takes a second shot at escaping liability on the pleadings. This time, WinCo asserts that Mitchell lacks Article III standing based on a misreading of the Supreme Court's recent decision in *Spokeo v. Robins*, 136 S. Ct. 1540 (May 16, 2016).

Fortunately for Mitchell—and all other WinCo applicants and employees who've had their FCRA rights similarly violated—WinCo's latest Motion to Dismiss should be denied. Plaintiff has plainly alleged both a concrete and a particularized harm and *Spokeo* in no way strips Plaintiff of standing here. This is because *Spokeo* broke no new ground—the Supreme Court's decision merely reiterated that plaintiffs like Mitchell must allege an injury that is concrete and particularized and restated the long-held principles that "intangible injuries can nevertheless be concrete" and that "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo*, 136 S. Ct. at 1549.

By procuring background checks on Mitchell and other employees and applicants without providing a proper disclosure as required by the FCRA, WinCo caused two basic—and undeniably concrete—injuries: informational injury and invasion of privacy. These are harms that have long been recognized at common law and are sufficient for standing purposes, both before and after *Spokeo*. Accordingly, and as explained below, the Court should find that Plaintiff has standing to pursue her claim in this Court and deny Defendant's Motion to Dismiss.

## STATEMENT OF FACTS & PROCEDURAL BACKGROUND

In or around April 2015, Plaintiff Mitchell applied for a job with WinCo using WinCo's online application. (Compl. ¶ 17.) Shortly thereafter WinCo hired her as a deli clerk at WinCo's Lewisville, Texas store. (*Id.* ¶ 18.) During the application process, Plaintiff was presented with an FCRA disclosure and authorization form that was riddled with extraneous information. (*See* Compl. Ex. A.) WinCo presents its disclosure form and its authorization form during the same application process and at approximately the same time such that the forms must be read together. (Compl. ¶ 38.)

Mitchell filed her Complaint on February 18, 2016. (Dkt. 1.) The Parties stipulated to two extensions of WinCo's pleading deadline. (Dkts. 6, 8.) On April 20, 2016 Plaintiff filed her First Amended Complaint and WinCo moved to dismiss for failure to state a claim on May 9, 2016. (Dkts. 10, 12.) Plaintiff filed her Opposition on June 3, 2016 and Defendant replied July 5, 2016. (Dkts. 14, 19.) Seizing upon *Spokeo*, Defendant then filed the instant Motion on July 18, 2016. (Dkt. 20.) Both motions are set for hearing on October 18, 2016. (*See* Dkt. 22.)

## ARGUMENT

WinCo seeks dismissal under Rule 12(b)(1) because, supposedly, Plaintiff has failed to allege an injury-in-fact. WinCo's Motion should be denied. The Supreme Court's *Spokeo*

decision did not alter the Article III standing test and Plaintiff has sufficiently alleged concrete and particularized injuries-in-fact. As such, and as explained more fully below, Mitchell has standing to proceed past the pleadings stage.

**A.      Plaintiff Has Standing—By Failing to Provide a Stand-Alone Disclosure as Required by the FCRA WinCo Has Caused Plaintiff Particularized and Concrete Harm under *Spokeo*.**

      **1.      The FCRA was enacted to protect employee and applicant privacy rights.**

"Congress enacted the FCRA in 1970 to . . . protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Congress was particularly concerned with the impact that third-party data collection has on job seekers. "Employers were placing increasing reliance on consumer reporting agencies to obtain information on the backgrounds of prospective employees," and "Congress found that in too many instances agencies were reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2001).

To ensure applicants and employees understand their rights, the FCRA imposes specific disclosure requirements on companies who wish to procure a background checks. *See* 15 U.S.C. § 1681b(b)(2). To that end, the FCRA requires that the information disclosed must be provided to the applicant or employee "in a document that consists solely of the disclosure." 15 U.S.C. § 1681(b)(b)(2)(A). Indeed, it is actually a federal crime to obtain a job applicant's background check without the job applicant's consent. *See* 15 U.S.C. § 1681q ("Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be filed under title 18, imprisoned for not more than 2 years, or both"). This is plainly a problem that Congress took very seriously.

