**Eric B. Swartz, ISB #6396**
**JONES & SWARTZ PLLC**
623 W. Hays Street
Telephone: (208) 489-8989
Facsimile: (208) 489-9888
Email: eric@jonesandswartzlaw.com

**Steven L. Woodrow***
**Patrick H. Peluso***
**Woodrow & Peluso, LLC**
3900 E Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Email: swoodrow@woodrowpeluso.com
          ppeluso@woodrowpeluso.com

*Pro Hac Vice*

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| GLORIA MITCHELL, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>WINCO FOODS, LLC, a Delaware limited liability company,<br><br>              Defendant. | Case No.  1:16-cv-00076-BLW<br><br>**PLAINTIFF GLORIA MITCHELL'S REPLY IN SUPPORT OF HER MOTION TO RECONSIDER DECISION AND ORDER OF MARCH 7, 2017 DISMISSING CASE** |

**I.     INTRODUCTION**

As the Court is by now well aware, this case challenges Defendant Winco Foods, LLC's ("Winco" or "Defendant") failure to provide a "standalone" disclosure and authorization to job applicants and employees before it obtained consumer reports about them—conduct that violates the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

On March 2, 2017, the Court dismissed Plaintiff Gloria Mitchell's ("Mitchell" or "Plaintiff") Complaint with prejudice. (*See* Memorandum Decision and Order ("Order") (dkt. 28)). In doing so, the Court stated that, "[b]ased on the allegations of the Amended Complaint, this case fits squarely within the 'entirely accurate' or 'no material risk of harm' categories identified by Justice Alito as not constituting the type of harm which provides Article III standing." (Order at 6.) On March 10, 2017 Plaintiff filed her motion for reconsideration based on a change in the law that occurred between the time the Parties briefed Winco's Motion to Dismiss and the time the Court issued its Order, *Syed v. M-I, LLC*, 846 F.3d 1034 (9th Cir. 2017) (opinion amended and superseded on denial of rehearing by *Syed v. M-I, LLC*, 2017 WL 1050586 (9th Cir. March 20, 2017)).

In *Syed*, the Ninth Circuit held that Congress recognized the risk of harm associated with a violation of Section 1681b(b)(2)(A) and established a private cause of action to redress such injuries. *Id.* at *4. The Ninth Circuit explained that an employee or potential applicant who is presented with a disclosure that includes extraneous information may be deprived of their ability to meaningfully authorize the consumer report and that a claim based on such a faulty disclosure "alleges more than a 'bare procedural violation.'" *Id*.  The ruling in *Syed* runs contrary to the finding in this case that such allegations present "no material right of harm" and instead clarifies that in addition to protecting against the dissemination of false information, Congress also intended the FCRA to protect consumers against unwanted and "improper invasion[s] of privacy." *Id.* at *6. ("The disclosure and authorization clauses therefore work in tandem to further the congressional purpose of protecting consumers from 'improper invasion[s] of privacy'") *Id.*

Plaintiff Mitchell has Article III standing based on *Syed*. Just like the plaintiff in *Syed*, Mitchell was provided with an FCRA disclosure riddled with extraneous and improper information. As *Syed* was issued during the interim between the time when Plaintiff filed her Opposition to Winco's Motion to Dismiss and the date the Court entered its ruling, it is clear that *Syed* binds this Court. Put simply, in the Ninth Circuit employees and applicants who are provided unlawful FCRA disclosures enjoy standing to sue, even after *Spokeo*.

Winco disagrees. Seeking to explain away *Syed*, Winco claims that the cases are distinguishable—in *Syed* the extraneous language was a liability waiver whereas here the extra information concerns the obtaining of a different type of consumer report altogether—and that *Syed* is not actually an intervening change in law since the decision was decided *before* the Court issued its dismissal Order. Winco also asserts, in apparent recognition that *Syed* is directly on point, that the Court should ignore *Syed* and follow Winco's reading of *Spokeo* regardless.

As explained below such arguments should be rejected. Winco argues the merits, not standing, and *Syed* was plainly decided after briefing but before the Court issued its ruling. Try as it may, Winco cannot avoid binding Ninth Circuit precedent.

**II.   ARGUMENT**

 "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citing *All Hawaii Tours, Corp. v. Polynesian Cultural Center,* 116 F.R.D. 645, 648 (D. Haw. 1987), *rev'd on other grounds,* 855 F.2d 860 (9th Cir. 1988); *Tucker v. S. Shore Villas Homeowners Ass'n*, No. 215CV00961JADNJK, 2017 WL 810281, at *3 (D. Nev. Mar. 1, 2017) (same)).

Defendant asserts that *Syed* is inapposite and doesn't constitute an intervening change in law. As explained below, both of Defendant's arguments fall apart.

