1        **UNITED STATES DISTRICT COURT**

2          **DISTRICT OF IDAHO**

3   GLORIA MITCHELL, individually    )
    and on behalf of all others      )   CASE NO. 1:16-cv-00076-BLW
4   similarly situated,              )
                                     )   **MOTION HEARING**
5              Plaintiff,            )
                                     )
6        vs.                         )
                                     )
7   WINCO FOODS, LLC, a Delaware     )
    limited liability company,       )
8                                    )
               Defendant.            )
9   _____ )


10            **TRANSCRIPT OF PROCEEDINGS**
11       **BEFORE THE HONORABLE B. LYNN WINMILL**
         **WEDNESDAY, OCTOBER 18, 2016; 11:11 A.M.**
12               **BOISE, IDAHO**

13

    **FOR PLAINTIFF**
14        Eric B. Swartz
          JONES & SWARTZ PLLC
15        623 W. Hays Street
          Boise, Idaho 83702
16
          Patrick H. Peluso
17        WOODROW & PELUSO, LLC
          3900 E Mexico Avenue, Suite 300
18        Denver, Colorado 80210

19  **FOR DEFENDANT**
          RICK D. ROSKELLEY
20        Littler Mendelson, PC
          3960 Howard Hughes Pkwy., Ste. 300
21        Las Vegas, NV 89169

22

    Proceedings recorded by mechanical stenography, transcript
23  produced by computer.
    _____

24
          **TAMARA I. HOHENLEITNER, CSR 619, CRR**
25        FEDERAL OFFICIAL COURT REPORTER
          550 WEST FORT STREET, BOISE, IDAHO  83724

```
1                    I N D E X

2                 OCTOBER 18, 2016

3
    Date      Proceeding                              Page
4

5
    10/18/16  Motion to Dismiss
6             Argument by Mr. Roskelley....................... 5
              Argument by Mr. Peluso......................... 14
7             Rebuttal argument by Mr. Roskelley............. 26
              Court takes under advisement.................... 31
8
```

1            P R O C E E D I N G S

2            October 18, 2016

3        THE CLERK:  The court will now hear Civil Case 16-76,

4    Mitchell vs. WinCo Foods, regarding motions to dismiss.

5        THE COURT:  Good morning, Counsel.  I apologize for

6    our late start, but I have been, frankly, scratching my head

7    over this case.

8        Let me -- I want to take a moment and maybe, well, first of

9    all, make some general observations.  I really don't think that

10   I would like to spend a lot of time today hearing what I'll call

11   the *Iqbal-Twombly* motion to dismiss.  If you want to, you can;

12   but I think I can resolve that just on the briefing.  I think

13   the standing issue is the one that is far more difficult.

14       Counsel, I'm going to ask you to bear with me for a minute.

15   I wanted to find a particular quote.

16       This case is really a challenge for me.  I will be candid,

17   my initial reaction after reading *Spokeo* was that I think the

18   plaintiff has got very much an uphill battle establishing

19   standing.  But as I reflected on it more and went back and

20   looked at, I think it was, Judge Payne's decision in the Eastern

21   District of Virginia, it made me start scratching my head a

22   little bit.

23       Clearly, Justice Alito in the *Spokeo* decision -- or the

24   *Spokeo* decision -- reaffirmed that there are circumstances, as

25   indicated in the *Akins* and I think the *Public Citizen* cases,

1 where a violation of a procedural right granted by statute can

2 be sufficient -- and I use this word -- "in some circumstances

3 to constitute injury-in-fact.  In other words, a plaintiff in

4 such a case need not allege any additional harm, that is, actual

5 damages beyond the one Congress has identified."

6   I think that's a quote from *Spokeo*.

7   Then he goes on to say:  "However, there will be times when

8 a purely procedural right simply will not be sufficient to -- to

9 constitute injury-in-fact."

10   The problem is he doesn't really answer -- and I'm not sure

11 what the standard is -- for determining when a violation of a

12 statutorily created procedural right is sufficient by itself to

13 constitute injury-in-fact and when it does not.  But it is clear

14 that the court, I think, in *Spokeo* has recognized that sometimes

15 it does, sometimes it doesn't.

16   So, you know, I am trying more and more, because we're

17 extremely overburdened in our district, to rule from the bench.

18 I'm not going to rule from the bench in this case.  I think what

19 I need to do is go back and kind of assess what those procedural

20 rights were in the *Akins* and *Public Citizen* case where the court

21 was willing to find that an injury-in-fact existed from a

22 violation of a statutory procedural right by itself and then

23 determine whether, by analogy, the same kind of rights exist

24 here or whether it is something different where, as Justice

25 Alito suggested, that it may fall within those purely procedural

1    rights where there is simply not enough concrete and

2    particularized injury to satisfy the injury-in-fact requirement.

3         And I don't have an answer, but I want you to focus pretty

4    specifically on that issue because I think that's what this case

5    really is going to turn on.

6         If you want to talk about the *Iqbal-Twombly* issues, feel

7    free to do so.  But it's -- I'll be honest, it's not where my --

8    right now, my focus is very much on the standing issue.

9    Because, obviously, that is kind of the beginning point and

10   maybe the end point of this case.

11        So, in any event, I'll hear from the defendants with regard

12   to the motion to dismiss.

13             MR. ROSKELLEY:  Thank you, Your Honor.

14        Rick Roskelley on behalf of defendant, WinCo Foods.

15        Your Honor, I will address the standing argument only as

16   you have indicated that that is your area of primary concern

17   right now.  And we believe -- it's our position that *Spokeo vs.*

18   *Robins* really does dispose of this case.

19        And I understand you have read *Spokeo, and* you are familiar

20   with the arguments there.  You know that *Spokeo* focused on a

21   couple of facts and reiterated a couple of facts.  It reiterated

22   that the injury must be both concrete and particularized, and it

23   basically vacated the hearing because it found the Ninth Circuit

24   had only considered the particularized portion of the test and

25   not the concrete portion.  So it focused, really, upon the area

6

1   of your concern, is:  What is an actual injury, and when can an

2   actual injury be conferred by Congress?

3       What it made clear was that Congress cannot confer standing

4   constitutionally in cases where there is no standing under the

5   Constitution.  And it specifically held:  "On one hand, Congress

6   plainly sought to curb dissemination of false information by

7   adopting procedures designed to" --

8           THE COURT REPORTER:  Excuse me, sir.  Would you read a

9   little more slowly?

10           MR. ROSKELLEY:  Yes.  Sorry.

11       From *Spokeo:*  "On one hand, Congress plainly sought to curb

12   the dissemination of false information by adopting procedures

13   designed to decrease that risk."

14       On the other hand, if we were going to apply that same

15   analysis to the employment setting, as we argued in our reply,

16   the case history shows that the other concern was false

17   information in the employment setting.

18       And so, really, what Congress is focused upon here is

19   decreasing the potentiality for false information.  That's the

20   focus, and that's the -- if there is a right to be garnered from

21   that statute, it's right to be free from having false

22   information given which then leads to you being denied

23   employment, number one.

24       The next observation, and as you have indicated, *Spokeo*

25   specifically held that a plaintiff cannot satisfy the demands of

1    Article III by alleging a bare procedural violation.  It even

2    talks about the fact in the *Robins* case, *Spokeo* vs. *Robins* case,

3    as you're aware, of what occurred there was Spokeo is an online

4    search engine that helps get background information for

5    individuals.  Robins became aware that when his name was run,

6    there were a number of things that he alleged were false that

7    came back.  But even then, the Supreme Court made this

8    observation.  It says:  "A violation of" -- it said, you know,

9    "violation of one of the requirements," meaning procedural

10   requirements, "may result in no harm."

11       And it gives the example of:  "For example, even a consumer

12   reporting agency -- even if a consumer reporting agency fails to

13   provide the required user notice to the user of the agency's

14   consumer information, that information, regardless, may be

15   entirely accurate.  In addition, not all inaccuracies cause harm

16   or present empirical risk of harm."

17       So they are focused upon the harm to the individual here,

18   and specifically they give the example of the ZIP code.  So even

19   if you procedurally violate the FCRA, and even if false

20   information comes back, that false information may not be of

21   harm to the individual.

22       So if we put that -- this case into that setting, we look

23   and see what did Congress attempt to do by creating the FCRA?

24   They attempted in the employment setting to prevent false

25   information from denying someone employment.

1      But here, we don't have any allegation of number one, false

2   information and, number two, that she was denied employment.  In

3   fact, we know she was hired by the employer in this case.

4      And so I would submit that when we're reading -- this is

5   the second-to-last paragraph in the majority opinion that

6   plugging it into this context, to have an actual injury, we have

7   to have either false information -- at least false information

8   returned, number one; and then if false information is returned,

9   then we look to see if it resulted in her being terminated

10   employment.  But we have no allegation of either one.

11      And so we think this is really the telling part of the

12   opinion and what has to be the focus of this court in

13   determining whether or not Article III standing has been

14   conferred in this case.  Otherwise, what we have here is simply

15   a pure 100 percent hypertechnical procedural violation, which is

16   the same type of procedural violation that *Spokeo* involved in

17   this particular matter.

18      Now, to answer more directly your question about -- because

19   you did raise the question before I began:  When can an

20   informational item result in an Article III standing?

21      And if we -- I think if we look at the cases that talk

22   about informational denials specifically, we're looking at very

23   limited -- and I think *Spokeo* supports this -- very limited fact

24   situations.

25      Number one, Congress has conferred in certain instances in

9

1      some of the cases cited by the plaintiff in this matter, the

2      right to receive information from public records.  Well, that's

3      an informational request that, if denied, could result in a

4      valid standing under the Constitution.

5           Another one would be the right to be free from -- or

6      the -- let me find the quotation here.  Is -- there was a case

7      dealing -- that the plaintiff cited dealing with housing laws

8      and the disclosures that had to be made and the right to be free

9      from false information or misrepresentations is what the matter

10     was.

11          So, in any event, what we're looking at is we're looking at

12     a very narrow area where Congress can, based upon informational

13     statutes, confer standing.

14          Now, I would submit that the FCRA is not an informational

15     standard in the sense that it grants a plaintiff the right to

16     receive particular information.  It is a statute, on the other

17     hand, that is attempting to -- as the Supreme Court says in

18     *Spokeo*, it's a statute that is sought -- that seeks to curb,

19     quote, "the dissemination of false information by adopting

20     procedures designed to decrease that risk."

21          That's a completely different type of statute than a

22     statute conferring upon the public the right to see document --

23     public documents.  That's a completely different type of

24     statute.  In the employment setting, really, the only injury is

25     false information that leads to an employee or an applicant not

1    receiving the job.

2        We have no allegations here of any type of injury.  We have

3    no allegations of a denial of a job.  We have no allegations of

4    false information being returned.  We have no allegations of

5    that false information being disseminated to other individuals.

6        We have, in essence, no injury here other than the

7    procedures which were designed to protect against false

8    information, having been hypertechnically violated.

