**Eric B. Swartz, ISB #6396**
**JONES & SWARTZ PLLC**
623 W. Hays Street
Telephone: (208) 489-8989
Facsimile: (208) 489-9888
Email: eric@jonesandswartzlaw.com

**Steven L. Woodrow***
**Patrick H. Peluso***
**Woodrow & Peluso, LLC**
3900 E Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Email: swoodrow@woodrowpeluso.com
　　　　ppeluso@woodrowpeluso.com

**Pro Hac Vice*

*Attorneys for Plaintiff and the Putative Class*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GLORIA MITCHELL, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>WINCO FOODS, LLC, a Delaware limited liability company,<br><br>　　　　　Defendant. | Case No. 1:16-cv-00076-BLW<br><br>**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

### INTRODUCTION

More than three years have passed since Mitchell first initiated this lawsuit back on February 18, 2016. Now, after dismissal of her First Amended Class Action Complaint, a successful Ninth Circuit appeal, and a newly-filed Second Amended Class Action Complaint,

WinCo seeks—yet again—to prevent this case from progressing past the pleadings. That is, despite unambiguous statutory language and firm Ninth Circuit precedent, WinCo asserts that its background check disclosure form is clear and stands alone as required by the Fair Credit Reporting Act ("FCRA"). This defense goes nowhere. WinCo's form contains extraneous information in violation of the FCRA's clear "stand-alone" disclosure requirement and ignores plain, decades-old guidance from the FTC cautioning against the inclusion of such surplusage. As explained herein, WinCo's arguments are without merit, and its Motion to Dismiss Plaintiff's Second Amended Complaint should be denied.[1]

## STATEMENT OF FACTS

In or around April 2015, Plaintiff Mitchell applied for a job with WinCo using WinCo's online application. (SAC ¶ 17.) Shortly thereafter WinCo hired her as a deli clerk at WinCo's Lewisville, Texas store. (Id. ¶ 18.) During the application process, Plaintiff was presented with an FCRA disclosure and authorization form that was riddled with extraneous information. (See SAC Ex. A.) On information and belief, Plaintiff alleges that WinCo presents its disclosure form and its authorization form during the same application process and at approximately the same time, such that the forms should be read simultaneously. (SAC ¶ 49.)

Plaintiff filed her Complaint on February 18, 2016. (Dkt. 1.) The Parties subsequently stipulated to two extensions of WinCo's responsive pleading deadline. (Dkts. 6, 8.) On April 20, 2016 Plaintiff filed her First Amended Complaint and WinCo moved to dismiss on May 9, 2016. (Dkts. 10, 12.) On July 18, 2016, WinCo filed a second motion to dismiss arguing that Plaintiff lacked standing. (Dkt. 20.) A hearing was held on the motions on October 18, 2016, and the

---

[1] Concurrently with this Response in Opposition, Plaintiff is filing a Motion for leave to conduct discovery, which has been frozen for over 3 years.

Court granted WinCo's second motion to dismiss on March 7, 2017.[2] (Dkts. 27–29.) Three days later, Mitchell moved for reconsideration, and the Court denied her motion on November 13, 2017. (Dkts. 30, 34.)

Mitchell thereafter appealed, and, on November 29, 2018, the Ninth Circuit Court of Appeals affirmed in part, vacated in part, and remanded the case to permit Mitchell to amend her complaint and cure her pleadings with regards to standing. (Dkt. 42.) Accordingly, Mitchell amended her complaint and filed the SAC on January 25, 2019. (Dkt. 46.) On February 21, 2019, WinCo filed its third motion to dismiss. (Dkt. 49.)