Such requirements were enacted by Congress in part due to the "concern[]" that "permit[ting] employers to obtain consumer reports pertaining to current and prospective employees . . . may create an improper invasion of privacy." S. Rep. 104-185 (1995), at 35. Thus, the FCRA established "new safeguards to protect the privacy of employees and job applicants," and Congress saw the enactment of the FCRA's background check disclosure requirements as "an important step to restore employee privacy rights." 140 Cong. Rec. H9797-05 (Statement of Congressman Vento); *see also* 138 Cong. Rec. H9370-03 (1992) (Statement of Congressman Wylie) ("[the FCRA] would limit the use of credit reports for employment purposes, while providing current and prospective employees additional rights and privacy protections"); 116 Cong. Rec. 36570 (1970) (Statement of Congressman Sullivan) ("with the trend toward . . . the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinkable machine which can literally ruin his reputation without cause, and make him unemployable"); S. Rep. No. 517, 91st Cong., 1st Sess. 2 (discussing "the right of a consumer to be informed of investigations into his personal life").

The House Committee, discussing to-be-enacted amendments to the FCRA, including Section 1681b(b)(2)—the Section at issue in this case—stated that its requirements:

> Prohibit a person from procuring a consumer report on a consumer for employment purposes unless it has been clearly and conspicuously disclosed to the consumer that the report may be obtained for such purposes and the consumer affirmatively consents, in writing, to the procurement of the consumer report. The disclosure must be made in writing in a document that consists solely of the disclosure. Consequently, an employer could not make the disclosure in either a job application or an employee manual . . .

H.R. Rep. No. 103-486, 103d Cong., 2d Sess. 30 (1994).

"In sum, the FCRA reflects Congress' concern with 'the need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy'. 15 U.S.C. § 1681(a)(4). "It is clear from the Act's purpose and legislative history that Congress intended that the FCRA be construed to promote the . . . responsible dissemination of accurate and relevant information . . . To that end, it was Congress' judgment, as clearly expressed in § 1681(b)(b)(2) . . . to afford consumers rights to information and privacy." *Thomas v. FTS USA, LLC*, 3:13-cv-825, 2016 WL 3653878, at *8 (E.D. Va. June 30, 2016).

## 2.   The *Spokeo* decision did not change the test for Article III standing.

"Article III of the United States Constitution limits the power of the courts to the resolution of actual 'Cases' and 'Controversies'." *Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 969 (9th Cir. 2013). "The irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The first element—and the one at issue here—is that Plaintiff must have suffered "an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical". *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

Though Defendant states that "[a]pplying the standard in *Spokeo*, Plaintiff has not alleged particularized or concrete harm from WinCo's alleged conduct and her claims must be dismissed" (Def. Mot. at 7), the truth is *Spokeo* merely reiterated that the injury-in-fact test includes both concrete and particularized components—the case neither overruled precedent nor made new law. *Spokeo* did not even reverse the Ninth Circuit—it merely held that the Circuit court had neglected to fully consider the concreteness of the plaintiff's injuries.

Indeed, "[t]he Supreme Court handed down its decision in *Spokeo* on May 16, 2016, and in doing so, declined to decide the key standing issue." *Errington v. Time Warner Cable Inc.*, No. 215CV02196RSWLDTB, 2016 WL 2930696, at *3 (C.D. Cal. May 18, 2016). As *Errington* explains:

> Rather, the Court threw out the Ninth Circuit's ruling in favor of the plaintiffs, reasoning that the Ninth Circuit's standing analysis was 'incomplete.' *Id*. at * 1. Justice Alito, writing on behalf of the majority, noted that the Court took "no position on the correctness of the Ninth Circuit's ultimate conclusion." *Id*. at *2. The Ninth Circuit's ruling was vacated and remanded for further analysis of the standing issue.

(*Id.*) As the *Errington* Court aptly summarized, *Spokeo* was simply remanded back to the Ninth Circuit for a further analysis because "[t]he Ninth Circuit's analysis focused on the second characteristic [of an injury-in-fact analysis] (particularity), but it overlooked the first (concreteness). We therefore vacate the decision below and remand for the Ninth Circuit to consider *both* aspects of the injury-in-fact requirement." *Spokeo, Inc. v. Robins*, No. 13-1339, 2016 WL 2842447, at *3 (U.S. May 16, 2016) Thus, the *Spokeo* decision did not alter Article III standing and instead held that the Ninth Circuit simply conducted an incomplete analysis.