### A.    Contrary to Winco's assertions, *Syed* is directly on point.

For its argument-in-chief, Winco claims that *Syed* is inapposite because in that case the FCRA disclosure contained a liability waiver whereas here the extraneous language concerns different information (specifically disclosures required before a company can obtain something the FCRA refers to as an "investigative consumer report,"[1] as opposed to a more routine "consumer report," despite clear guidance from the FCC that employers are *not* to combine such disclosures). (Winco. Op. Br. 3.) Indeed, to hear Winco tell it:

> [T]he Ninth Circuit highlighted the distinguishing factor of Syed in that the additional terms included in the FCRA disclosure consisted of a liability waiver. The concrete harm found by the Ninth Circuit was that the plaintiff was confused by the inclusion of the liability waiver and would not have signed an authorization if it had contained a clear disclosure.

(*Id.*) Hence, per Winco, *Syed* stands for the proposition that employees or applicants have standing to sue over a failure to provide a "standalone" disclosure only where the disclosure contains a liability waiver.

Fortunately for employees and job applicants throughout the Ninth Circuit, nothing in *Syed* suggests its as limited as Winco claims. In evaluating the congressional purpose behind the FCRA's standalone disclosure provisions the Ninth Circuit explained that:

> Congress passed Section 1681b(b)(2)(A) in order to protect consumers from "improper invasion[s] of privacy," S. Rep. No. 104-185 at 35 (1995), and the disclosure and authorization requirements fit hand in glove to achieve that purpose. Indeed, each would be largely ineffective on its own. Had the statute required

---

[1] The term "investigative consumer report" "means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information." 15 U.S.C. § 1681a(e). (FAC ¶ 33.)

4

> disclosure without conditioning the procurement of a consumer report on the job applicant's authorization, it would have failed to give the applicant control over the procurement of the personal information contained in the consumer report. ***On the other hand, had the statute conditioned the procurement of a report on the job applicant's authorization without mandating clear disclosure by the prospective employer, Congress's purpose would have been frustrated because applicants would not understand what they were authorizing. The disclosure and authorization clauses therefore work in tandem to further the congressional purpose of protecting consumers from "improper invasion[s] of privacy."***

*Id.*, at *6. (Emphasis added.) Hence, the Ninth Circuit focused on the invasion of privacy that flows from a confusing, unclear disclosure.

Winco's assertion that *Syed* turned on the inclusion of the liability waiver is simply inaccurate. True, in *Syed* "[t]he Disclosure Release . . ., authorized M-I to procure Syed's consumer report, and stipulated that, by signing the document, Syed was waiving his rights to sue M-I and its agents for violations of the FCRA." *Id.* at *3. However, the Ninth Circuit did not rely on the liability waiver specifically in finding that Syed had standing. Rather, the central point was that Syed and others could have been "confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure, as required in the statute." *Id.* at *5 (emphasis added). Due to such potential confusion "Syed was deprived of the right to information and the right to privacy guaranteed." *Id.*

The same principles apply in this case. Mitchell alleges that Winco combined the FCRA consumer report disclosure with an FCRA disclosure for "investigative consumer reports." Like the *Syed* decision, the FCC expressly recognized that where excessive information is provided such that the investigative consumer report disclosure overshadows the standard disclosure, the employer violates the FCRA. As set forth in the Complaint:

> **[A] Section [1681d(b)] notice setting forth the nature and scope of the investigation would of necessity be much more detailed and would likely be held to overshadow [the 1681b(b)] disclosure in violation of [1681b(b)(2)(A)(i)]. Therefore, we believe that an employer may combine only**

5

> **a very limited Section [1681d] notice with the general Section [1681b(b)(2)(A)(i)] notice without running afoul of the latter section's requirement that the required disclosure be in a stand-alone document.** The surest way for an employer to comply, of course, would be to provide the Section [1681b(b)(2)(A)(i)] notice and the Section [1681d] notice in separate documents.

*See* Willner Advisory Opinion, *available at* https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-willner-03-25-99. (Compl. ¶ 35; *see also* ¶ 32 ("One of the ways Defendant's disclosure is non-compliant is that it improperly combines information about consumer reports that may be procured with information about investigative consumer reports.")) By combining the disclosures, like the liability waiver and disclosure in *Syed*, it is unclear and confusing to employees and job applicants what, exactly, they are authorizing (*i.e.*, are they authorizing a consumer report under the FCRA or an "investigative consumer report" under the FCRA?) As such, the instant facts are on all fours with *Syed*, notwithstanding Defendant's attempt to distinguish it.[2]

Further, Winco's argument is really an attack on the merits, not against Mitchell's standing. Whether the inclusion of "investigative consumer report" disclosures in a "consumer report" disclosure is sufficiently confusing—like the inclusion of a liability waiver is—so as to constitute a violation of the FCRA is a question regarding the *merits* of the case. On the other hand, standing hinges on whether employees and applicants who claim that they were provided disclosures that contain extraneous information have alleged sufficient harm. The Ninth Circuit in *Syed* plainly answered this question with a resounding "yes."

In short, in finding that job applicants and employees have standing to sue where their employers obtain background checks about them without first providing "standalone" FCRA

---

[2] Additionally akin to *Syed* is the fact that neither case involves any allegation of false information being included on the consumer reports. Instead, both *Syed* and the present case turn on the same issue, the ability to meaningfully authorize the disclosure of the Plaintiff's personal and private information in light of extraneous information in the disclosure.