9        Of course, as you know, we argue in the second motion, the

10   motion regarding *Iqbal-Twombly*, that there isn't even a

11   hypertechnical violation; that when reading the statutes and the

12   case law, that the manner in which the information or the

13   disclosures and the consent were presented are completely

14   consistent with the FCRA.

15       Based upon these facts and the fact that the plaintiff has

16   alleged no specific injury, false information, or denial of

17   employment, we urge this court to find that there is no

18   standing.

19           THE COURT:  Let me -- I assume, you know, you have

20   read the *Thomas* case and Judge Payne's decision.  That case -- I

21   was going to ask the plaintiffs, you know, to -- if they have a

22   case in which the actual named plaintiff or the plaintiff did

23   not suffer any injury apart from signing a consent based upon a

24   disclosure that did not comply with the statute.

25           In those -- in *Thomas*, clearly, the plaintiff in that case

1    did suffer more -- greater injury, but the judge had certified

2    two subclasses, one of which was an adverse action subclass.

3    The other was an impermissible use class, and the class

4    definition only involved individuals who had not been given a

5    proper disclosure and signed a consent form and then had the

6    information obtained in violation of their rights because their

7    consent wasn't valid, but no other additional injury.

8         That sounds very close to the class which -- well, first,

9    the class representative situation here and, second, the class

10   which they will seek at some point to certify.

11        What was wrong with Judge Payne's analysis in *Thomas*?  And

12   I'm putting you on the spot.  You know, this is digging down in

13   the weeds a little bit, but I think you cited *Smith vs. Ohio*

14   *State*.

15             DEFENSE:  Correct.

16             THE COURT:  The plaintiffs are citing *Thomas vs. FTS*.

17   I have not read them very carefully.  I've read both decisions

18   but just hurriedly in preparation for the hearing.  I'm going to

19   have to dig much deeper into those cases, but they seemingly

20   reach conflicting results.

21        The judge in the *Smith* case didn't spend a lot of time

22   analyzing it; just reached kind of a somewhat obvious conclusion

23   that there was no actual injury apart from, you know, kind of a

24   technical procedural violation.

25        *Thomas* case, Judge Payne dug more deeply and said, no, that

1    those are real rights; the rights not to have your private

2    information revealed unless certain procedures are followed,

3    including a proper disclosure prior to obtaining a consent.

4        So I know that the plaintiff in *Thomas*, in fact, could show

5    injury, but the judge did certify a subclass in which no injury

6    apart from the lack of a proper disclosure form was involved.

7        What was wrong with that decision?

8            MR. ROSKELLEY:  Well, what's wrong with that decision

9    is that, basically, if we are to say that -- I think that

10   portion of the decision intimates that if you have a technical

11   violation of the procedure -- again, which we contest there was

12   a technical violation of the procedure -- then it intimates and

13   what plaintiffs are arguing here is that there is a per se --

14   there is a per se injury, there is a privacy injury of some

15   type.

16       And that's exactly what the Supreme Court in *Spokeo* said is

17   not correct.  It said that a procedural violation is not a

18   per se injury, that there has to be something in addition to

19   that.

20       In fact, in *Spokeo*, as I just mentioned, it talks about the

21   fact that even if false information is returned from that, that

22   even that is not enough.  You have to look to see if that false

23   information affected the plaintiff in any adverse manner.  And

24   in our particular case, we have none of that.

25       In fact, we have a situation where the consent forms that

1    were signed specifically indicated that she had carefully read

2    them and agreed to the disclosure of the information.  We have

3    nothing to indicate that the information was disclosed to anyone

4    other than the employer, and the information wasn't adverse.

5    That's the critical key here, is there was no adverse

6    information disclosed.

7         And so if nothing comes back that's adverse, then there is

8    no harm.  Even under a very liberal reading of *Thomas*, there

9    still is no harm in this situation because there is no -- there

10   is nothing that was adverse that could be considered by the

11   employer that was adverse that maybe caused the employer to

12   pause.  And, of course, nothing adverse that caused the employer

13   to deny her employment.

14        This is simply a speculative injury.  And we believe that

15   reading *Spokeo* correctly, it would result in what the court did

16   in *Smith* in finding, okay, remember -- take a step back.

17        The FCRA requires not just a violation but a willful

18   violation in order to result in injury.  And the willful

19   violation which we argue more in depth in the *Iqbal-Twombly*

20   motion, a willful violation itself requires that the statute be

21   violated and that the defendant's actions were objectively

22   unreasonable.

23        And so there is nothing to tie that into a potential injury

24   here.  And there is even no allegation that the defendant's

25   conduct in this case even rose to that level.

14

1          So on all levels, whether it's standing from the standpoint

2     of whether there was an injury or standing from the standpoint

3     of whether there was even an allegation sufficient to make a

4     violation, there is just no basis for this case to continue.

5                    THE COURT:  All right.  Okay.  Thank you.

6                    MR. ROSKELLEY:  Thank you, Your Honor.

7                    THE COURT:  Mr. -- is it Peluso?

8                    MR. PELUSO:  Peluso, Your Honor, yes.

9                    THE COURT:  Okay.

10                   MR. PELUSO:  Yes, Your Honor.  It's Patrick Peluso,

11    Woodrow & Peluso, LLC, appearing on behalf of Gloria Mitchell

12    and the alleged class.

13         First, I would like to get to the question that you

14    addressed to Mr. Roskelley.  I would like to start off by making

15    the point that these, as I would call them, faulty disclosure

16    claims -- these are not new.  There have been cases going back

17    at least half a decade.  Two off the top of my head are *Reardon*

18    *vs. ClosetMaid*, *Domino's vs. Singleton* -- these cases deal with

19    two separate violations of the FCRA.

20         There is one where, as plaintiff Mitchell alleges, that the

21    disclosure form contained extraneous information and, therefore,

22    wasn't clear and conspicuous and didn't stand alone.

23         There is a separate violation under the FCRA for situations

24    where a job applicant or employee has a background check

25    procured about him or her, the information comes back something

1    adverse that the company doesn't like, they choose to either not

2    hire the person or fire the person, and then doesn't take the

3    required steps under the FCRA to, you know, make that person

4    aware of that fact.

5         You have to provide the background check before you take

6    the adverse action.  You have to provide a summary of FCRA

7    rights before taking the adverse action.

8         So this issue of, well, Mitchell didn't have adverse action

9    taken against her, that means that she can't have a claim or

10   represent a class of persons who WinCo may not have taken proper

11   adverse action steps against.  But the faulty disclosure claim,

12   the 16-(b)(b)(2) claim, is not new and has been around for a

13   while, and courts have certified these classes.

14        If the inquiry really hinged on the ability to isolate some

15   sort of injury, like losing the job or having false information

16   disseminated, these classes couldn't be certified because that

17   would require an individual-by-individual inquiry into whether

18   the violation actually occurred.

19        These cases have existed.  I would venture to say there is

20   dozens of them where this specific type of FCRA violation has

21   resulted in a certified class.

22            THE COURT:  Have -- other than the Eastern Virginia

23   case -- I'm drawing a blank on the name of the case -- but the

24   *Thomas* case, have there been any cases in which either class

25   certification occurred after *Spokeo* or in which summary judgment

1   was heard in a class and an impermissible use class, as he

2   called it in the Thomas case, where summary judgment was denied

3   post *Spokeo*, other than Judge Payne's decision in *Thomas*?

4            MR. PELUSO:  I am not aware of any, Your Honor.

5            THE COURT:  What I'm saying is that -- you know, I'm

6   not saying that the world changed with *Spokeo*.  Clearly, the

7   case -- it's hard to figure out what we can conclude from the

8   case because, you know, it was remanded to the Ninth Circuit.

9        But Justice Alito's suggestion that you -- that a case

10  under the FCRA could not proceed on a bare procedural violation

11  of a technical requirement.  What is not answered, obviously --

12  because that case didn't involve what we have here -- is whether

13  a failure to give a standalone prominent disclosure which

14  contains all the necessary information but it's not standalone

15  and it's not -- doesn't otherwise comply with the requirements

16  of the rule, whether that is a bare procedural violation of a

17  technical requirement.

18       Now, Judge Payne said it was not; that this, in fact, is

19  intended to convey substantive rights.  But what I'm struggling

20  with is when I look at the *Akins* and *Public Citizen* case, which

21  was the examples given, those were far different because they

22  involved electoral rights and their right to have access to

23  public information.  And imposing procedural barriers to that

24  kind of information clearly has substantive implication, and I'm

25  not as sure that it does in this case unless, in fact, the

1      information was adversely used in some way by the employer or

2      resulted in some adverse employment action.

3           That's kind of in a nutshell what I'm wrestling with, is we

4      know what Judge Alito said, that a bare procedural violation of

5      a technical requirement is not going to be the kind of statutory

6      right which gives rise to particularized injury necessary for

7      Article III standing.  But what we don't know is:  Where do you

8      draw the line between a bare procedural right and a substantive

9      right?

10         Now, I know where Judge Payne drew the line, but that may

11     be the only decision we have.  And there are apparently some

12     contrary decisions, although without any real analysis.

13        So why should I conclude that this is more than a bare

14     procedural right when the information was there, it just wasn't

15     in a standalone document?

16        MR. PELUSO:  Because Congress specifically decided

17     that the information had to be provided in this particular way

18     in order to --

19        THE COURT:  Well, but Judge Alito -- Justice Alito

20     clearly said that statute -- that Congress can, by statute, in

21     some instances create substantive rights which give rise to

22     Article III standing; but clearly when -- in his opinion, he

23     said "in some cases."  So, clearly, he has a mind that there are

24     some cases where a bare procedural right is not -- or a

25     procedural right is not going to be enough.  So that's what I'm

1    asking you, is:  How do you draw the line?

2            MR. PELUSO:  Well, I certainly think that the ZIP code

3    example that Judge Alito used would be much more of a procedural

4    type than -- you know, we cited to numerous Senate reports and

5    House reports from when -- back in the early '90s, early to mid

6    '90s, when this standalone disclosure section was being added to

7    the FCRA.

8        And it really makes clear there that Congress was very

9    concerned about people getting this type of information in this

10   specific way so that it's very clear that this sort of

11   information is being made available about them, that it's a

12   privacy issue, in essence.

13           You know, and I would say that --

14           THE COURT:  Well, there is no question there is a

15   privacy issue.  But if no private information is revealed that

16   is problematic, why is it a privacy issue?

17           MR. PELUSO:  Well, there is the privacy issue of

18   knowing that this information was being disclosed in the first

19   place.  There is a case out of the Middle District of

20   Pennsylvania -- I believe it's *Kelchner* -- and it said, in part:

21   "The FCRA sought to protect the privacy interests of employees

22   by placing strict disclosure requirements on employers."

23       So these requirements are strict for a reason.  It's

24   because Congress recognized that this is important and stated

25   that companies needed to do this.

1          THE COURT:  Let me ask a practical question.  You

2     were -- I assume this is a 23(d)(3) class you're seeking

3     damages?