## ARGUMENT

In its Motion to Dismiss Plaintiff's SAC, WinCo recites arguments reminiscent of its first Motion to Dismiss filed several years ago. That is, WinCo argues first that its FCRA form does not violate the Act because it supposedly consists solely of the required disclosure and is clear and conspicuous. WinCo also argues, as it did in its earliest Motion to Dismiss, that its actions do not amount to willful violations of the FCRA. These arguments are without merit. WinCo's form is neither clear nor presented in a document consisting *solely of the disclosure* as required by § 1681b(b)(2)(A)(i) of the FCRA. Additionally, Mitchell has sufficiently pleaded a willful violation of the statute because WinCo's form represents an objectively unreasonable departure from both the plain language requirement of the FCRA and relevant guidance from the FTC. Accordingly, the Court should deny WinCo's Motion to Dismiss the SAC.

**A.     WinCo's disclosure form violates the FCRA because it is unclear and contains extraneous information.**

Despite WinCo's assertions to the contrary, the disclosure form at issue does not comply with the FCRA. Section 1681b(b)(2)(A)(i) of the FCRA requires employers to make a "clear and

---

[2] WinCo's first motion to dismiss was deemed moot. (Dkt. 28.)

conspicuous disclosure" to employees or prospective employees of their intent to procure a consumer credit report. 15 U.S.C. § 1681b(b)(2)(A)(i). The statute further mandates that this disclosure be made "in a document that consists **solely** of the disclosure." *Id.* (emphasis added). This is the FCRA's "stand-alone" disclosure requirement. As a result of extraneous information included in WinCo's form, the disclosure made to Mitchell and other members of the class was not clear, and the form did not consist solely of the disclosure. Accordingly, Plaintiff has sufficiently plead a violation of the FCRA, and WinCo's Motion to Dismiss should be denied.

    **1.**  **Plaintiff sufficiently alleges that WinCo's disclosure form is unclear.**

    The FCRA's "clear and conspicuous" disclosure requirement is a singular statutory obligation, but the Ninth Circuit in *Gilberg* analyzed each quality as a separate prong. *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1177 (9th Cir. 2019). The *Gilberg* court explained that "clear" means "reasonably understandable." *Id.* at 1176. Likewise, the Ninth Circuit defined "conspicuous" as "readily noticeable to the consumer." *Id.* To satisfy the FCRA, a disclosure must be both clear *and* conspicuous—the form at issue in *Gilberg* was conspicuous but not clear, and it therefore violated the FCRA. *See id.* at 1177–78.

    In all of three paragraphs, WinCo briefly argues that its disclosure form is both clear and conspicuous. (Mot. to Dismiss, at 12–13.) WinCo contends the disclosure is clear because it contains seven sentences with distinct functions and supposedly "no legalese or ambiguous phrases." (*Id.* at 12.) WinCo also asserts that, because the items that made the disclosure in *Gilberg* unclear are not present in its form, its disclosure is clear. (*Id.*) WinCo also posits that the form is conspicuous due to its bold, capitalized heading and legible typeface. (*Id.* at 13.)

    WinCo's disclosure form is unclear. The form isn't reasonably understandable to consumers. It consists of seven sentences, and the language does more to confuse applicants than

to clearly inform them about the consumer report that will be obtained. In the opening paragraph, WinCo discloses that it "will procure a consumer report and/or investigative report." (*Id.*) Thereafter, in the third paragraph, the form describes the nature and scope of "the report" without making any distinction between consumer reports or investigative reports:

> The report may contain information bearing on your character, general reputation, personal characteristics, mode of living, and/or credit standing. The information that may be included in your report include: *social security number trace, authorization to work checks, criminal records checks, civil record checks, financial information and credit checks (Experian U.S. Credit), federal record checks, public court records checks, driving records checks, drug tests, physical tests, educational records checks, employment history verification, references checks, sanction,*[3] *licensing and certification checks*. The information contained in the report will be obtained from private and/or public record sources, including sources identified by you in your job application or through interviews or correspondence with your past or present coworkers, neighbors, friends, associates, current or former employers, educational institutions or other acquaintances.