The *Spokeo* Court did issue a reminder of general, previously-established Article III standing principles. In discussing concrete injuries, the Court stated that "[a]lthough tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." *Spokeo*, 136 U.S. at 549 (citing *Pleasant Grove City v. Summum,* 555 U.S. 460, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (free exercise)). Moreover, the Court reiterated that:

> in determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. Because the doctrine of standing derives from the case-or-controversy requirement, and because that

> requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. See *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 775–777, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important. Thus, we said in *Lujan* that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." 504 U.S., at 578, 112 S.Ct. 2130. Similarly, Justice Kennedy's concurrence in that case explained that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.,* at 580, 112 S.Ct. 2130 (opinion concurring in part and concurring in judgment).

*Spokeo*, 136 U.S. at 549.

Despite the defense bar's fervent attempt to paint *Spokeo* as a seismic shift in the law of standing, the fact is that none of the fundamentals discussed in *Spokeo* are new. *See Aranda v. Caribbean Cruise Line, Inc.*, 12 C 4069, 2016 WL 4439935 (N.D. Ill. Aug. 23, 2016) ("*Spokeo* was not the first case to set forth that an injury must be both concrete and particularized to suffice as an injury-in-fact for the purposes of constitutional standing . . . [i]ndeed, concreteness and particularity have been the twin pillars of a justiciable injury-in-fact for at least forty years"). "[T]he Court did not find that Robins's asserted injury was not concrete. Rather, the Court simply observed that the Ninth Circuit failed to consider the question adequately." *Id.* To be sure, the *Spokeo* Court's ultimate holding was "[w]e take no position as to whether the Ninth Circuit's ultimate conclusion—that Robins adequately alleged an injury in fact—was correct". *Id.* at 1550.

Thus, if Plaintiff had standing before *Spokeo*, she has standing after *Spokeo*. As explained below, it is clear that Plaintiff has sufficiently alleged an injury-in-fact.

### 3. Mitchell has suffered a particularized injury.

"For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way'." *Spokeo*, 136 S.Ct. at 1548. (citing *DaimlerChrysler Corp. v. Cuno*, 126 S.Ct.

1854 ("'plaintiff must allege personal injury'"); *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110

S.Ct. 1717, 109 L.Ed.2d 135 (1990) ("'distinct'"); *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct.

3315, 82 L.Ed.2d 556 (1984) ("personal"); *Valley Forge Christian College v. Americans United*

*for Separation of Church and State, Inc.*, 102 S.Ct. 752 (standing requires that the plaintiff "

'personally has suffered some actual or threatened injury' "); *United States v. Richardson,* 418

U.S. 166, 177, 94 S. Ct. 2940, 41 L.Ed.2d 678 (1974) (not "undifferentiated"); *Public Citizen,*

*Inc. v. National Hwy. Traffic Safety Admin.,* 489 F.3d 1279, 1292–1293 (C.A.D.C.2007)

(collecting cases)).

WinCo—in arguing that Plaintiff has not alleged that she was harmed in "a personal,

'particularized' way" (Def. Mot. at 7)—may be the first defendant to file a post-*Spokeo* motion

arguing that a plaintiff has not met the particularized element for an injury-in-fact; if there have

been others, Plaintiff has been unable to locate them. This is likely because the argument borders

on the specious. That is, Mitchell's FCRA claim is plainly particularized—the challenged

conduct happened *to her*. Plaintiff is suing Defendant because *Mitchell herself* was presented

with an unlawful disclosure, not because some other person was. *See Spokeo*, 136 S. Ct. at 1555

(Ginsburg, J., dissenting) ("Inspection of the Court's decisions suggests that the particularity

requirement bars complaints raising generalized grievances, seeking relief that no more benefits

the plaintiff than it does the public at large.") (citing *Lujan,* 504 U.S., at 573–574, 112 S.Ct. 2130

(a plaintiff 'seeking relief that no more directly and tangibly benefits him than it does the public

at large does not state an Article III case or controversy')); *see also Perkins v. Lukens Steel Co.,*

310 U.S. 113, 125, 60 S.Ct. 869, 84 L.Ed. 1108 (1940) (plaintiffs lack standing because they

failed to show injury to 'a particular right of their own, as distinguished from the public's interest

in the administration of the law'). As Justice Ginsburg explained, "Robins' claim does not

present a question of that character. He seeks redress, not for harm to the citizenry, but for

Spokeo's spread of misinformation specifically about him."

Indeed, as the Ninth Circuit found in *Spokeo*,

First, a plaintiff "must be 'among the injured,' in the sense that she alleges the defendants violated *her* statutory rights. Second, the statutory right at issue must protect against individual, rather than collective, harm.