6

disclosures, the Ninth Circuit explained that such additional information could confuse applicants and employees such that it wouldn't be clear just what they were authorizing. The Ninth Circuit did not hold that only FRCA claims based on liability waivers confer standing on aggrieved applicants and employees. Mitchell's disclosure was chalk full of extraneous, confusing information generally seen in disclosures required prior to obtaining a different type of consumer report—an investigative consumer report that is more involved than a typical background check—and she alleges facts that, if proven true, show she was plausibly "deprived of [her] ability to meaningfully authorize the credit check" so as to have suffered concrete injury.

As such, Winco's first argument, that *Syed* is inapposite, falls apart.

**B.    Winco's back up arguments, that *Syed* is not an "intervening change in law" and that the Court is bound by *Spokeo* regardless, similarly fall flat.**

Unable to distinguish *Syed,* Winco argues that it shouldn't form the basis of a motion to reconsider because it was decided before the Court issued its decision dismissing the case. (Winco. Opp. Br. 5-6.) According to Winco, only changes in the law that occur in between the time the case is dismissed and the deadline for appeal are considered "intervening." This is of course inaccurate, and Winco's failure to cite any authority in support of that position is unsurprising. Indeed, "the Ninth Circuit has held that a change in law after the entry of a final judgment does not constitute an intervening change in law...." *Stein v. State Farm Mut. Auto. Ins. Co.*, 934 F. Supp. 1171, 1173 (D. Haw. 1996). Hence, the law is actually the opposite of how Winco characterizes it.

The simple truth is that *Syed* was decided while this case was being litigated. *Syed* was issued on January 20, 2017, 148 days after Plaintiff had submitted her brief (on August 25, 2016) opposing Winco's Motion to Dismiss. In between the time briefing on the motion to dismiss was complete and the date that the Court issued its decision on the motion there was a change in the

7

law—at least insofar as Winco urged this Court to interpret it—with respect to this issue that wasn't previously available to either Party. This is not an instance where the decision was available at the time Plaintiff filed her Opposition brief but due to inadvertence or neglect failed to cite controlling Ninth Circuit law to the Court. Instead, Mitchell's Response in Opposition to the Motion to Dismiss was timely filed months before *Syed* had even been decided but before the Court issued its ruling. Hence, *Syed* is an intervening decision.

Winco's final attack, asking the Court to ignore *Syed* in favor Winco's interpretation of *Spokeo*, (Winco Opp. Br. 6-7) is a Hail Mary pass. *Syed* plainly binds this Court, and the panel in *Syed* analyzed the FCRA specifically under *Spokeo* and still found that background check disclosures that are potentially confusing to job applicants and employees violate the FCRA and confer standing on aggrieved consumers to file suit. Further, while *Spokeo* addressed a completely different section of the FCRA (one that doesn't address employee background check disclosures at all but instead analyzes a consumer reporting agency's duty to use reasonable procedures designed to ensure maximum possible accuracy when compiling its reports), *Syed* addressed this employee background check provision of the FCRA specifically.

As such, there is no basis for ignoring *Syed* or for following Winco's pre-*Syed* interpretation of the statute.

### III. CONCLUSION

The Ninth Circuit made clear in *Syed* that a failure to provide a standalone FCRA notice and authorization for an employment-related background check causes concrete harm so as to satisfy the injury-in-fact requirement of Article III. *Syed* cannot be reconciled with the Court's prior Order dismissing this action on the grounds that that no concrete harm was suffered. As such, there is standing for such violation in the Ninth Circuit.

8

WHEREFORE, Plaintiff Mitchell respectfully requests that the Court reconsider its March 7, 2017 decision granting Defendant Winco's Motion to Dismiss and for such additional relief as the Court deems necessary and just.

*　　　　*　　　　*　　　　*　　　　*

Respectfully Submitted,

Dated: April 11, 2017　　**GLORIA MITCHELL**, individually, and on behalf of all others similarly situated,

By: /s/ Patrick H. Peluso

Eric B. Swartz
**JONES & SWARTZ PLLC**
623 W. Hays Street
Telephone: (208) 489-8989
Facsimile: (208) 489-9888
Email: eric@jonesandswartzlaw.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: (720) 213-0675
*Counsel for Plaintiff and the Putative Class*

*pro hac vice

## CERTIFICATE OF SERVICE

I am a resident of the State of Colorado, over the age of eighteen years old, and am not a party to this lawsuit. My business address is 3900 E. Mexico Avenue, Suite 300, Denver, Colorado 80210. I HEREBY CERTIFY that on the 11th day of April 2017, I filed the foregoing **REPLY IN SUPPORT OF HER MOTION TO RECONSIDER MEMORANDUM DECISION AND ORDER OF MARCH 7, 2017 DISMISSING CASE** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

    Rick D. Roskelley, Attorney for Defendant Winco Foods, LLC.

    Mr. Roskelley's email address is rroskelley@littler.com.

I declare that the foregoing is true and correct.

    /s/ Patrick H. Peluso