4          MR. PELUSO:  Correct.

5          THE COURT:  And I assume they are statutory damages?

6          MR. PELUSO:  Correct.

7          THE COURT:  What are the statutory damages?  I haven't

8     looked.

9          MR. PELUSO:  It's between $100 and $1,000, I believe,

10     at the finder of fact's discretion.

11          THE COURT:  Okay.  So every employee hired by WinCo

12     would be entitled to between 100 and $1,000 regardless whether

13     there was any negative information obtained if this disclosure

14     form was used, which I assume would mean every single employee

15     at WinCo would receive that.

16          MR. PELUSO:  It's a two-year statute.  So it's

17     whoever --

18          THE COURT:  Within the last two years.

19          MR. PELUSO:  -- applied or was presented with this

20     form two years from the date the complaint was filed.

21          Now, I really would like to reiterate that, you know, as

22     has been the case for quite a while, as the Supreme Court stated

23     in *Lujan*, that the concrete injury analysis asks whether an

24     alleged intangible harm has a close relationship to a harm that

25     has traditionally been regarded as providing a basis for lawsuit

1   in English or American courts.

2        And that's what we have here.  We have informational

3   injuries, and we have invasion of privacy injuries.  These are

4   torts that have been recognized for centuries in our American

5   system and, before that, the English system that we derived

6   from.  This isn't new.  This isn't exactly new ground that

7   Congress stepped into by creating these disclosure requirements.

8        You know, as the *Thomas* court found, that that sort of lack

9   of the specific information that you required in a specific way

10  is clearly substantive, and it's not procedural or technical.

11       I also believe that this analysis that Mr. Roskelley was

12  talking about, that the person never lost out on a job,

13  et cetera, I believe that confuses injury with damages.  So I

14  don't believe you need to actually suffer that sort of damage of

15  losing out on a job, lost wages, et cetera, to have suffered a

16  concrete injury.  Those are two separate things.

17       You know, the disclosure requirements at issue in this case

18  have parallels throughout the federal statutory scheme.  One

19  that the court may be most familiar with is the Truth in Lending

20  Act, which states that consumers have the right to receive

21  certain information in their loan documents; you know, they have

22  to be told exactly what the interest rate is, where to mail

23  payment checks, et cetera.

24       So, I believe that, you know, if the court were to find no

25  standing here, the court would essentially be saying that

1    Congress doesn't have the power to dictate that vital consumer

2    information has to be made available and has to be made

3    available in a certain way.

4        Congress can enact the statute, state that you have to do

5    A, B, C in this particular way; but if it's going to be found

6    that unless there is some subsequent damage that's suffered,

7    there is no concrete injury, that law has no teeth.  No one can

8    enforce it.  There is absolutely no reason for companies to

9    follow it.

10            THE COURT:  Well, couldn't -- I assume the Federal

11    Trade Commission or some equivalent federal agency could bring

12    injunctive relief or a class could be brought under 23(b)(2) to

13    compel compliance in the future.

14            MR. PELUSO:  Sure.  But Congress also stated that the

15    damages were tied to this.  So it's not just pure injunctive

16    relief.  People have been harmed.  They have suffered

17    informational injury; they've suffered invasion of privacy.

18    They are entitled to the statutory damages that come with that.

19        You know, I would also --

20            THE COURT:  Okay.  Just to be clear -- I want to make

21    sure I'm absolutely clear on this -- you are not arguing that

22    there was a substantive failure in the disclosure, but only that

23    it was not -- didn't comply with the requirements that it be a

24    standalone document that, I guess, clearly -- I'm trying -- I

25    don't have the language in front of me, but is there an argument

1          that the information simply was misleading in some way?

2              MR. PELUSO:  Well, sure, Your Honor.  There is -- if

3      we take a step back -- and this was argued more in our response

4      to WinCo's 12(b)(6) motion.

5          The FCRA has different types of reports.  There is a

6      consumer report, which is what we have at issue here.  Then

7      there is an investigative consumer report, which is -- the two

8      reports are separately defined.  They entail different things.

9      They are contained in separate sections of the FCRA.  They have

10     distinct disclosure requirements, et cetera.  They are two

11     separate things.

12         The issue with WinCo's -- one issue with WinCo's disclosure

13     is that it goes far beyond what the FTC in the 1999 Wilner

14     advisory opinion stated can be included about investigative

15     consumer reports in the consumer report disclosure.

16         So the FTC, in the Wilner opinion, stated that a company

17     such as WinCo could include a very limited investigative

18     consumer report disclosure in the consumer report disclosure

19     without running afoul of the consumer report requirement that

20     the document be clear and conspicuous and stand alone.

21         So WinCo's investigative consumer report disclosure goes

22     far beyond the example given in Wilner.  It goes to the nature

23     and scope of the investigative consumer report that could be

24     done which the FTC in Wilner specifically said cannot be done.

25             So this isn't an example of a ZIP code being missing from

1       the disclosure or, you know, WinCo's disclosure contains the

2       name of the consumer reporting agency that presumably would do

3       the report, TalentWise.

4           We are not saying that WinCo violated the law because they

5       didn't put TalentWise's phone number.  That's not what we are

6       saying.  We are saying that they made the disclosure about the

7       consumer report not clear and conspicuous at all because they

8       conflated it with the investigative consumer report disclosure,

9       which is entirely different.

10      WinCo --

11          THE COURT:  Well, but, again, the disclosure was

12      there.  It just wasn't clear and conspicuous, and it wasn't in a

13      single document.  That's what I was trying to clarify.

14          MR. PELUSO:  Then we would argue there is no

15      disclosure at all.

16          THE COURT:  Okay.  I understand that.  But I'm saying

17      apart from that argument, there was nothing that was misleading

18      in and of itself.  It's that it was not clear and conspicuous;

19      it was not done in a single disclosure; and, therefore, by

20      statute, no disclosure was made at all?

21          MR. PELUSO:  Correct.

22          THE COURT:  Okay.

23          MR. PELUSO:  We would say that the fact that it's not

24      clear and conspicuous is, to some extent, misleading in that it

25      confuses the consumer as to what could be procured about him or

1    her.  But I'm not saying that --

2             THE COURT:  Well, it didn't suggest that -- it did not

3    fail to identify what could be obtained through this disclosure

4    or through this consent?

5             MR. PELUSO:  It distracted away from the --

6             THE COURT:  No, I understand.  But answer my -- I

7    understand your argument basically is it's a distraction, and it

8    wasn't clear and conspicuous.

9        What I'm asking is:  Just looking at the language, did it

10   fail to disclose some step that WinCo intended to take in terms

11   of obtaining information either through the credit report or the

12   investigative credit report?

13            MR. PELUSO:  No, Your Honor.

14            THE COURT:  Okay.  So the argument is that it was

15   misleading because it was not clear and conspicuous, and it was

16   not in a standalone document; and therefore, the statute was not

17   complied with; therefore, no disclosure was made; and therefore,

18   whatever consent was obtained was invalid?

19            MR. PELUSO:  Correct.

20            THE COURT:  All right.  I just wanted to make sure I

21   understood the argument.  Go ahead.

22            MR. PELUSO:  I would like to pivot and reiterate that

23   the issue that was actually in front of the Supreme Court in

24   *Spokeo* is quite different from what we had here.

25       Your Honor mentioned earlier that it dealt with a different

1       section of the FCRA, but it's actually a little more different

2       than that in that -- so Robins, the plaintiff in the case,

3       alleged that Spokeo was a consumer reporting agency and didn't

4       maintain reasonable procedures to ensure the maximum possible

5       accuracy of the information that it was posting on its website.

6           But there is nothing in the record that indicates whether

7       anyone at all besides Robins himself and Robins' attorneys ever

8       even reviewed the report.  So you're dealing with something

9       that's much more hypothetical.  Even though it's a separate

10      violation than what you had here, a separate section of the FCRA

11      dealing with different provisions, there, it wasn't even clear

12      that the report was viewed by anyone at all.

13          Whereas, here, you have a much more concrete and

14      particularized instance that Mitchell herself received --

15      applied for a job with WinCo, was provided these documents, and

16      the documents were noncompliant.  That's quite a different thing

17      than the situation that Justice Alito was presented, where it

18      wasn't even clear that the report that Spokeo had in its

19      possession was ever viewed by anyone besides the plaintiff

20      himself and his attorneys.  I think that's an important point.

21          I also would like to briefly address the willfulness issue.

22      Mr. Roskelley is correct that a violation of the FCRA must be

23      willful.  But, you know, at this stage, the plaintiff doesn't

24      need to prove willfulness to -- for her claims to survive, to

25      get past the motion to dismiss.

1          We cited numerous cases where allegations such as what

2     Plaintiff Mitchell included that WinCo is a large company that

3     has ample access to legal counsel; that these laws have been in

4     effect for decades; that there is FTC guidance specifically

5     stating you can't do this; and that WinCo either was aware of it

6     or reasonably should have been aware of it.  And that is enough

7     to survive willfulness at this stage.

8          And with that, if the court has no further questions.

9               THE COURT:  No.  That's fine.  Thank you.

10              MR. PELUSO:  Thank you.

11              THE COURT:  Mr. Roskelley.

12              MR. ROSKELLEY:  Yes.  Thank you, Your Honor.  Just

13    briefly, I want to address a couple of points.

14         Going back to the original question, I wanted to point out

15    that the issue that we have been wrestling with today really

16    originates from the fact that Justice Alito stated and is

17    accurate that the Article III standing really is based upon,

18    first, harms that have been traditionally regarded as providing

19    a basis for lawsuit in English and American courts.

20         So, first of all, you look to see:  Okay, is this a

21    traditional type of standing?  Is this traditionally English and

22    American courts provided for this?

23         He says then:  If not, Congress in some limited

24    circumstances, can -- as they decided in *Lujan*, can elevate to

25    the status of legally cognizable injuries, concrete de facto

1    injuries that were previously inadequate of law.

2        So it's in the context of:  Okay, first we look to English

3    and American law.  Is this something that was recognized as a

4    cognizable injury under them?  If not, Congress can, in some

5    cases, elevate otherwise incognizable injuries to be concrete

6    injuries.

7        But then right after that, he goes into talking about

8    Congress's role and says Congress cannot elevate something that

9    is not concrete under Article III.  Then he says -- right after

10   that statement, he says:  "For that reason, Robins could not,

11   for example, allege a bare procedural violation divorced from

12   any concrete harm and satisfy the injury-in-fact requirement."

13       My reading of this is he is basically saying:  We have to

14   have more than what we have right now.  The FCRA -- in the FCRA,

15   that Congress didn't create a new cognizable injury; and

16   therefore, bare procedural injuries are not sufficient.

17           THE COURT:  Well, but the example which he gave was,

18   for example, an incorrect ZIP code.  If, instead of an incorrect

19   ZIP code, you have, you know, just -- you have a disclosure

20   which has been statutorily and, I guess, and by agency rules or

21   advice, inadequate to give the notice that is required by

22   statute, why does that not then make that the failure -- or the

23   consent given to be completely invalid and then that, in turn,

24   to become something more -- to be, in turn, the kind of

25   procedural right which can constitute injury-in-fact?