(*Id.*) (emphasis in original). This is a lengthy description, and applicants are not put on reasonable notice as to what type of report will be obtained. The form's opaque language is confusing and appears to combine the nature of two different types of reports—consumer reports and investigative consumer reports—into one amalgam, "report." First, the report may contain information regarding character, general reputation, personal characteristics, and mode of living—such classifications are in the definitions of both consumer and investigative reports. *See* 15 U.S.C. § 1681a(d)(1), 1681a(e). However, the report may also contain information regarding

---

[3] On its own, a disclosure that "[t]he information that may be included in your report include . . . sanction" is not reasonably understandable by Plaintiff's counsel, let alone by Plaintiff and other WinCo job applicants.

credit standing—a type of information unique to consumer reports.[4] *Id.* Further, "the report" may contain financial information and credit checks (suggesting it is a consumer report), yet information "*will* be obtained" through interviews with coworkers, friends, neighbors, even acquaintances (suggesting it is an investigative report). *Id.* The FCRA expressly divides these information sources among the two types of reports: consumer reports and investigative consumer reports. *See* 15 U.S.C. § 1681a(d)(1), 1681a(e). WinCo's decision to combine the two disclosures into one muddled paragraph renders the disclosure unclear and prevents applicants from meaningfully authorizing their reports.

Likewise, WinCo's argument that the form is clear because it "contains neither" of the inclusions present in the form in *Gilberg* misses the mark. (Mot. to Dismiss, at 12.) The FCRA requires clarity, not the absence of any particular extraneous language. In *Gilberg*, the form at issue was unclear because: (1) it contained language that a reasonable person would not understand, and (2) it combined federal and state disclosures. *Gilberg*, 913 F.3d at 1177. This finding did not require the presence of any specific extra information—the form was unclear because it would confuse a reasonable reader. In the present action, Plaintiff expressly alleges that WinCo's form is unclear and confusing. (SAC ¶¶ 3–6, 21, 53.) WinCo cannot dispute this on the pleadings simply by disagreeing. Rather, at this stage of the case Plaintiff has plausibly alleged that WinCo's FCRA form violates the statute because it is unclear, and this claim is supported by the factual assertions that the form: (1) contains language that a reasonable person would not understand; (2) combines consumer report and investigative report disclosures in a way that confuses applicants; and (3) obfuscates the nature of the report in question.

---

[4] Notably, the definition of investigative consumer reports explicitly prohibits inclusion of "specific factual information on a consumer's credit record" that is obtained from the consumer or a creditor. 15 U.S.C. § 1681a(e).

By combining multiple disclosures into one, WinCo blurred the distinction between consumer reports and investigative reports and rendered its disclosure form inscrutable. Plaintiff alleges that Defendant's disclosure is not reasonably understandable to applicants—the form is not clear. Accordingly, WinCo has plausibly violated the FCRA and its Motion to Dismiss should be denied.

2.  **WinCo's disclosure fails to stand alone.**

In addition to being unclear, WinCo's disclosure fails to standalone. That is, an FCRA disclosure form must be "in a document that consists solely of the disclosure"—otherwise known as the stand-alone disclosure requirement. 15 U.S.C. § 1681b(b)(2)(A)(i). As the Ninth Circuit explained in *Syed*, the stand-alone requirement of section 1681b(b)(2)(A)(i) is unambiguous:

> Where congressional intent "has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S. Ct. 3245, 73 L.Ed.2d 973 (1982) (internal quotation marks omitted). And when "the meaning of the words seems to us to be intelligible upon a simple reading, ... we shall spend no time upon generalities concerning the principles of [statutory] interpretation." *United States v. M.H. Pulaski Co.*, 243 U.S. 97, 106, 37 S.Ct. 346, 61 L.Ed. 617 (1917).
>
> **The ordinary meaning of "solely" is "[a]lone; singly" or "[e]ntirely; exclusively."** *American Heritage Dictionary of the English Language* 1666 (5th ed. 2011).

*Syed v. M-I, LLC*, 853 F.3d 492, 500 (9th Cir. 2017) (emphasis added). "That other FCRA provisions mandating disclosure omit the term 'solely' is further evidence that Congress intended that term to carry meaning in 15 U.S.C. § 1681b(b)(2)(A)(i)." *Id.* at 501. Even though the statute contains an express exception for an accompanying authorization, the Court explained that, "in light of Congress's express grant of permission for the inclusion of an authorization, the familiar judicial maxim *expressio unius est exclusio alterius* counsels against finding additional, implied,

exceptions." *Syed*, 853 F.3d at 501. Thus, under the plain language of the statute any extraneous information contained in a disclosure form (aside from the authorization) violates the FCRA.