Robins is in the same position. First, he alleges that Spokeo violated *his* statutory rights, not just the statutory rights of other people, so he is 'among the injured.' Second, the interests protected by the statutory rights at issue are sufficiently concrete and particularized that Congress can elevate them. *Lujan*, 504 U.S. at 578, 112 S.Ct. 2130. Like 'an individual's personal interest in living in a racially integrated community' or 'a company's interest in marketing its product free from competition,' Robins's personal interests in the handling of his credit information are individualized rather than collective. *Id.* (describing two "concrete, *de facto* injuries" that Congress could "elevat[e] to the status of legally cognizable injuries").

*Robins v. Spokeo, Inc.*, 742 F.3d 409, 413 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892, 191 L.

Ed. 2d 762 (2015), and *vacated and remanded*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), *as*

*revised* (May 24, 2016) (citations to *Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702 (6th Cir.

2009) omitted). **"[The] alleged violations of Robins's statutory rights are sufficient to satisfy**

**the injury-in-fact requirement of Article III**." *Robins*, 742 F.3d at 413-14. (emphasis added).

As the Supreme Court's *Spokeo* decision did not reverse the Ninth Circuit, but rather

remanded for an analysis of concreteness, the Court approved of the particularity analysis that

was conducted. It is difficult to see how Mitchell's allegations here differ in any way with

respect to particularity, and WinCo offers no such explanation. Mitchell alleges that **her**

statutory rights were violated—this is sufficient for particularity.

### 4.    Mitchell also alleges that she suffered a concrete injury.

"A concrete injury . . . is one that is 'real' and not 'abstract'." *Spokeo*, 136 S. Ct. at 1548

(citing Webster's Third New International Dictionary 472 (1971); Random House Dictionary of

the English Language 305 (1967)). A concrete injury analysis should consider "(1) whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts and (2) the judgment of Congress, which 'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before'." *Id.* (quoting *Lujan*, 504 U.S. at 580).

Applied here, Plaintiff has suffered two long-established concrete injuries: informational injury and an invasion of privacy. Either injury suffices to meet the Article III standing threshold, and both are present here. Defendant's Motion must therefore be denied.

### a. By depriving Plaintiff of the required disclosure, WinCo has caused Plaintiff to suffer an informational injury.

"Section 1681(b)(b)(2) establishes two rights. First, it establishes a right to specific information in the form of a clear and conspicuous disclosure. The statutory requirement that the disclosure be made in 'a document that consists solely of the disclosure' helps to implement the textual command that the disclosure be clear and conspicuous'." *Thomas*, 2016 WL 3653878, at * 7. "[This] protection[] [is] clearly substantive, and neither technical or procedural." *Id.*

"Importantly, the Supreme Court in *Spokeo* confirmed its previous holdings in *Federal Election Comm'n v. Akins* and *Public Citizen v. Department of Justice*, both of which teach that Congress may create a legally cognizable right to specific information, the deprivation of which constitutes a concrete injury sufficient to satisfy Article III." *Id.* "In those cases, the Supreme Court found standing where the plaintiff sought to obtain, and were denied, information that was subject to public disclosure under the Federal Election Campaign Act and the Federal Advisory Committee Act, respectively." *Id.*; *see also Larson v. Trans Union, LLC*, 2016 WL 4367253, at *3 (N.D. Cal. Aug. 11, 2016) ("I agree with Larson that his [FCRA] section 1681g(a) claim is based on something more than a 'bare procedural violation' . . . that cannot 'cause harm or

present any material risk of harm'. To the contrary, his claim is based on the sort of 'informational' injury that the *Spokeo* Court implicitly recognized in citing *Public Citizen* and *Akins*, and that a number of other cases, from both before *Spokeo* and after, have found sufficient to support Article III standing."); *Havens Realty Corp v. Coleman*, 455 U.S. 363, 373 (finding that persons had suffered a concrete injury under the Fair Housing Act when they received untruthful housing information despite not intending to use the information and holding that Congress created "an enforceable right to truthful information concerning the availability of housing").

Indeed, "it is well-settled that Congress may create a legally cognizable right to information, the deprivation of which will constitute a concrete injury. By extension, it is well within Congress' power to specify the form in which that information must be presented." *Thomas*, 2016 WL 3653878, at * 9 (citing *Charvat v. Mutual First Fed. Credit Union*, 725 F.3d 819, 824 (8th Cir. 2013) (finding that deprivation of the proper form of information required by the EFTA confers standing) (additional citations omitted); s*ee also Manuel v. Wells Fargo Bank, Nat. Ass'n*, 123 F. Supp. 3d 810, 818 (plaintiffs in FCRA cases "have the right to specific information at specific times" and sustain "information injury" where they "receive a type of information, [but] not the type of information that [they were] entitled to under the FCRA").