1          MR. ROSKELLEY:  That's a good question.  And the

2     answer, in my view, is the fact that we have to look at what

3     the -- and this is what the Supreme Court did look at:  What was

4     Congress trying to accomplish?  They were trying to accomplish

5     to curb the dissemination of false information.  That's the

6     focus of the statute.

7          The focus of the statute isn't providing consent.  The

8     providing consent is a procedural mechanism to help alleviate or

9     eliminate the curbing or the dissemination of false information

10    and granting an individual the right to review their report once

11    it's there.  Those are the -- the focus is false information,

12    not the procedural right.

13         THE COURT:  So, in your view, unless there is a

14    dissemination of false information, there cannot be Article III

15    standing?

16         MR. ROSKELLEY:  Correct.  Unless there's some type

17    of -- there has to be some type of injury, like the

18    dissemination of false information, the rejection of employment,

19    or some other concrete harm.

20         THE COURT:  What if a plaintiff were to have filed a

21    affidavit saying that "I am hypersensitive about my privacy

22    rights, and I would not have applied for employment at all if I

23    had known that a condition of doing so was consenting to this

24    disclosure.  I didn't read the form because I have, you know, a

25    fourth-grade education, and I couldn't get through the legalese

1    of this complex, multipage document"?  Would that be a

2    sufficient injury-in-fact?

3              MR. ROSKELLEY:  I don't believe it would be a

4    sufficient injury-in-fact.  And that's not even the case we have

5    here.

6              THE COURT:  No, it isn't.  I know it isn't.  I'm

7    asking totally hypothetically.

8              MR. ROSKELLEY:  No.  I don't think that's -- would be

9    sufficient there.

10        I think we have a closer question.  Let's say if what had

11   happened, instead, was that the rights to the applicant were not

12   given stating they had the right to review the form, and the

13   individual didn't know they could request the review, and there

14   was false information on it, that's a closer question because

15   now what Congress is trying to prevent is the dissemination of

16   false information; right?

17             THE COURT:  So let me take a stab at summarizing.  I

18   do this all the time; I'm not saying you didn't explain it well.

19   But I would like to try to restate your argument.

20        I think what you're, in essence, saying is that the

21   violation of a procedural right granted by statute can only be

22   sufficient to constitute an injury-in-fact if, in fact, the

23   procedural right is central to a substantive right that Congress

24   is trying to protect?

25             MR. ROSKELLEY:  Correct.

1          THE COURT:  And in the case of *Akins*, it had to do

2     with the voters' ability to obtain information --

3          MR. ROSKELLEY:  Correct.

4          THE COURT:  -- so that if the procedural violation

5     resulted in frustrating what Congress was trying to attempt,

6     then you have a substantive right giving rise to Article III

7     standing -- or procedural right giving rise to Article III

8     standing.

9          In *Public Citizen*, it had to do with an advocacy

10    organization's ability to obtain information.  And that was

11    determined by the Supreme Court to be a harm which Congress

12    specifically intended to protect against through a procedural

13    rights, and so that a violation of those procedural rights would

14    constitute, again, an injury-in fact giving rise to Article III

15    standing.

16          MR. ROSKELLEY:  Correct.

17          THE COURT:  In this case, you're saying that what

18    Congress was trying to do was not to ensure that a form was

19    proper but, rather, that the rights of individuals to the

20    privacy of their information -- consumer information, private

21    information -- that that would not be disclosed to the public

22    without procedural safeguards; and that unless you have a

23    procedural right which, in fact, was critical to protect against

24    that harm, then there is no Article III standing.

25          MR. ROSKELLEY:  Right.  And I would even refine it

1    more by saying, again, the focus was the dissemination of false

2    information and the consequences from that, giving the

3    individual the right to review that information and knowledge

4    and ability to correct that information.

5           THE COURT:  So even a hypersensitivity to your privacy

6    is not what Congress was trying to protect.  What they are

7    trying to protect is the dissemination of false information and

8    the inability to correct that?

9           MR. ROSKELLEY:  Yes.

10          THE COURT:  All right.

11          MR. ROSKELLEY:  Your Honor, with that, I think that we

12   have made our arguments.

13          THE COURT:  All right.  Counsel, we'll have to take

14   the matter under advisement because I've just got to dig a

15   little deeper in this.  I think I have an understanding on, you

16   know, kind of a surface level of what the issues are, but I

17   think I do need to dig down a little deeper.  So we'll have to

18   issue a written decision in this matter.

19       I would like to have it out very quickly, but I can't

20   promise that because we're just kind of facing a tsunami, and

21   we're working as hard as we can.  And we'll try to have a

22   decision as soon as possible.

23       I appreciate the quality of the briefing and the argument.

24   It really is a fascinating question.  And I deal with standing a

25   lot, mostly in the environmental setting and whatnot, but this

1      case raises it to a different level.

2             And I appreciate, again, your bringing this before me so

3      that I will have that chance to issue a decision.  And I guess

4      I'll maybe break the tie between the Southern District of Ohio

5      and the Eastern District of Virginia, but we'll see how it turns

6      out.

7             All right.  We'll be in recess.

8             (Proceedings concluded at 11:59 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER

I, Tamara Hohenleitner, Federal Official Realtime Court Reporter, in and for the United States District Court for the District of Idaho, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 9th day of February, 2018.

/S/ TAMARA I. HOHENLEITNER
_____
TAMARA I. HOHENLEITNER, CSR NO. 619, CRR
FEDERAL OFFICIAL COURT REPORTER

## $

**$1,000** [2] - 19:9, 19:12
**$100** [1] - 19:9

## '

**'90s** [2] - 18:5, 18:6

## 1

**100** [2] - 8:15, 19:12
**11:59** [1] - 32:8
**12(b)(6** [1] - 22:4
**16-(b)(b)(2** [1] - 15:12
**16-76** [1] - 3:3
**18** [1] - 3:2
**1999** [1] - 22:13

## 2

**2016** [1] - 3:2
**23(b)(2** [1] - 21:12
**23(d)(3** [1] - 19:2

## A

**a.m** [1] - 32:8
**ability** [4] - 15:14, 30:2, 30:10, 31:4
**absolutely** [2] - 21:8, 21:21
**access** [2] - 16:22, 26:3
**accomplish** [2] - 28:4
**accuracy** [1] - 25:5
**accurate** [2] - 7:15, 26:17
**Act** [1] - 20:20
**action** [6] - 11:2, 15:6, 15:7, 15:8, 15:11, 17:2
**actions** [1] - 13:21
**actual** [6] - 4:4, 6:1, 6:2, 8:6, 10:22, 11:23
**added** [1] - 18:6
**addition** [2] - 7:15, 12:18
**additional** [2] - 4:4, 11:7
**address** [3] - 5:15, 25:21, 26:13
**addressed** [1] - 14:14
**adopting** [3] - 6:7, 6:12, 9:19
**adverse** [14] - 11:2,

12:23, 13:4, 13:5, 13:7, 13:10, 13:11, 13:12, 15:1, 15:6, 15:7, 15:8, 15:11, 17:2
**adversely** [1] - 17:1
**advice** [1] - 27:21
**advisement** [1] - 31:14
**advisory** [1] - 22:14
**advocacy** [1] - 30:9
**affected** [1] - 12:23
**affidavit** [1] - 28:21
**afoul** [1] - 22:19
**agency** [6] - 7:12, 21:11, 23:2, 25:3, 27:20
**agency's** [1] - 7:13
**agreed** [1] - 13:2
**ahead** [1] - 24:21
**Akins** [4] - 3:25, 4:20, 16:20, 30:1
**Alito** [3] - 3:23, 4:25, 17:14, 17:19, 18:3, 25:17, 26:16
**Alito's** [1] - 16:9
**allegation** [4] - 8:1, 8:10, 13:24, 14:3
**allegations** [5] - 10:2, 10:3, 10:4, 26:1
**allege** [2] - 4:4, 27:11
**alleged** [5] - 7:6, 10:16, 14:12, 19:24, 25:3
**alleges** [1] - 14:20
**alleging** [1] - 7:1
**alleviate** [1] - 28:8
**alone** [2] - 14:22, 22:20
**American** [3] - 20:1, 20:4, 26:19, 26:22, 27:3
**ample** [1] - 26:3
**analogy** [1] - 4:23
**analysis** [5] - 6:15, 11:11, 17:12, 19:23, 20:11
**analyzing** [1] - 11:22
**answer** [5] - 4:10, 5:3, 8:18, 24:6, 28:2
**answered** [1] - 16:11
**apart** [4] - 10:23, 11:23, 12:6, 23:17
**apologize** [1] - 3:5
**appearing** [1] - 14:11
**applicant** [3] - 9:25, 14:24, 29:11
**applied** [2] - 19:19, 25:15, 28:22
**apply** [1] - 6:14

**appreciate** [2] - 31:23, 32:2
**area** [3] - 5:16, 5:25, 9:12
**argue** [3] - 10:9, 13:19, 23:14
**argued** [2] - 6:15, 22:3
**arguing** [2] - 12:13, 21:21
**argument** [8] - 5:15, 21:25, 23:17, 24:7, 24:14, 24:21, 29:19, 31:23
**arguments** [2] - 5:20, 31:12
**Article** [12] - 7:1, 8:13, 8:20, 17:7, 17:22, 26:17, 27:9, 28:14, 30:6, 30:7, 30:14, 30:24
**assess** [1] - 4:19
**assume** [5] - 10:19, 19:2, 19:5, 19:14, 21:10
**attempt** [2] - 7:23, 30:5
**attempted** [1] - 7:24
**attempting** [1] - 9:17
**attorneys** [2] - 25:7, 25:20
**available** [3] - 18:11, 21:2, 21:3
**aware** [6] - 7:3, 7:5, 15:4, 16:4, 26:5, 26:6

## B

**background** [3] - 7:4, 14:24, 15:5
**bare** [9] - 7:1, 16:10, 16:16, 17:4, 17:8, 17:13, 17:24, 27:11, 27:16
**barriers** [1] - 16:23
**based** [4] - 9:12, 10:15, 10:23, 26:17
**basis** [3] - 14:4, 19:25, 26:19
**battle** [1] - 3:18
**bear** [1] - 3:14
**became** [1] - 7:5
**become** [1] - 27:24
**began** [1] - 8:19
**beginning** [1] - 5:9
**behalf** [2] - 5:14, 14:11
**bench** [2] - 4:17, 4:18
**between** [4] - 17:8,

9:9, 19:12, 32:4
**beyond** [3] - 4:5, 22:13, 22:22
**bit** [2] - 3:22, 11:13
**blank** [1] - 15:23
**break** [1] - 32:4
**briefing** [2] - 3:12, 31:23
**briefly** [2] - 25:21, 26:13
**bring** [1] - 21:11
**bringing** [1] - 32:2
**brought** [1] - 21:12