Several weeks ago, the Ninth Circuit in *Gilberg* reinforced this aspect of *Syed*. *See Gilberg*, 913 F.3d at 1175–76. In *Gilberg*, the Court found that state law disclosures constitute extraneous information that violates the stand-alone requirement. *Id.* at 1171. Though the respondent in *Gilberg* attempted to distinguish *Syed*, the Court clarified that "*Syed*'s holding and statutory analysis were *not* limited to liability waivers; *Syed* considered the standalone requirement with regard to *any* surplusage." *Id.* at 1175 (emphasis added). This result was compelled by the clarity of the FCRA's standalone provision:

> We concluded [in *Syed*] the statute meant what it said: the required disclosure must be in a document that "consist[s] 'solely' of the disclosure." We based this holding on the statute's plain language, noting "[w]here congressional intent 'has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive.'"

*Id.* (citing *Syed*, 853 F.3d at 496, 500).

Taken together, *Gilberg* and *Syed* hold firmly "that the standalone requirement forecloses implied exceptions." *Id.* at 1176. Hence, even if extraneous information is included under the guise of furthering the purpose of the FCRA, "purpose does not override plain meaning." *Id.* at 1175. *Gilberg* further noted that "even 'related' information may distract or confuse the reader," as the presence of extraneous information in a disclosure form that is "as likely to confuse as it is to inform" does not further the purpose of the FCRA. *Id.* at 1176.

WinCo sidesteps *Syed* and *Gilberg* and instead cites to several district court cases that applied more lenient guidance. In *Walker*, for example, the District of Oregon adopted the FTC's relaxed interpretation of the standalone requirement in finding that employers may include a limited investigative report disclosure in their forms, provided that the information doesn't

"overshadow" the consumer report disclosure. *Walker v. Fred Meyer, Inc.*, No. 3:17-cv-01797-YY, 2018 WL 2455915, at *5 (D. Or. May 7, 2018); *see also FTC Advisory Opinion to Willner* (Mar. 25, 1999). *Walker* is non-binding, pre-dates *Gilberg*'s admonishment that *Syed* wasn't limited to the inclusion of liability waivers, and is currently before the Ninth Circuit on appeal. *See Walker v. Fred Meyer, Inc.*, No. 3:17-cv-01797-YY, 2018 WL 3090199 (D. Or. June 21, 2018), *appeal docketed*, No. 18-35592 (9th Cir. July 20, 2018). WinCo also cites to *Coleman*, where a disclosure form was found to be compliant. *Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-cv-02588-JCS, 2015 WL 5782352, at *6 (N.D. Cal. Oct. 5, 2015). Not only was *Coleman* decided before *Syed* and *Gilberg*—it was decided on a different case theory. There the plaintiff claimed that "the Employment Application and Consent and Disclosure Form are, in actuality, one document," which would have certainly violated the stand-alone requirement. *Id.* at *5. The court granted Kohls' motion to dismiss on this theory without meaningfully addressing the language in the disclosure form: "Neither party disputes that the purpose of [the disclosure] document relates to consumer reports only." *Id.* Thus, because Mitchell has argued (and the form's language confirms) that WinCo's disclosure relates to both consumer reports and investigative consumer reports, the applicability of *Coleman* to this action is likewise limited.