These long-standing principles make clear that Mitchell has suffered informational injury. Plaintiff had a statutory right to specific information in a clear and conspicuous, stand-alone disclosure. By improperly combining the consumer report disclosure and authorization with extensive information about the nature and scope of an *investigative* consumer report (wholly distinct from consumer reports under the FCRA, with their own disclosure requirements), and by presenting the disclosure and authorization forms at the same time such

that any distinction between them is meaningless, WinCo deprived Plaintiff of her statutory right. As the *Thomas* Court found, this violation of Section 1681(b)(b)(2)'s "stand-alone disclosure" requirement is an informational injury sufficient to confer standing.

Put simply, Congress can require that specific information be provided to consumers, and a failure to provide such information constitutes informational injury. To hold otherwise would strip Congress of such authority by judicial fiat. Hence, as the plaintiffs in *Havens*, *Akins*, and *Public Citizen* did, Plaintiff Mitchell suffered an information injury and thus has Article III standing to pursue her claims. Defendant's Motion must be denied accordingly.[1]

### b.     Mitchell has also suffered an invasion of privacy.

Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless. . ." it complies with the statutory requirements (including the stand-alone disclosure requirement at issue here). 15 U.S.C. § 1681b(b)(2). "The FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot, USA, Inc*., 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015). "§ 1681b(b)(2) establishes a right to privacy in one's consumer report that employers may invade only under stringently defined circumstances." *Thomas*, 2016 WL 3653878, at * 7. As with the informational injury, "[this] protection[] [is] clearly substantive, and neither technical or procedural." *Id.*

---

[1] It is worth noting here that the FCRA provision at issue in *Spokeo* contained no informational component. Rather, Spokeo was alleged to be a consumer reporting agency, and Robins claimed that Spokeo failed in that role to maintain procedure designed to ensure maximum possible accuracy in its consumer reports. While Robins alleged that information on Spokeo's website about him was inaccurate, the record in the case was devoid of allegations that anyone—apart from maybe Robins or his lawyers—ever saw or viewed such inaccurate information. That is, no allegations were made that Spokeo had disseminated such information.

As the *Thomas* Court explained:

> The FCRA provides that an employer may not obtain an applicant's consumer report, thereby invading his or her statutory right of privacy, unless the employer first obtains the consumer's knowing and voluntary written consent to secure that information, as required by 1681b(b)(2)(A). The common law has long recognized a right to personal privacy, and 'both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person.' *United States Dept. of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989) (defining 'private' as 'intended for or restricted to the use of a particular person or group or class of persons: not freely available to the public").
> []
> Moreover, as the Supreme Court has observed, the right to privacy in compilations of personal information is particularly powerful because the 'power of compilations to affect personal privacy that outstrips the combined power of the bits of information contained within." *Id.* at 765. According, it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue. *See generally* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 HARV. L. REV. 193 (1890). Similarly, it is well-settled that Congress may create a statutory right to privacy in certain information that strengthens or replaces the common law, and citizens whose statutory right to information privacy has been invaded may bring suit under the statute to vindicate that right. . . .

*Thomas*, 2016 WL 3653878, at * 10. "Furthermore, where a defendant fails to comply with statutory prerequisites protecting the plaintiff's privacy, the plaintiff's privacy has been unlawfully invaded and he has suffered concrete injury, regardless of actual damages" *Id.* (collecting cases).

This is precisely the case here. As explained above, Congress was concerned about privacy when enacting the stand-alone disclosure requirement. S. Rep. No. 104-185, at 35 (1995) ("permit[ting] employers to obtain consumer reports pertaining to current and prospective employees . . . may create an improper invasion of privacy"); *see also Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d. 429, 435 (M.D. Pa. 2004) (finding that the FCRA "sought

to protect the privacy interests of employees and potential employees by narrowly defining the proper usage of these reports and placing strict disclosure requirements on employers").