## C

**candid** [1] - 3:16
**cannot** [5] - 6:3, 6:25, 22:24, 27:8, 28:14
**carefully** [2] - 11:17, 13:1
**Case** [1] - 3:3
**case** [43] - 3:7, 3:16, 4:4, 4:18, 4:20, 5:4, 5:10, 5:18, 6:16, 7:2, 7:22, 8:3, 8:14, 9:6, 10:12, 10:20, 10:22, 10:25, 11:21, 11:25, 12:24, 13:25, 14:4, 15:23, 15:24, 16:2, 16:7, 16:8, 16:9, 16:12, 16:20, 16:25, 18:19, 19:22, 20:17, 25:2, 29:4, 30:1, 30:17, 32:1
**cases** [13] - 3:25, 6:4, 8:21, 9:1, 11:19, 14:16, 14:18, 15:19, 15:24, 17:23, 17:24, 26:1, 27:5
**caused** [2] - 13:11, 13:12
**central** [1] - 29:23
**centuries** [1] - 20:4
**certain** [4] - 8:25, 12:2, 20:21, 21:3
**certainly** [1] - 18:2
**certification** [1] - 15:25
**certified** [4] - 11:1, 15:13, 15:16, 15:21
**certify** [2] - 11:10, 12:5
**cetera** [4] - 20:13, 20:15, 20:23, 22:10
**challenge** [1] - 3:16
**chance** [1] - 32:3
**changed** [1] - 16:6
**check** [2] - 14:24,

15:5
**checks** [1] - 20:23
**choose** [1] - 15:1
**Circuit** [2] - 5:23, 16:8
**circumstances** [3] - 3:24, 4:2, 26:24
**cited** [5] - 9:1, 9:7, 11:13, 18:4, 26:1
**citing** [1] - 11:16
**Citizen** [4] - 3:25, 4:20, 16:20, 30:9
**Civil** [1] - 3:3
**claim** [3] - 15:9, 15:11, 15:12
**claims** [2] - 14:16, 25:24
**clarify** [1] - 23:13
**class** [13] - 11:3, 11:8, 11:9, 14:12, 15:10, 15:21, 15:24, 16:1, 19:2, 21:12
**classes** [2] - 15:13, 15:16
**clear** [16] - 4:13, 6:3, 14:22, 18:8, 18:10, 21:20, 21:21, 22:20, 23:7, 23:12, 23:18, 23:24, 24:8, 24:15, 25:11, 25:18
**clearly** [9] - 3:23, 10:25, 16:6, 16:24, 17:20, 17:22, 17:23, 20:10, 21:24
**CLERK** [1] - 3:3
**close** [2] - 11:8, 19:24
**closer** [2] - 29:10, 29:14
**closetMaid** [1] - 14:18
**code** [5] - 7:18, 18:2, 22:25, 27:18, 27:19
**cognizable** [2] - 26:25, 27:4, 27:15
**Commission** [1] - 21:11
**companies** [2] - 18:25, 21:8
**company** [3] - 15:1, 22:16, 26:2
**compel** [1] - 21:13
**complaint** [1] - 19:20
**completely** [4] - 9:21, 9:23, 10:13, 27:23
**complex** [1] - 29:1
**compliance** [1] - 21:13
**complied** [1] - 24:17

**comply** [3] - 10:24, 16:15, 21:23
**concern** [3] - 5:16, 6:1, 6:16
**concerned** [1] - 18:9
**conclude** [2] - 16:7, 17:13
**concluded** [1] - 32:8
**conclusion** [1] - 11:22
**concrete** [12] - 5:1, 5:22, 5:25, 19:23, 20:16, 21:7, 25:13, 26:25, 27:5, 27:9, 27:12, 28:19
**condition** [1] - 28:23
**conduct** [1] - 13:25
**confer** [2] - 6:3, 9:13
**conferred** [3] - 6:2, 8:14, 8:25
**conferring** [1] - 9:22
**conflated** [1] - 23:8
**conflicting** [1] - 11:20
**confuses** [2] - 20:13, 23:25
**Congress** [28] - 4:5, 6:2, 6:3, 6:5, 6:11, 6:18, 7:23, 8:25, 9:12, 17:16, 17:20, 18:8, 18:24, 20:7, 21:1, 21:4, 21:14, 26:23, 27:4, 27:8, 27:15, 28:4, 29:15, 29:23, 30:5, 30:11, 30:18, 31:6
**Congress's** [1] - 27:8
**consent** [11] - 10:13, 10:23, 11:5, 11:7, 12:3, 12:25, 24:4, 24:18, 27:23, 28:7, 28:8
**consenting** [1] - 28:23
**consequences** [1] - 31:2
**considered** [2] - 5:24, 13:10
**consistent** [1] - 10:14
**conspicuous** [8] - 14:22, 22:20, 23:7, 23:12, 23:18, 23:24, 24:8, 24:15
**constitute** [6] - 4:3, 4:9, 4:13, 27:25, 29:22, 30:14
**Constitution** [2] - 6:5, 9:4

**constitutionally** [1] - 6:4
**consumer** [19] - 7:11, 7:12, 7:14, 21:1, 22:6, 22:7, 22:15, 22:18, 22:19, 22:21, 22:23, 23:2, 23:7, 23:8, 23:25, 25:3, 30:20
**consumers** [1] - 20:20
**contained** [2] - 14:21, 22:9
**contains** [2] - 16:14, 23:1
**contest** [1] - 12:11
**context** [2] - 8:6, 27:2
**continue** [1] - 14:4
**contrary** [1] - 17:12
**convey** [1] - 16:19
**correct** [13] - 11:15, 12:17, 19:4, 19:6, 23:21, 24:19, 25:22, 28:16, 29:25, 30:3, 30:16, 31:4, 31:8
**correctly** [1] - 13:15
**Counsel** [1] - 3:5
**counsel** [3] - 3:14, 26:3, 31:13
**couple** [3] - 5:21, 26:13
**course** [2] - 10:9, 13:12
**Court** [7] - 7:7, 9:17, 12:16, 19:22, 24:23, 28:3, 30:11
**court** [11] - 3:3, 4:14, 4:20, 8:12, 10:17, 13:15, 20:8, 20:19, 20:24, 20:25, 26:3
**courts** [4] - 15:13, 20:1, 26:19, 26:22
**create** [2] - 17:21, 27:15
**created** [1] - 4:12
**creating** [2] - 7:23, 20:7
**credit** [2] - 24:11, 24:12
**critical** [2] - 13:5, 30:23
**curb** [4] - 6:6, 6:11, 9:18, 28:5
**curbing** [1] - 28:9

# D

**damage** [2] - 20:14, 21:6

**damages** [7] - 4:5, 19:3, 19:5, 19:7, 20:13, 21:15, 21:18
**date** [1] - 19:20
**de** [1] - 26:25
**deal** [2] - 14:18, 31:24
**dealing** [4] - 9:7, 25:8, 25:11
**dealt** [1] - 24:25
**decade** [1] - 14:17
**decades** [1] - 26:4
**decided** [2] - 17:16, 26:24
**decision** [12] - 3:20, 3:23, 3:24, 10:20, 12:7, 12:8, 12:10, 16:3, 17:11, 31:18, 31:22, 32:3
**decisions** [2] - 11:17, 17:12
**decrease** [2] - 6:13, 9:20
**decreasing** [1] - 6:19
**deeper** [3] - 11:19, 31:15, 31:17
**deeply** [1] - 11:25
**defendant** [1] - 5:14
**defendant's** [2] - 13:21, 13:24
**defendants** [1] - 5:11
**DEFENSE** [1] - 11:15
**defined** [1] - 22:8
**definition** [1] - 11:4
**demands** [1] - 6:25
**denial** [2] - 10:3, 10:16
**denials** [1] - 8:22
**denied** [4] - 6:22, 8:2, 9:3, 16:2
**deny** [1] - 13:13
**denying** [1] - 7:25
**depth** [1] - 13:19
**derived** [1] - 20:5
**designed** [4] - 6:7, 6:13, 9:20, 10:7
**determine** [1] - 4:23
**determined** [1] - 30:11
**determining** [2] - 4:11, 8:13
**dictate** [1] - 21:1
**different** [13] - 4:24, 9:21, 9:23, 16:21, 22:5, 22:8, 23:9, 24:24, 24:25, 25:1, 25:11, 25:16, 32:1
**difficult** [1] - 3:13
**dig** [3] - 11:19, 31:14, 31:17

**digging** [1] - 11:12
**directly** [1] - 8:18
**disclose** [1] - 24:10
**disclosed** [4] - 13:3, 13:6, 18:18, 30:21
**disclosure** [33] - 10:24, 11:5, 12:3, 12:6, 13:2, 14:15, 14:21, 15:11, 16:13, 18:6, 18:22, 19:13, 20:7, 20:17, 21:22, 22:10, 22:12, 22:15, 22:18, 22:21, 23:1, 23:6, 23:8, 23:11, 23:15, 23:19, 23:20, 24:3, 24:17, 27:19, 28:24
**disclosures** [2] - 9:8, 10:13
**discretion** [1] - 19:10
**dismiss** [4] - 3:4, 3:11, 5:12, 25:25
**dispose** [1] - 5:18
**disseminated** [2] - 10:5, 15:16
**dissemination** [10] - 6:6, 6:12, 9:19, 28:5, 28:9, 28:14, 28:18, 29:15, 31:1, 31:7
**distinct** [1] - 22:10
**distracted** [1] - 24:5
**distraction** [1] - 24:7
**District** [3] - 3:21, 18:19, 32:4, 32:5
**district** [1] - 4:17
**divorced** [1] - 27:11
**document** [7] - 9:22, 17:15, 21:24, 22:20, 23:13, 24:16, 29:1
**documents** [4] - 9:23, 20:21, 25:15, 25:16
**Domino's** [1] - 14:18
**done** [2] - 22:24, 23:19
**down** [2] - 11:12, 31:17
**dozens** [1] - 15:20
**draw** [2] - 17:8, 18:1
**drawing** [1] - 15:23
**drew** [1] - 17:10
**dug** [1] - 11:25

# E

**early** [2] - 18:5
**Eastern** [3] - 3:20, 15:22, 32:5
**education** [1] - 28:25
**effect** [1] - 26:4

**either** [6] - 8:7, 8:10, 15:1, 15:24, 24:11, 26:5
**electoral** [1] - 16:22
**elevate** [3] - 26:24, 27:5, 27:8
**eliminate** [1] - 28:9
**empirical** [1] - 7:16
**employee** [4] - 9:25, 14:24, 19:11, 19:14
**employees** [1] - 18:21
**employer** [6] - 8:3, 13:4, 13:11, 13:12, 17:1
**employers** [1] - 18:22
**employment** [13] - 6:15, 6:17, 6:23, 7:24, 7:25, 8:2, 8:10, 9:24, 10:17, 13:13, 17:2, 28:18, 28:22
**enact** [1] - 21:4
**end** [1] - 5:10
**enforce** [1] - 21:8
**engine** [1] - 7:4
**English** [5] - 20:1, 20:5, 26:19, 26:21, 27:2
**ensure** [2] - 25:4, 30:18
**entail** [1] - 22:8
**entirely** [2] - 7:15, 23:9
**entitled** [2] - 19:12, 21:18
**environmental** [1] - 31:25
**equivalent** [1] - 21:11
**essence** [3] - 10:6, 18:12, 29:20
**essentially** [1] - 20:25
**establishing** [1] - 3:18
**et** [4] - 20:13, 20:15, 20:23, 22:10
**event** [2] - 5:11, 9:11
**exactly** [3] - 12:16, 20:6, 20:22
**example** [9] - 7:11, 7:18, 18:3, 22:22, 22:25, 27:11, 27:17, 27:18
**examples** [1] - 16:21
**Excuse** [1] - 6:8
**exist** [1] - 4:23
**existed** [2] - 4:21, 15:19

explain [1] - 29:18
extent [1] - 23:24
extraneous [1] -
14:21
extremely [1] - 4:17