Nevertheless, even if the Court were to adopt the FTC's more lenient standard, WinCo's form is still overshadowed by information about investigative consumer reports. The FTC's *Willner* opinion specifically warned employers <u>not</u> to include extraneous information about investigative reports because a description of the nature and scope of investigative reports "would of necessity be much more detailed and would likely be held to overshadow" the consumer report disclosure and violate the FCRA. *FTC Advisory Opinion to Willner* (Mar. 25,

1999). As a result, even under the lenient *Willner* approach any reference to investigative reports must be "very limited." *Id.*

WinCo's form includes more than just a limited disclosure about investigative reports. Instead, WinCo's form: (1) mentions that an investigative report may be obtained without distinguishing it from a consumer report; (2) provides detailed information about TalentWise—a requirement for detailed investigative report disclosures;[5] (3) states that information "will be obtained…through interviews"; and (4) lists a multitude of sources that will be interviewed (friends, neighbors, acquaintances, etc.). (SAC, Ex. A.) This information relates exclusively to the nature and scope of investigative consumer reports, and it overshadows the limited consumer report disclosure language buried within the form.

WinCo's form violates the FCRA under either Ninth Circuit precedent or the FTC's more lenient approach. Accordingly, WinCo's Motion to Dismiss the SAC should be denied.

**B.    The disclosure form constitutes a willful violation of the FCRA.**

WinCo also contends in its Motion to Dismiss that Mitchell has not sufficiently plead a willful violation of the FCRA, relying largely on the Supreme Court's *Safeco* opinion. However, WinCo's inclusion of extraneous information in its disclosure form is objectively unreasonable in light of the unambiguous statutory language at issue here and FTC guidance published almost twenty years ago. Further, WinCo bolsters its argument by pointing to a "two-part test" that misinterprets (and frankly does not exist in) the *Safeco* opinion. Plaintiff has alleged sufficient facts to demonstrate willfulness, and WinCo's Motion to Dismiss this claim is without merit.

---

[5] *See* FED. TRADE COMM. (F.T.C.), 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT: AN FTC STAFF REPORT WITH SUMMARY OF INTERPRETATIONS (2011), 64, *available at* www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf (last visited Mar. 4, 2019) [hereafter "40 YEARS OF THE FCRA"].

RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
-10-

### 1. Winco's form was objectively unreasonable in light of the statutory language and existing FTC guidance.

In the context of the FCRA, the Supreme Court in *Safeco* held that "reckless disregard of a requirement of FCRA would qualify as a willful violation" of the statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007). As Defendant points out, the threshold for recklessness requires a showing that the defendant took an action or interpreted an unclear statute in a manner that was "objectively unreasonable" and creates a risk of violation that is substantially greater than the risk associated with a careless reading. *Id.* at 69–70. The Supreme Court ruled that Safeco had not willfully violated the FCRA because the statute was "less-than-pellucid" on the issue in question and there was no court or FTC guidance "that might have warned [Safeco] away from the view it took." *Id.* at 70.

That said, a lack of definitive authority "does not, as a matter of law, immunize [a party] from potential liability" for violating the FCRA. *Syed*, 853 F.3d at 504 (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 721 (3d Cir. 2010)) (alterations in original). In *Syed*, the Ninth Circuit wholly adopted the standards of *Safeco*. *See Syed*, 853 F.3d at 503–06. The *Syed* court found that the standalone requirement, as is at issue in the present case, "is not subject to a range of plausible interpretations." *Id.* at 505. To the contrary, "15 U.S.C. § 1681b(b)(2)(A) unambiguously forecloses the inclusion of a liability waiver in a disclosure document. Thus we need not consider . . . subjective interpretation of the FCRA in determining whether [the defendant] acted [recklessly]." *Id.* And, as stated above, *Syed*'s holding and analysis is "not limited to liability waivers," but applies "to any surplusage." *Gilberg*, 913 F.3d at 1175.

At this stage of the litigation, Plaintiff "simply must allege sufficient facts to demonstrate the alleged violation, as pled, amounts to an objectively unreasonable reading of the statute." *Moore v. Rite Aid Hdqtrs Corp.*, No. CIV. A. 13-1515, 2015 WL 3444227, at *10 (E.D. Pa. May

RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
-11-

29, 2015) (evaluating a motion to dismiss in a substantially-similar FCRA case that raised a similar willfulness argument and finding that the attack improperly "go[es] to the merits of plaintiff's case"). Mitchell has plainly done so, and now is not the time to argue the case on its merits.