Moreover, and although WinCo attacks Plaintiff's allegations as "bare statutory allegations" (Def. Mot. at 6), this is inaccurate. "[T]he rights created by 1681b(b)(2) are substantive rights, and the breach of the statute is not a 'bare procedural violation' of a technical requirement". *Thomas*, 2016 WL 3653878, at * 11. And while WinCo may downplay the seriousness of its violations, Congress enacted employment-specific disclosure provisions with the intent that they be followed and to permit applicants and employees to make an informed decision about whether he or she wished for a company to view their background check. Additionally, "the concrete-harm requirement does not apply as rigorously when a private plaintiff seeks to vindicate his own private rights. [The Supreme Court's] contemporary decisions have not required a plaintiff to assert an actual injury beyond the violation of his personal legal rights to satisfy the 'injury-in-fact' requirement." *Spokeo*, 136 S. Ct. at 1552 (Thomas, J. concurring) (citing *Cary v. Piphus*, 435 U.S. 247, 266 (holding that nominal damages are appropriate when a plaintiff's constitutional rights have been infringed but he cannot show further injury)).

Mitchell, in having her background check obtained by WinCo without proper notice, has undoubtedly suffered a concrete injury in the form of invasion of privacy—a harm recognized in the common law since at least the 19th Century. Defendant's Motion should be denied.

        c.      ***Smith v. Ohio State Univ.* is off-point and should not be followed— *Smith* ignores the informational and privacy injuries that attend most FCRA violations.**

In support of its Motion, WinCo cites to a single FCRA case to support its proffered conclusion: *Smith v. Ohio State Univ.*, No. 2:15-CV-3030, 2016 WL 3182675, at *4 (S.D. Ohio June 8, 2016). Unfortunately for WinCo, *Smith* is off-point.

Unlike the extensive, in-depth analysis conduct in *Thomas*, the *Smith* Court concluded that no Article III standing existed for a Section 1681b(b)(2)(A) claim after reciting the applicable standard and conducting the following truncated analysis:

> In determining whether Congress has elevated FCRA breaches to the status of legally cognizable injuries, the Supreme Court held that "[a] violation of one of the FCRA's procedural requirements may result in no harm." (*Id.* at 10, 136 S.Ct. 1540). In this case, Plaintiffs allege they suffered harm when their "privacy was invaded and they were misled as to the their rights under the FCRA." (Doc. 18, Mem. Opp. at 14). However, Plaintiffs admitted that they did not suffer a concrete consequential damage as a result of OSU's alleged breach of the FCRA. (*Id.*). Accordingly, the Court cannot find that Plaintiffs have suffered an injury-in-fact from OSU's alleged breach of the FCRA. Without a concrete and particularized injury-in-fact, there is no Article III standing in this Court. Because the Plaintiffs do not have standing in this Court, the Court lacks subject-matter jurisdiction and must remand the case back to the Ohio Court of Claims for further adjudication. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 496 (6th Cir.1999) (citing 28 U.S.C. § 1447(c)).

*Smith*, 2016 WL 3182675, at *4. Indeed, much of the discussion in *Smith* revolved around Ohio State's immunity. *See Id.*

Plaintiff respectfully suggests that the Court should depart from the holding of *Smith* and conduct a proper and complete analysis of the injuries suffered, as explained above. Mitchell does not concede or admit that she did not suffer "concrete consequential damage," which—by supplanting concrete harm with damages—applies the incorrect standard in any case.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendant's Motion to Dismiss and find that Plaintiff has sufficiently alleged both concrete and particularized injuries.

Respectfully Submitted,

Dated: August 25, 2016

**GLORIA MITCHELL**, individually,
and on behalf of all others similarly situated,

By:   /s/ Patrick H. Peluso

Eric B. Swartz
**JONES & SWARTZ PLLC**
623 W. Hays Street
Telephone: (208) 489-8989
Facsimile: (208) 489-9888
Email: eric@jonesandswartzlaw.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: (720) 213-0675

*Counsel for Plaintiff and the Putative Class*

*pro hac vice*

**<u>CERTIFICATE OF SERVICE</u>**

I am a resident of the State of Colorado, over the age of eighteen years old, and am not a party to this lawsuit. My business address is 3900 E. Mexico Avenue, Suite 300, Denver, Colorado 80210. I HEREBY CERTIFY that on the 25th day of August 2016, I filed the foregoing **RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS [ARTICLE III STANDING] (DKT. 20)** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Rick D. Roskelley, Attorney for Defendant WinCo Foods, LLC. Mr. Roskelley's email address is rroskelley@littler.com.

I declare that the foregoing is true and correct.

/s/ Patrick H. Peluso