## F

facing [1] - 31:20
fact [27] - 4:3, 4:9,
4:13, 4:21, 5:2, 7:2,
8:3, 8:23, 10:15, 12:4,
12:20, 12:21, 12:25,
15:4, 16:18, 16:25,
23:23, 26:16, 27:12,
27:25, 28:2, 29:2,
29:4, 29:22, 30:14,
30:23
fact's [1] - 19:10
facto [1] - 26:25
facts [3] - 5:21,
10:15
fail [2] - 24:3, 24:10
fails [1] - 7:12
failure [3] - 16:13,
21:22, 27:22
fall [1] - 4:25
false [32] - 6:6, 6:12,
6:16, 6:19, 6:21, 7:6,
7:19, 7:20, 7:24, 8:1,
8:7, 8:8, 9:9, 9:19,
9:25, 10:4, 10:5, 10:7,
10:16, 12:21, 12:22,
15:15, 28:5, 28:9,
28:11, 28:14, 28:18,
29:14, 29:16, 31:1,
31:7
familiar [2] - 5:19,
20:19
far [4] - 3:13, 16:21,
22:13, 22:22
fascinating [1] -
31:24
faulty [2] - 14:15,
15:11
FCRA [20] - 7:19,
7:23, 9:14, 10:14,
13:17, 14:19, 14:23,
15:3, 15:6, 15:20,
16:10, 18:7, 18:21,
22:5, 22:9, 25:1,
25:10, 25:22, 27:14
federal [2] - 20:18,
21:11
Federal [1] - 21:10
figure [1] - 16:7
filed [2] - 19:20,
28:20
finder [1] - 19:10
fine [1] - 26:9

fire [1] - 15:2
first [7] - 3:8, 11:8,
14:13, 18:18, 26:18,
26:20, 27:2
focus [8] - 5:3, 5:8,
6:20, 8:12, 28:6, 28:7,
28:11, 31:1
focused [4] - 5:20,
5:25, 6:18, 7:17
follow [1] - 21:9
followed [1] - 12:2
Foods [2] - 3:4, 5:14
form [8] - 11:5, 12:6,
14:21, 19:14, 19:20,
28:24, 29:12, 30:18
forms [1] - 12:25
fourth [1] - 28:25
fourth-grade [1] -
28:25
frankly [1] - 3:6
free [4] - 5:7, 6:21,
9:5, 9:8
front [2] - 21:25,
24:23
frustrating [1] - 30:5
FTC [4] - 22:13,
22:16, 22:24, 26:4
FTS [1] - 11:16
future [1] - 21:13

## G

garnered [1] - 6:20
general [1] - 3:9
given [6] - 6:22,
11:4, 16:21, 22:22,
27:23, 29:12
Gloria [1] - 14:11
grade [1] - 28:25
granted [2] - 4:1,
29:21
granting [1] - 28:10
grants [1] - 9:15
greater [1] - 11:1
ground [1] - 20:6
guess [1] - 21:24,
27:20, 32:3
guidance [1] - 26:4

## H

half [1] - 14:17
hand [4] - 6:5, 6:11,
6:14, 9:17
hard [2] - 16:7, 31:21
harm [14] - 4:4, 7:10,
7:15, 7:16, 7:17, 7:21,
13:8, 13:9, 19:24,
27:12, 28:19, 30:11,
30:24

harmed [1] - 21:16
harms [1] - 26:18
head [3] - 3:6, 3:21,
14:17
hear [2] - 3:3, 5:11
heard [1] - 16:1
hearing [3] - 3:10,
5:23, 11:18
held [2] - 6:5, 6:25
help [1] - 28:8
helps [1] - 7:4
herself [1] - 25:14
himself [2] - 25:7,
25:20
hinged [1] - 15:14
hire [1] - 15:2
hired [2] - 8:3, 9:11
history [1] - 6:16
honest [1] - 5:7
House [1] - 18:5
housing [1] - 9:7
hurriedly [1] - 11:18
hypersensitive [1] -
28:21
hypersensitivity [1] -
31:5
hypertechnical [2] -
8:15, 10:11
hypertechnically [1]
- 10:8
hypothetical [1] -
25:9
hypothetically [1] -
29:7

## I

identified [1] - 4:5
identify [1] - 24:3
III [12] - 7:1, 8:13,
8:20, 17:7, 17:22,
26:17, 27:9, 28:14,
30:6, 30:7, 30:14,
30:24
impermissible [2] -
11:3, 16:1
implication [1] -
16:24
important [2] -
18:24, 25:20
imposing [1] - 16:23
inability [1] - 31:8
inaccuracies [1] -
7:15
inadequate [2] -
27:1, 27:21
include [1] - 22:17
included [2] - 22:14,
26:2
including [1] - 12:3

incognizable [1] -
27:5
incorrect [2] - 27:18
indicate [1] - 13:3
indicated [4] - 3:25,
5:16, 6:24, 13:1
indicates [1] - 25:6
individual [7] - 7:17,
7:21, 15:17, 28:10,
29:13, 31:3
individual-by-
individual [1] - 15:17
individuals [4] - 7:5,
10:5, 11:4, 30:19
information [69] -
6:6, 6:12, 6:17, 6:19,
6:22, 7:4, 7:14, 7:20,
7:25, 8:2, 8:7, 8:8,
9:2, 9:9, 9:16, 9:19,
9:25, 10:4, 10:5, 10:8,
10:12, 10:16, 11:6,
12:2, 12:21, 12:23,
13:2, 13:3, 13:4, 13:6,
14:21, 14:25, 15:15,
16:14, 16:23, 16:24,
17:1, 17:14, 17:17,
18:9, 18:11, 18:15,
18:18, 19:13, 20:9,
20:21, 21:2, 22:1,
24:11, 25:5, 28:5,
28:9, 28:11, 28:14,
28:18, 29:14, 29:16,
30:2, 30:10, 30:20,
30:21, 31:2, 31:3,
31:4, 31:7
informational [7] -
8:20, 8:22, 9:3, 9:12,
9:14, 20:2, 21:17
initial [1] - 3:17
injunctive [2] -
21:12, 21:15
injuries [7] - 20:3,
26:25, 27:1, 27:5,
27:6, 27:16
injury [43] - 4:3, 4:9,
4:13, 4:21, 5:2, 5:22,
6:1, 6:2, 8:6, 9:24,
10:2, 10:6, 10:16,
10:23, 11:1, 11:7,
11:23, 12:5, 12:14,
12:18, 13:14, 13:18,
13:23, 14:2, 15:15,
17:6, 19:23, 20:13,
20:16, 21:7, 21:17,
27:4, 27:12, 27:15,
27:25, 28:17, 29:2,
29:4, 29:22, 30:14
injury-in [1] - 30:14
injury-in-fact [10] -
4:3, 4:9, 4:13, 4:21,

5:2, 27:12, 27:25,
29:2, 29:4, 29:22
inquiry [2] - 15:14,
15:17
instance [1] - 25:14
instances [2] - 8:25,
17:21
instead [2] - 27:18,
29:11
intangible [1] - 19:24
intended [3] - 16:19,
24:10, 30:12
interest [1] - 20:22
interests [1] - 18:21
intimates [2] - 12:10,
12:12
invalid [2] - 24:18,
27:23
invasion [2] - 20:3,
21:17
investigative [7] -
22:7, 22:14, 22:17,
22:21, 22:23, 23:8,
24:12
involve [1] - 16:12
involved [4] - 8:16,
11:4, 12:6, 16:22
Iqbal [4] - 3:11, 5:6,
10:10, 13:19
Iqbal-Twombly [4] -
3:11, 5:6, 10:10,
13:19
isolate [1] - 15:14
issue [17] - 3:13, 5:4,
5:8, 15:8, 18:12,
18:15, 18:16, 18:17,
20:17, 22:6, 22:12,
24:23, 25:21, 26:15,
31:18, 32:3
issues [2] - 5:6,
31:16
item [1] - 8:20
itself [4] - 4:12, 4:22,
13:20, 23:18

## J

job [7] - 10:1, 10:3,
14:24, 15:15, 20:12,
20:15, 25:15
Judge [10] - 3:20,
10:20, 11:11, 11:25,
16:3, 16:18, 17:4,
17:10, 17:19, 18:3
judge [3] - 11:1,
11:21, 12:5
judgment [2] - 15:25,
16:2
Justice [6] - 3:23,
4:24, 16:9, 17:19,

25:17, 26:16

## K

**Kelchner** [1] - 18:20
**key** [1] - 13:5
**kind** [11] - 4:19, 4:23, 5:9, 11:22, 11:23, 16:24, 17:3, 17:5, 27:24, 31:16, 31:20
**knowing** [1] - 18:18
**knowledge** [1] - 31:3
**known** [1] - 28:23

## L

**lack** [2] - 12:6, 20:8
**language** [2] - 21:25, 24:9
**large** [1] - 26:2
**last** [2] - 8:5, 19:18
**late** [1] - 3:6
**law** [5] - 10:12, 21:7, 23:4, 27:1, 27:3
**laws** [2] - 9:7, 26:3
**lawsuit** [2] - 19:25, 26:19
**leads** [2] - 6:22, 9:25
**least** [2] - 8:7, 14:17
**legal** [1] - 26:3
**legalese** [1] - 28:25
**legally** [1] - 26:25
**Lending** [1] - 20:19
**level** [3] - 13:25, 31:16, 32:1
**levels** [1] - 14:1
**liberal** [1] - 13:8
**limited** [4] - 8:23, 22:17, 26:23
**line** [3] - 17:8, 17:10, 18:1
**LLC** [1] - 14:11
**loan** [1] - 20:21
**look** [9] - 7:22, 8:9, 8:21, 12:22, 16:20, 26:20, 27:2, 28:2, 28:3
**looked** [2] - 3:20, 19:8
**looking** [4] - 8:22, 9:11, 24:9
**losing** [2] - 15:15, 20:15
**lost** [2] - 20:12, 20:15
**Lujan** [2] - 19:23, 26:24