And in any case, WinCo's arguments that the FCRA and related guidance were unclear at the time it violated the law here are unsupported. At all times relevant to this case, Section 1681b(b)(2)(A)(i) of the FCRA has plainly stated as follows:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes.

15 U.S.C. § 1681b(b)(2)(A)(i). This provision unambiguously requires that a consumer report disclosure must consist *solely* of the disclosure. Further, section 1681b pertains exclusively to "consumer reports"—the FCRA contains a separate section regarding disclosures for investigative consumer reports. *Compare* 15 U.S.C. § 1681b *with* 15 U.S.C. § 1681d. The two report types are significantly different and distinctly defined. 15 U.S.C. § 1681a(d)(1), 1681a(e).

As noted in *Syed*, the stand-alone requirement mandate is unambiguous and thus not open to individual interpretation. *See Syed*, 853 F.3d at 505. In light of the FCRA's structure and language itself, it was improper for WinCo to adopt its own interpretation of the FCRA's plain language. Likewise, interpreting the word "disclosure" to refer to two, separately defined disclosures, or otherwise to interpret the phrase "must consist solely of the disclosure" to carry little to no meaning at all, is objectively unreasonable.

In its Motion to Dismiss, WinCo argues that the term "disclosure" is supposedly unclear because it is not formally defined. (Mot. to Dismiss, at 16.) Notwithstanding that the word "disclosure" is a common word rather than a legal term of art, section 1681b(b)(2)(A)(i) of the FCRA provides a plain, contextual description of the disclosure's form as well as its contents. This subsection of the FCRA informs employers: (1) that a disclosure must be made; (2) when the disclosure must be made ("at any time before the report is procured"); (3) how the disclosure must be made ("in writing"); (4) what the disclosure must describe ("that a consumer report may be obtained for employment purposes"); and (5) that the disclosure must stand alone ("in a document consisting solely of the disclosure"). 15 U.S.C. § 1681b(b)(2)(A)(i). The statutory language provides clear guidance on the disclosure that must be provided to applicants before obtaining a consumer report, and WinCo rejected that guidance in a manner that was objectively unreasonable.

To further its argument, Defendant suggests that the term "disclosure" is unclear because the FTC has permitted the addition of "minor additional items." (Mot. to Dismiss, at 16.) WinCo points to the FTC's "40 Years" report, which purports to authorize some minor additions, including "a very limited notice of intent to procure an investigative consumer report." *Id.*; *see also* F.T.C., 40 YEARS OF THE FCRA, at 51. WinCo also cites to several FTC advisory opinions for support. (Mot. to Dismiss, at 16–17.)

Even in light of the FTC's more lenient approach, WinCo's arguments are unavailing. As a preliminary matter, because the FCRA's standalone requirement is unambiguous, any interpretation of that provision by the FTC is not entitled to deference:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question of whether Congress had directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency,

must give effect to the unambiguously expressed intent of Congress. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). Yet even if the Court were to accept the FTC's guidance as an appropriate authority upon which WinCo relied, Defendant's form still exceeds the FTC's more permissive approach. Curiously absent from WinCo's list of FTC advisory opinions is *Willner*, which, as a reminder, stated that including a description of the "nature and scope" of investigative reports "would of necessity be much more detailed and would likely be held to overshadow" the consumer report disclosure—accordingly, *Willner* permitted only "very limited" reference to the possibility of an investigative report. *FTC Advisory Opinion to Willner* (Mar. 25, 1999). The FTC pointed out that an employer may include only this very limited notice without running afoul of the standalone requirement, adding that, "[t]he surest way for an employer to comply, of course, would be to provide the [consumer report disclosure] notice and the [investigative report nature and scope] notice in separate documents." *Id.* The *Willner* opinion, like the others cited by WinCo, has been available to employers for almost two decades, including at the time that Mitchell was presented with WinCo's form. And yet, Defendant's disclosure form is overshadowed by a lengthy description of sources that "will be" interviewed. (*See* SAC, Ex. A.)