## M

**mail** [1] - 20:22
**maintain** [1] - 25:4
**majority** [1] - 8:5
**manner** [2] - 10:12, 12:23
**matter** [5] - 8:17, 9:1, 9:9, 31:14, 31:18
**maximum** [1] - 25:4
**mean** [1] - 19:14
**meaning** [1] - 7:9
**means** [1] - 15:9
**mechanism** [1] - 28:8
**mentioned** [2] - 12:20, 24:25
**mid** [1] - 18:5
**Middle** [1] - 18:19
**mind** [1] - 17:23
**minute** [1] - 3:14
**misleading** [4] - 22:1, 23:17, 23:24, 24:15
**misrepresentations** [1] - 9:9
**missing** [1] - 22:25
**Mitchell** [6] - 3:4, 14:11, 14:20, 15:8, 25:14, 26:2
**moment** [1] - 3:8
**morning** [1] - 3:5
**most** [1] - 20:19
**mostly** [1] - 31:25
**motion** [7] - 3:11, 5:12, 10:9, 10:10, 13:20, 22:4, 25:25
**motions** [1] - 3:4
**MR** [36] - 5:13, 6:10, 12:8, 14:6, 14:8, 14:10, 16:4, 17:16, 18:2, 18:17, 19:4, 19:6, 19:9, 19:16, 19:19, 21:14, 22:2, 23:14, 23:21, 23:23, 24:5, 24:13, 24:19, 24:22, 26:10, 26:12, 28:1, 28:16, 29:3, 29:8, 29:25, 30:3, 30:16, 30:25, 31:9, 31:11
**multipage** [1] - 29:1
**must** [2] - 5:22, 25:22

## N

**name** [3] - 7:5, 15:23, 23:2
**named** [1] - 10:22

**narrow** [1] - 9:12
**nature** [1] - 22:22
**necessary** [2] - 16:14, 17:6
**need** [5] - 4:4, 4:19, 20:14, 25:24, 31:17
**needed** [1] - 18:25
**negative** [1] - 19:13
**never** [1] - 20:12
**new** [5] - 14:16, 15:12, 20:6, 27:15
**next** [1] - 6:24
**Ninth** [2] - 5:23, 16:8
**noncompliant** [1] - 25:16
**none** [1] - 12:24
**nothing** [7] - 13:3, 13:7, 13:10, 13:12, 13:23, 23:17, 25:6
**notice** [2] - 7:13, 27:21
**number** [7] - 6:23, 7:6, 8:1, 8:2, 8:8, 8:25, 23:5
**numerous** [2] - 18:4, 26:1
**nutshell** [1] - 17:3

## O

**objectively** [1] - 13:21
**observation** [2] - 6:24, 7:8
**observations** [1] - 3:9
**obtain** [2] - 30:2, 30:10
**obtained** [4] - 11:6, 19:13, 24:3, 24:18
**obtaining** [2] - 12:3, 24:11
**obvious** [1] - 11:22
**obviously** [2] - 5:9, 16:11
**occurred** [3] - 7:3, 15:18, 15:25
**October** [1] - 3:2
**Ohio** [2] - 11:13, 32:4
**once** [1] - 28:10
**one** [16] - 3:13, 4:5, 6:5, 6:11, 6:23, 7:9, 8:1, 8:8, 8:10, 8:25, 9:5, 11:2, 14:20, 20:18, 21:7, 22:12
**online** [1] - 7:3
**opinion** [2] - 8:5, 8:12, 17:22, 22:14, 22:16
**order** [2] - 13:18,

17:18
**organization's** [1] - 30:10
**original** [1] - 26:14
**originates** [1] - 26:16
**otherwise** [3] - 8:14, 16:15, 27:5
**overburdened** [1] - 4:17

## P

**paragraph** [1] - 8:5
**parallels** [1] - 20:18
**part** [2] - 8:11, 18:20
**particular** [6] - 3:15, 8:17, 9:16, 12:24, 17:17, 21:5
**particularized** [5] - 5:2, 5:22, 5:24, 17:6, 25:14
**past** [1] - 25:25
**Patrick** [1] - 14:10
**pause** [1] - 13:12
**payment** [1] - 20:23
**Payne** [3] - 11:25, 16:18, 17:10
**Payne's** [4] - 3:20, 10:20, 11:11, 16:3
**Peluso** [4] - 14:7, 14:8, 14:10, 14:11
**PELUSO** [21] - 14:8, 14:10, 16:4, 17:16, 18:2, 18:17, 19:4, 19:6, 19:9, 19:16, 19:19, 21:14, 22:2, 23:14, 23:21, 23:23, 24:5, 24:13, 24:19, 24:22, 26:10
**Pennsylvania** [1] - 18:20
**people** [2] - 18:9, 21:16
**per** [3] - 12:13, 12:14, 12:18
**percent** [1] - 8:15
**person** [4] - 15:2, 15:3, 20:12
**persons** [1] - 15:10
**phone** [1] - 23:5
**pivot** [1] - 24:22
**place** [1] - 18:19
**placing** [1] - 18:22
**plainly** [2] - 6:6, 6:11
**Plaintiff** [1] - 26:2
**plaintiff** [17] - 3:18, 4:3, 6:25, 9:1, 9:7, 9:15, 10:15, 10:22, 10:25, 12:4, 12:23, 14:20, 25:2, 25:19,

25:23, 28:20
**plaintiffs** [3] - 10:21, 11:16, 12:13
**plugging** [1] - 8:6
**point** [6] - 5:9, 5:10, 11:10, 14:15, 25:20, 26:14
**points** [1] - 26:13
**portion** [3] - 5:24, 5:25, 12:10
**position** [1] - 5:17
**possession** [1] - 25:19
**possible** [2] - 25:4, 31:22
**post** [1] - 16:3
**posting** [1] - 25:5
**potential** [1] - 13:23
**potentiality** [1] - 6:19
**power** [1] - 21:1
**practical** [1] - 19:1
**preparation** [1] - 11:18
**present** [1] - 7:16
**presented** [3] - 10:13, 19:19, 25:17
**presumably** [1] - 23:2
**pretty** [1] - 5:3
**prevent** [2] - 7:24, 29:15
**previously** [1] - 27:1
**primary** [1] - 5:16
**privacy** [1] - 12:14, 18:12, 18:15, 18:16, 18:17, 18:21, 20:3, 21:17, 28:21, 30:20, 31:5
**private** [3] - 12:1, 18:15, 30:20
**problem** [1] - 4:10
**problematic** [1] - 18:16
**procedural** [35] - 4:1, 4:8, 4:12, 4:19, 4:22, 4:25, 7:1, 7:9, 8:15, 8:16, 11:24, 12:17, 16:10, 16:16, 16:23, 17:4, 17:8, 17:14, 17:24, 17:25, 18:3, 20:10, 27:11, 27:16, 27:25, 28:8, 28:12, 29:21, 29:23, 30:4, 30:7, 30:12, 30:13, 30:22, 30:23
**procedurally** [1] - 7:19
**procedure** [2] - 12:11, 12:12
**procedures** [6] - 6:7,

6:12, 9:20, 10:7, 12:2, 25:4
**proceed** [1] - 16:10
**Proceedings** [1] - 32:8
**procured** [2] - 14:25, 23:25
**prominent** [1] - 16:13
**promise** [1] - 31:20
**proper** [5] - 11:5, 12:3, 12:6, 15:10, 30:19
**protect** [7] - 10:7, 18:21, 29:24, 30:12, 30:23, 31:6, 31:7
**prove** [1] - 25:24
**provide** [3] - 7:13, 15:5, 15:6
**provided** [3] - 17:17, 25:15, 26:22
**providing** [4] - 19:25, 26:18, 28:7, 28:8
**provisions** [1] - 25:11
**public** [5] - 9:2, 9:22, 9:23, 16:23, 30:21
**Public** [4] - 3:25, 4:20, 16:20, 30:9
**pure** [2] - 8:15, 21:15
**purely** [2] - 4:8, 4:25
**put** [2] - 7:22, 23:5
**putting** [1] - 11:12

**Q**

**quality** [1] - 31:23
**questions** [1] - 26:8
**quickly** [1] - 31:19
**quite** [3] - 19:22, 24:24, 25:16
**quotation** [1] - 9:6
**quote** [3] - 3:15, 4:6, 9:19

**R**

**raise** [1] - 8:19
**raises** [1] - 32:1
**rate** [1] - 20:22
**rather** [1] - 30:19
**reach** [1] - 11:20
**reached** [1] - 11:22
**reaction** [1] - 3:17
**read** [7] - 5:19, 6:8, 10:20, 11:17, 13:1, 28:24
**reading** [6] - 3:17, 8:4, 10:11, 13:8,

13:15, 27:13
**reaffirmed** [1] - 3:24
**real** [2] - 12:1, 17:12
**really** [5] - 3:9, 3:16, 4:10, 5:5, 5:18, 5:25, 6:18, 8:11, 9:24, 15:14, 18:8, 19:21, 26:15, 26:17, 31:24
**Reardon** [1] - 14:17
**reason** [3] - 18:23, 21:8, 27:10
**reasonable** [1] - 25:4
**reasonably** [1] - 26:6
**receive** [4] - 9:2, 9:16, 19:15, 20:20
**received** [1] - 25:14
**receiving** [1] - 10:1
**recess** [1] - 32:7
**recognized** [4] - 4:14, 18:24, 20:4, 27:3
**record** [1] - 25:6
**records** [1] - 9:2
**refine** [1] - 30:25
**reflected** [1] - 3:19
**regard** [1] - 5:11
**regarded** [2] - 19:25, 26:18
**regarding** [2] - 3:4, 10:10
**regardless** [2] - 7:14, 19:12
**reiterate** [2] - 19:21, 24:22
**reiterated** [1] - 5:21
**rejection** [1] - 28:18
**relationship** [1] - 19:24
**relief** [2] - 21:12, 21:16
**remanded** [1] - 16:8
**remember** [1] - 13:16
**reply** [1] - 6:15
**report** [17] - 22:6, 22:7, 22:15, 22:18, 22:19, 22:21, 22:23, 23:3, 23:7, 23:8, 24:11, 24:12, 25:8, 25:12, 25:18, 28:10
**REPORTER** [1] - 6:8
**reporting** [4] - 7:12, 23:2, 25:3
**reports** [5] - 18:4, 18:5, 22:5, 22:8, 22:15
**represent** [1] - 15:10
**representative** [1] - 11:9
**request** [2] - 9:3, 29:13