As Defendant points out, the FTC's position in *Willner* was reiterated in the 40 YEARS reported cited by WinCo, published in 2011:

> An employer may include, with the disclosure require by [§ 1681b(b)(2)(A)], a *very limited* notice of intent to procure an investigative consumer report . . . . However, the employer *may not* meet its obligation . . . to *describe the nature and scope of the investigation* in the same notice, because it would likely *overshadow* the disclosure required by [§ 1681b(b)(2)(A)].

F.T.C., 40 YEARS OF THE FCRA, at 51 (emphasis added). The FTC also described the information that an employer must include in the "nature and scope" disclosure for investigative reports, such

as "a complete and accurate description of the types of question asked, the types of persons interviewed, and the name and address of the investigative agency." *Id.* at 64. Though the disclosure form does not describe the questions that will be asked, WinCo included both a comprehensive list of the types of persons that would be interviewed and the name and address of its investigative agency, TalentWise. (SAC, Ex. A.) This information unlawfully overshadowed the consumer report that WinCo gave to Mitchell—a report required to stand alone.

The language in the consumer report disclosure provision of the FCRA is clear. WinCo's interpretation of "consists solely of the disclosure" to mean that it could include a nature and scope description of investigative reports was objectively unreasonable, if not wholly impermissible. Further, in light of subsequent guidance from the FTC, WinCo's inclusion of this information remains unreasonable (and perhaps becomes more unreasonable) because the FTC permits only a very limited notice of the intent to procure an investigative report. WinCo exceeded even that boundary, clouding its disclosure form with the hallmarks of a "nature and scope" description. This guidance existed when the harm to Mitchell occurred, and Defendant has cited to this guidance itself, suggesting that WinCo either knowingly or recklessly disregarded its legal duties in a manner that was, at minimum, objectively unreasonable. Indeed, WinCo's form is not the result of a careless reading, but a plain derogation of statutory and administrative authority that created an unjustifiable risk of harm to consumers. Plaintiff has sufficiently plead a case for willful violation of the FCRA, and thus WinCo's Motion to Dismiss this claim should be denied.

      **2.**     **The "two-part test" identified by WinCo for willful violations has no basis in *Safeco* and otherwise misunderstands the Supreme Court's holding.**

In its arguments against willfulness, WinCo cites heavily to the Supreme Court's decision in *Safeco*, going so far as to claim that the decision "sets forth a two-part test to establish willfulness." (Mot. to Dismiss, at 14.) According to Defendant, this test consists of two questions: (1) "Is the statutory text unambiguous (pellucid)?"; and (2) "If the statute is pellucid, was the defendant's conduct subjectively intentional or reckless?" (*Id.*) Naturally, WinCo applies this test in a manner that vindicates its actions, but the "test" identified does not appear in *Safeco* or any other decision. In fact, the test outlined by WinCo does not even comport with the holding in *Safeco*. While the Supreme Court's decision is undeniably relevant and controlling, WinCo's misrepresentation of *Safeco* cannot stand.

In *Safeco*, the Supreme Court considered the issue of willful violation of the FCRA, and it held that willfulness is present if an employer knowingly violates the law, or recklessly disregards the law by interpreting the FCRA in a manner that is "objectively unreasonable" and creates a greater risk than a merely careless reading. *Safeco*, 551 U.S. at 57, 69–70. The "objectively unreasonable" recklessness standard identified in *Safeco* is frequently applied by courts analyzing questions of willfulness in the FCRA context. *See, e.g.*, *Syed*, 853 F.3d at 503–05; *Moore*, 2015 WL 3444227, at *9; *Landrum v. Harris Cnty. Emergency Corps*, 122 F. Supp. 3d 617, 625 (S.D. Tex. 2015).