**require** [1] - 15:17
**required** [4] - 7:13, 15:3, 20:9, 27:21
**requirement** [6] - 5:2, 16:11, 16:17, 17:5, 22:19, 27:12
**requirements** [9] - 7:9, 7:10, 16:15, 18:22, 18:23, 20:7, 20:17, 21:23, 22:10
**requires** [2] - 13:17, 13:20
**resolve** [1] - 3:12
**response** [1] - 22:3
**restate** [1] - 29:19
**result** [5] - 7:10, 8:20, 9:3, 13:15, 13:18
**resulted** [4] - 8:9, 15:21, 17:2, 30:5
**results** [1] - 11:20
**returned** [4] - 8:8, 10:4, 12:21
**revealed** [2] - 12:2, 18:15
**review** [4] - 28:10, 29:12, 29:13, 31:3
**reviewed** [1] - 25:8
**Rick** [1] - 5:14
**rights** [15] - 4:20, 4:23, 5:1, 11:6, 12:1, 15:7, 16:19, 16:22, 17:21, 28:22, 29:11, 30:13, 30:19
**rise** [5] - 17:6, 17:21, 30:6, 30:7, 30:14
**risk** [3] - 6:13, 7:16, 9:20
**Robins** [7] - 5:18, 7:2, 7:5, 25:2, 25:7, 27:10
**Robins'** [1] - 25:7
**role** [1] - 27:8
**rose** [1] - 13:25
**ROSKELLEY** [15] - 5:13, 6:10, 12:8, 14:6, 26:12, 28:1, 28:16, 29:3, 29:8, 29:25, 30:3, 30:16, 30:25, 31:9, 31:11
**Roskelley** [5] - 5:14, 14:14, 20:11, 25:22, 26:11
**rule** [3] - 4:17, 4:18, 16:16
**rules** [1] - 27:20
**run** [1] - 7:5
**running** [1] - 22:19

**S**

**safeguards** [1] - 30:22
**satisfy** [3] - 5:2, 6:25, 27:12
**scheme** [1] - 20:18
**scope** [1] - 22:23
**scratching** [2] - 3:6, 3:21
**se** [3] - 12:13, 12:14, 12:18
**search** [1] - 7:4
**second** [3] - 8:5, 10:9, 11:9
**second-to-last** [1] - 8:5
**section** [3] - 18:6, 25:1, 25:10
**sections** [1] - 22:9
**see** [7] - 7:23, 8:9, 9:22, 12:22, 26:20, 32:5
**seek** [1] - 11:10
**seeking** [1] - 19:2
**seeks** [1] - 9:18
**seemingly** [1] - 11:19
**Senate** [1] - 18:4
**sense** [1] - 9:15
**separate** [7] - 14:19, 14:23, 20:16, 22:9, 22:11, 25:9, 25:10
**separately** [1] - 22:8
**setting** [6] - 6:15, 6:17, 7:22, 7:24, 9:24, 31:25
**show** [1] - 12:4
**shows** [1] - 6:16
**signed** [2] - 11:5, 13:1
**signing** [1] - 10:23
**simply** [5] - 4:8, 5:1, 8:14, 13:14, 22:1
**single** [3] - 19:14, 23:13, 23:19
**singleton** [1] - 14:18
**situation** [4] - 11:9, 12:25, 13:9, 25:17
**situations** [2] - 8:24, 14:23
**slowly** [1] - 6:9
**Smith** [3] - 11:13, 11:21, 13:16
**someone** [1] - 7:25
**sometimes** [2] - 4:14, 4:15
**somewhat** [1] - 11:22
**soon** [1] - 31:22

**Sorry** [1] - 6:10
**sort** [4] - 15:15, 18:10, 20:8, 20:14
**sought** [4] - 6:6, 6:11, 9:18, 18:21
**sounds** [1] - 11:8
**Southern** [1] - 32:4
**specific** [5] - 10:16, 15:20, 18:10, 20:9
**specifically** [10] - 5:4, 6:5, 6:25, 7:18, 8:22, 13:1, 17:16, 22:24, 26:4, 30:12
**speculative** [1] - 13:14
**spend** [2] - 3:10, 11:21
**Spokeo** [24] - 3:17, 3:23, 3:24, 4:6, 4:14, 5:17, 5:19, 5:20, 6:11, 6:24, 7:2, 7:3, 8:16, 8:23, 9:18, 12:16, 12:20, 13:15, 15:25, 16:3, 16:6, 24:24, 25:3, 25:18
**spot** [1] - 11:12
**stab** [1] - 29:17
**stage** [2] - 25:23, 26:7
**stand** [2] - 14:22, 22:20
**standalone** [6] - 16:13, 16:14, 17:15, 18:6, 21:24, 24:16
**standard** [2] - 4:11, 9:15
**standing** [24] - 3:13, 3:19, 5:8, 5:15, 6:3, 6:4, 8:13, 8:20, 9:4, 9:13, 10:18, 14:1, 14:2, 17:7, 17:22, 20:25, 26:17, 26:21, 28:15, 30:7, 30:8, 30:15, 30:24, 31:24
**standpoint** [2] - 14:1, 14:2
**start** [3] - 3:6, 3:21, 14:14
**State** [1] - 11:14
**state** [1] - 21:4
**statement** [1] - 27:10
**states** [1] - 20:20
**stating** [2] - 26:5, 29:12
**status** [1] - 26:25
**statute** [19] - 4:1, 6:21, 9:16, 9:18, 9:21, 9:22, 9:24, 10:24, 13:20, 17:20, 19:16, 21:4, 23:20, 24:16,

27:22, 28:6, 28:7, 29:21
**statutes** [2] - 9:13, 10:11
**statutorily** [1] - 4:12, 27:20
**statutory** [6] - 4:22, 17:5, 19:5, 19:7, 20:18, 21:18
**step** [3] - 13:16, 22:3, 24:10
**stepped** [1] - 20:7
**steps** [2] - 15:3, 15:11
**still** [1] - 13:9
**strict** [2] - 18:22, 18:23
**struggling** [1] - 16:19
**subclass** [2] - 11:2, 12:5
**subclasses** [1] - 11:2
**submit** [2] - 8:4, 9:14
**subsequent** [1] - 21:6
**substantive** [8] - 16:19, 16:24, 17:8, 17:21, 20:10, 21:22, 29:23, 30:6
**suffer** [3] - 10:23, 11:1, 20:14
**suffered** [4] - 20:15, 21:6, 21:16, 21:17
**sufficient** [9] - 4:2, 4:8, 4:12, 14:3, 27:16, 29:2, 29:4, 29:9, 29:22
**suggest** [1] - 24:2
**suggested** [1] - 4:25
**suggestion** [1] - 16:9
**summarizing** [1] - 29:17
**summary** [3] - 15:6, 15:25, 16:2
**supports** [1] - 8:23
**Supreme** [7] - 7:7, 9:17, 12:16, 19:22, 24:23, 28:3, 30:11
**surface** [1] - 31:16
**survive** [2] - 25:24, 26:7
**system** [2] - 20:5

## T

**TalentWise** [1] - 23:3
**TalentWise's** [1] - 23:5
**talks** [2] - 7:2, 12:20

**technical** [7] - 11:24, 12:10, 12:12, 16:11, 16:17, 17:5, 20:10
**teeth** [1] - 21:7
**terminated** [1] - 8:9
**terms** [1] - 24:10
**test** [1] - 5:24
**THE** [39] - 3:3, 3:5, 6:8, 10:19, 11:16, 14:5, 14:7, 14:9, 15:22, 16:5, 17:19, 18:14, 19:1, 19:5, 19:7, 19:11, 19:18, 21:10, 21:20, 23:11, 23:16, 23:22, 24:2, 24:6, 24:14, 24:20, 26:9, 26:11, 27:17, 28:13, 28:20, 29:6, 29:17, 30:1, 30:4, 30:17, 31:5, 31:10, 31:13
**therefore** [6] - 14:21, 23:19, 24:16, 24:17, 27:16
**they've** [1] - 21:17
**Thomas** [11] - 10:20, 10:25, 11:11, 11:16, 11:25, 12:4, 13:8, 15:24, 16:2, 16:3, 20:8
**throughout** [1] - 20:18
**tie** [2] - 13:23, 32:4
**tied** [1] - 21:15
**today** [2] - 3:10, 26:15
**top** [1] - 14:17
**torts** [1] - 20:4
**totally** [1] - 29:7
**Trade** [1] - 21:11
**traditional** [1] - 26:21
**traditionally** [3] - 19:25, 26:18, 26:21
**Truth** [1] - 20:19
**try** [2] - 29:19, 31:21
**trying** [11] - 4:16, 21:24, 23:13, 28:4, 29:15, 29:24, 30:5, 30:18, 31:6, 31:7
**tsunami** [1] - 31:20
**turn** [2] - 5:5, 27:23, 27:24
**turns** [1] - 32:5
**two** [10] - 8:2, 11:2, 14:17, 14:19, 19:16, 19:18, 19:20, 20:16, 22:7, 22:10
**two-year** [1] - 19:16
**Twombly** [4] - 3:11,

5:6, 10:10, 13:19
**type** [11] - 8:16, 9:21, 9:23, 10:2, 12:15, 15:20, 18:4, 18:9, 26:21, 28:16, 28:17
**types** [1] - 22:5

## U

**under** [10] - 6:4, 9:4, 13:8, 14:23, 15:3, 16:10, 21:12, 27:4, 27:9, 31:14
**understood** [1] - 24:21
**unless** [6] - 12:2, 16:25, 21:6, 28:13, 28:16, 30:22
**unreasonable** [1] - 13:22
**uphill** [1] - 3:18
**urge** [1] - 10:17
**user** [2] - 7:13

## V

**vacated** [1] - 5:23
**valid** [2] - 9:4, 11:7
**venture** [1] - 15:19
**view** [2] - 28:2, 28:13
**viewed** [2] - 25:12, 25:19
**violate** [1] - 7:19
**violated** [3] - 10:8, 13:21, 23:4
**violation** [31] - 4:1, 4:11, 4:22, 7:1, 7:8, 7:9, 8:15, 8:16, 10:11, 11:6, 11:24, 12:11, 12:12, 12:17, 13:17, 13:18, 13:19, 13:20, 14:4, 14:23, 15:18, 15:20, 16:10, 16:16, 17:4, 25:10, 25:22, 27:11, 29:21, 30:4, 30:13
**violations** [1] - 14:19
**Virginia** [3] - 3:21, 15:22, 32:5
**vital** [1] - 21:1
**voters'** [1] - 30:2
**vs** [7] - 3:4, 5:17, 7:2, 11:13, 11:16, 14:18

## W

**wages** [1] - 20:15
**website** [1] - 25:5
**weeds** [1] - 11:13
**whatnot** [1] - 31:25

**whereas** [1] - 25:13
**willful** [4] - 13:17, 13:18, 13:20, 25:23
**willfulness** [3] - 25:21, 25:24, 26:7
**willing** [1] - 4:21
**Wilner** [4] - 22:13, 22:16, 22:22, 22:24
**WinCo** [12] - 3:4, 5:14, 15:10, 19:11, 19:15, 22:17, 23:4, 23:10, 24:10, 25:15, 26:2, 26:5
**WinCo's** [5] - 22:4, 22:12, 22:21, 23:1
**Woodrow** [1] - 14:11
**word** [1] - 4:2
**words** [1] - 4:3
**world** [1] - 16:6
**wrestling** [2] - 17:3, 26:15
**written** [1] - 31:18

## Y

**year** [1] - 19:16
**years** [2] - 19:18, 19:20

## Z

**ZIP** [5] - 7:18, 18:2, 22:25, 27:18, 27:19