When analyzing whether Safeco's interpretation was unreasonable, the Supreme Court considered whether the statute was silent on the point interpreted, as well as whether existing court decisions or FTC guidance addressed the issue. *Safeco*, 551 U.S. at 69–70. Ultimately, the Supreme Court decided that Safeco's interpretation was not unreasonable given the "dearth of guidance and the less-than-pellucid statutory text." *Id.* at 70. Thus, *Safeco* identified two factors

that may inform whether an employer's interpretation is reasonable: statutory clarity and the availability of interpretive guidance. *See id.*

In its Motion, WinCo contorts the *Safeco* opinion to create a new "two-part test" for willfulness. (Mot. to Dismiss, at 14.) Defendant's first step turns the assessment of statutory clarity into a threshold determination—according to WinCo, a failure to prove that a statute is "pellucid" supposedly defeats the entire claim for willfulness. (*Id.* at 15.) This has no support in *Safeco* or in any subsequent cases cited by WinCo. (*See id.*) In fact, if the statutory provision in question is "pellucid" (in this case, it is), then interpretation by employers is inappropriate, let alone objectively unreasonable. *See Syed*, 853 F.3d at 505 (holding that the unambiguous stand-alone requirement "is not subject to a range of plausible interpretations").

Nevertheless, WinCo's new test suggests that violating an unclear statute can never be willful, permitting only violations of a "pellucid" law to proceed to its second step: was the defendant's violation "subjectively intentional or reckless?" (Mot. to Dismiss, at 14.) This "step" is both recursive and incorrect. This step is recursive because it restates *Safeco*'s broad definition of a willful violation—violating the statute knowingly or recklessly. *See Safeco*, 551 U.S. at 57. In short, according to WinCo, the second step in establishing willfulness is establishing willfulness. Further, WinCo's step requires a "subjectively intentional" violation instead of a knowing violation. *See id.* (noting that willfulness as a statutory condition of civil liability covers both knowing and reckless violations). At no point in *Safeco* did the Supreme Court require (or even mention) "subjectively intentional" violations as a requisite for willfulness.

In effect, WinCo's "test" consists of a heightened variation of *Safeco*'s willfulness standard, preceded by a gatekeeping inquiry extracted from the factors the Supreme Court considered when assessing recklessness. This test is wholly unsupported by *Safeco*, and it

significantly misstates the legal precedent that *Safeco* has established. Defendant's attempt to rearrange the preeminent standards for willfulness and develop a new "test" is an improper request for the Court to deviate from established precedent. The Supreme Court's test for willfulness outlined in *Safeco* is controlling, and Plaintiff has sufficiently plead a willful violation under the *Safeco* standard. Accordingly, Defendant's Motion to Dismiss should be denied.

## CONCLUSION

The Court should deny Defendant's Motion to Dismiss the SAC. Plaintiff Mitchell has plead sufficient facts to show that WinCo violated the FCRA and that its violation was willful. Accordingly, this Court should deny WinCo's Motion, permit this case to move beyond the pleadings, and award such additional relief as it deems necessary and just.

Respectfully Submitted,

Dated: March 14, 2019

**GLORIA MITCHELL**, individually, and on behalf of all others similarly situated,

By: __/s/ Steven L. Woodrow__

Eric B. Swartz
**JONES & SWARTZ PLLC**
623 W. Hays Street
Telephone: (208) 489-8989
Facsimile: (208) 489-9888
Email: eric@jonesandswartzlaw.com

Steven L. Woodrow
swoodrow@woodrowpeluso.com*
Patrick H. Peluso
ppeluso@woodrowpeluso.com*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300

Denver, Colorado 80210

*Counsel for Plaintiff and the Putative Class*

*pro hac vice*

## CERTIFICATE OF SERVICE

I am a resident of the State of Colorado, over the age of eighteen years old, and am not a party to this lawsuit. My business address is 3900 E. Mexico Avenue, Suite 300, Denver, Colorado 80210. I HEREBY CERTIFY that on the 14th day of March 2019, I filed the foregoing **RESPONSE TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Rick D. Roskelley, Attorney for Defendant WinCo Foods, LLC. Mr. Roskelley's email address is rroskelley@littler.com.

I declare that the foregoing is true and correct.

/s/ Steven L. Woodrow