# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GLORIA MITCHELL, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> WINCO FOODS, LLC, a Delaware limited liability company, <br><br> Defendant. | Case No. 1:16-cv-00076-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Winco Foods LLC's Motion to Dismiss Plaintiff's Second Amended Complaint. Dkt. 49. For the reasons set forth herein, the Court will GRANT IN PART and DENY IN PART Winco's Motion.

## PROCEDURAL BACKGROUND

The Court previously dismissed Plaintiff Gloria Mitchell's First Amended Complaint after concluding that Mitchell failed to adequately allege "concrete injury," thereby denying this Court jurisdiction under Article III of the Constitution. Dkt. 28. The United States Court of Appeals for the Ninth Circuit affirmed this Court's decision with respect to the Article III inquiry but ordered the Court to provide Mitchell the opportunity to amend her complaint. Dkt. 42. Mitchell subsequently filed a Second

MEMORANDUM DECISION AND ORDER - 1

Amended Complaint. Dkt. 46. Apparently satisfied that the Second Amended Complaint adequately alleged facts establishing that Mitchell has standing to pursue her claims, WINCO has filed this motion to dismiss – alleging other grounds why the complaint should be dismissed under Rule 12(b)(6).

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept legal conclusions that are couched as factual allegations as true; the trial court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

MEMORANDUM DECISION AND ORDER - 2

## ANALYSIS

**1. The Fair Credit Reporting Act's Statutory Scheme**

The Fair Credit Reporting Act provides an intricate set of requirements for employers who seek to obtain information about their potential employees. To begin with, the FCRA contains a clear distinction between "consumer reports" and "investigative consumer reports." The FCRA defines "consumer reports" as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for… employment purposes.

15 U.S.C. § 1681a(d)(1). The FCRA defines "investigative consumer reports" as:

> a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information. However, such information shall not include specific factual information on a consumer's credit record obtained directly from a creditor of the consumer or from a consumer reporting agency when such information was obtained directly from a creditor of the consumer or from the consumer.

15 U.S.C. § 1681a(e).

The distinction between consumer reports and investigative consumer reports is important when considered within the context of the disclosures required under the FCRA. Section 1681b(b)(2)(A) provides:

> a person may not procure a *consumer report*, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that

MEMORANDUM DECISION AND ORDER - 3

*consists solely of the disclosure*, that a consumer report may be obtained for employment purposes . . . .

(emphasis added). Unlike the disclosure requirement for consumer reports, the disclosure requirement for investigative consumer reports does not contain a requirement that the disclosure pertain *solely* to the investigative consumer report. *See* 15 U.S.C. § 1681d(a). Instead, section 1681d(a) requires that:

> A person may not procure or cause to be prepared an investigative consumer report on any consumer unless--(1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made, and such disclosure (A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested, and (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section and the written summary of the rights of the consumer prepared pursuant to section 1681g(c) of this title; and (2) the person certifies or has certified to the consumer reporting agency that-- (A) the person has made the disclosures to the consumer required by paragraph (1); and (B) the person will comply with subsection (b).

(emphasis added). Thus, the FCRA provides for *different* disclosure requirements depending upon whether the employer is seeking a consumer report or an investigative consumer report. Critically, for purposes of this case, an employer that intends to obtain a consumer report as it is defined in the Act must provide to prospective employee with "a document that consists *solely of the disclosure*[] that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i). It is this language that forms the crux of the dispute between Mitchell and Winco.

2. **The Winco Disclosure**

Specifically, Mitchell alleges that the Disclosure for Background Check

MEMORANDUM DECISION AND ORDER - 4

(hereinafter, the "Winco Disclosure") Winco provided to Mitchell "confused Mitchell and other applicants, and stripped Mitchell and others of their respective abilities to meaningfully authorize their reports." Dkt. 46 at ¶ 53. The Winco Disclosure, which Mitchell attached as Exhibit B to her Second Amended Complaint, reads as follows:

> WinCo Foods … will procure a consumer report and/or investigative consumer report on you in connection with your application for employment, volunteer service, or a contracted position, including promotion or retention as an employee, volunteer or independent contractor, as applicable.
>
> TalentWise, Inc., a consumer reporting agency, will obtain the report for the Company. Further information regarding TalentWise, including its privacy policy, may be found online at www.TalentWise.com. TalentWise is located at 19910 North Creek Parkway, Suite 200, Bothell, WA 98011, and can be reached at 1.866.357.4358.
>
> The report may contain information bearing on your character, general reputation, personal characteristics, mode of living and/or credit standing. The information that may be included in your report include: social security number trace, authorization to work checks, criminal records checks, civil records checks, financial information and credit checks (Experian U.S. Credit), federal record checks, public court record checks, driving records checks, drug tests, physical tests, educational records checks, employment history verification, references checks, sanction, licensing and certification checks. The information contained in the report will be obtained from private and/or public record sources, including sources identified by you in your job application or through interviews or correspondence with your past or present coworkers, neighbors, friends, associates, current or former employers, educational institutions or other acquaintances. You have the right, upon written request made within a reasonable time after receipt of this notice, to request disclosure of the nature and scope of any investigative consumer report from the Company.

Dkt. 46-1 at 3.

### 3. Mitchell Has Plausibly Alleged that the Winco Disclosure Violates the Separate Disclosure Requirement in Section 1681b(b)(2)(A)(i)

The Court disagrees with Winco's argument that Mitchell has failed to plausibly allege that the Winco Disclosure fails to comply with the FCRA's statutory requirements.

MEMORANDUM DECISION AND ORDER - 5

Section 1681b(b)(2)(A)(i) requires that any request for a consumer report, as it is defined in the statute, must be "in a document that consists *solely* of the disclosure." The Ninth Circuit made clear in *Syed v. M-I LLC*, 853 F.3d 492, 500 (9th Cir. 2017) the word "solely" means what it says. A disclosure that an employer is seeking a consumer report must contain solely that information; it cannot be intermingled with additional details, clearly written or not. *See*, *Syed*, 853 F.3d at 502 ("Whether the disclosure is "clear and conspicuous" is irrelevant to the analysis.").

Here, the Winco Disclosure combines two different disclosures. It simultaneously provides applicants with notice that that Winco will obtain both a consumer report (as it is defined by the FCRA at section 1681a(d)(1)) and an investigative consumer report (as it is defined by the FCRA at section 1681d(a)). This violates the FCRA's separate disclosure requirement.

Winco cites to two district court decisions from this circuit which found that a combined disclosure does not violate the statutory requirement. *Walker v. Fred Meyer, Inc.*, No. 3:17-CV-01791-YY, 2018 WL 2455915, at *5 (D. Or. May 7, 2018), *report and recommendation adopted in part*, No. 3:17-CV- 1791-YY, 2018 WL 3090199 (D. Or. June 21, 2018) (adopting the court's holding regarding the disclosure) and *Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-CV-02588-JCS, 2015 WL 5782352 (N.D. Cal. Oct. 5, 2015). In terms of the policy reasons underlying the statutory requirement, the Court finds those cases persuasive. However, the Court concludes that they are inconsistent with the unambiguous decisions of the Ninth Circuit in *Syed* and *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019). In both cases, the Ninth

MEMORANDUM DECISION AND ORDER - 6

Circuit concluded that adding additional information to the consumer report disclosure violated the FCRA. Although Winco is correct that neither case involved combining *just* the consumer report disclosure and the investigative consumer report disclosure–*Gilberg* involved combining a waiver with the consumer report disclosure and *Syed* involved combining state law with the consumer report disclosure–the logic and language of the Ninth Circuit's opinions apply with equal force here. The statute's text, combined with the Ninth Circuit's decisions in *Syed* and *Gilberg*, foreclose Winco's arguments that FCRA allows employers to combine the consumer report and investigative consumer report disclosures. *See Gilberg*, 913 F.3d at 1175 ("*Syed* considered the standalone requirement with regard to *any* surplusage." (emphasis added)). Thus, Mitchell has adequately alleged a violation of the standalone disclosure requirement in Section 1681b(b)(2)(A)(i).[1]

### 4. The Winco Disclosure Is Clear and Conspicuous

Although the violation of the standalone disclosure requirement is sufficient, in and of itself, for Mitchell's claim to proceed, the Court will briefly add that the Winco Disclosure meets the statute's "clear and conspicuous" requirements. In the Ninth Circuit, a disclosure is "clear" under the FCRA when it is "reasonably understandable."

---

[1] As suggested in this decision, I agree with my colleagues in the *Walker* and *Coleman* cases that combining the consumer report and investigative consumer report is wholly consistent with the purpose and intent of the FCRA. Unfortunately, it is not consistent with the statutory language. It is my understanding that the *Walker* decision is currently on appeal before the Ninth Circuit. Thus, the Circuit will soon have the opportunity to address the precise issue presented here. If the *Walker* decision is affirmed – as I hope it is – WINCO can, and should, file a motion to reconsider my decision here.

Case 1:16-cv-00076-BLW Document 61 Filed 09/09/19 Page 8 of 14

*Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010).[2] And a disclosure is conspicuous when it is "noticeable to the consumer." *Gilberg*, 913 F.3d at 1176 (internal quotation and citation omitted). The Ninth Circuit has analyzed each prong separately and has "assume[d] …, without deciding, that clarity and conspicuousness under FCRA present questions of law rather than fact." *Id*. at 1177.

Beginning with the inquiry regarding whether the document is "clear," the Court acknowledges, as it has discussed above, that the Winco Disclosure impermissibly combines the consumer report and investigative consumer report disclosures. The Ninth Circuit in *Gilberg* found that the disclosure at issue was unclear because (1) "the disclosure form contains language that a reasonable person would not understand" and (2) "the disclosure would confuse a reasonable reader because it combines federal and state disclosures." *Id.* Thus, under *Gilberg*, Mitchell has successfully alleged facts analogous to the second half of *Gilberg*'s test.

But, the Winco Disclosure is distinguishable from the disclosure in *Gilberg* because it does not "contain[] language that a reasonable person would not understand." *Id.* To the contrary, the Winco Disclosure, with the exception of its use of the term "and/or," is a model of clarity. It contains eight concise sentences that (1) indicate that Winco will be collecting information on the applicant, (2) informs the applicant who will be collecting the information, (3) details what and how the information will be obtained,

---

[2] Although *Rubio* involved a Truth In Lending Act claim, the Ninth Circuit has held that lower courts may draw upon the UCC and TILA in interpreting the FCRA. *Gilberg*, 913 F.3d at 1176.

and (4) notifies the applicant that he or she has a right to request the data collected. Dkt. 46-1 at 3. All of that information is necessary to sufficiently disclose to the applicant the scope of the data collection activity and their rights with respect to what is collected.[3] Unlike the *Gilberg* disclosure which contained vague phrases like "all encompassing," *Gilberg*, 913 F.3d at 1177, the sole potentially ambiguous term in the Winco Disclosure is the word "report" which was likely left intentionally undefined so as to make clear that it covered both consumer reports and investigative consumer reports. Also, unlike the *Gilberg* disclosure, there are no incomplete sentences in the Winco Disclosure. *Id*. Thus, as a matter of law the Court concludes that the Winco Disclosure was "reasonably understandable," *Rubio*, 613 F.3d at 1200, and therefore "clear" under Section 1681b(b)(2)(A)(i) of the FCRA.[4]

The Court also finds that the Winco Disclosure was "conspicuous" as a matter of law pursuant to Section 1681b(b)(2)(A)(i) of the FCRA. Mitchell does not appear to

---

[3] Part of my struggle with this case is that, frankly, the Winco Disclosure is a better method of disclosure than the method put in place by Congress. Under Congress's view, as embodied by the statute, it is necessary to present two separate disclosures indicating that the company intends to collect a consumer report and an investigative consumer report. As I discussed above, there is significant, but not absolute, overlap between those two categories. Thus, prospective employees are presented with two forms which any non-lawyer would almost certainly interpret as requesting the exact same thing. Conversely, the Winco Disclosure neatly and concisely details the complete scope of the information that Winco intends to obtain in one location. In short, the Winco Disclosure obviously serves the underlying purpose of the FCRA far better than the system put in place by Congress. Fixing that issue, however, is not up to me; I am constrained by the wisdom (or lack thereof) of Congress, as reflected in the statute.

[4] During oral argument, counsel for Mitchell suggested that the combining of the consumer report and investigative consumer report disclosures, by itself, created confusion. I do not agree. Both disclosures unambiguously point in the same direction – warning the applicant that Winco would obtain background reports, who would conduct the reports, and what rights the applicant had with regard to those reports. Moreover, the same combined disclosure was involved in the *Gilberg* case, and while the court there found that the disclosure was ambiguous and fatally unclear for other reasons, they did not take issue with any lack of clarity created by the combining of the two disclosures.

MEMORANDUM DECISION AND ORDER - 9

seriously contest this in her briefing, but for the sake of completeness the Court notes that the Winco Disclosure is contained within a single form with a bold all caps header labeling the document as a disclosure. Dkt. 46-1 at 3. The paragraphs sensibly break out the different topics addressed and provide sufficient whitespace such that the Winco Disclosure does not appear cluttered or intimidating to the reader. *Id.* Accordingly, the Winco Disclosure is "conspicuous" in accordance with Section 1681b(b)(2)(A)(i).

5. **Mitchell Fails to Plausibly Allege that Winco's Disclosure Is a Willful Violation of the Statutory Scheme**

Mitchell fails to adequately allege that Winco willfully violated § 1681b(b)(2)(A)(i). Paragraph 56 of Mitchell's Second Amended Complaint contains the information relevant to Mitchell's allegation of willfulness. Dkt. 46. In summary, Mitchell alleges that Winco's failure to comply with the statute was willful because (1) the FCRA's disclosure requirement was unambiguous, (2) Winco is a large corporation with sophisticated counsel, and (3) Winco had access to judicial and administrative guidance that made it objectively unreasonable to combine the consumer report disclosure and the investigative report disclosure. *Id.* at ¶ 56.

Under the FCRA, statutory damages are allowed where the defendant "willfully fails to comply with any requirement imposed." § 1681n(a). A defendant acts willfully where it either knowingly or recklessly fails to comply with an FCRA requirement. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). The United States Supreme Court in *Safeco* defined the inquiry regarding recklessness in the following way:

> a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but

MEMORANDUM DECISION AND ORDER - 10

shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

*Id.* at 69. In short, to obtain damages under section 1681n(a), a plaintiff must plausibly allege that the erroneous interpretation used by the defendant was "objectively unreasonable"[5] in light (1) guidance from the judiciary, (2) guidance from the Federal Trade Commission, and (3) the clarity of the statutory text. Alleging mere negligence is insufficient to plausibly allege willfulness. *Syed*, 853 F.3d at 505. The Court decides this issue as a matter of law. *Id.*

In determining the issue of willfulness, it is significant that no district or appellate court in the United States has held that combining just the consumer report and investigative report disclosures into a single document violates § 1681b(b)(2)(A)(i) of the FCRA. To the contrary, at least one district court has specifically found that combining the two disclosures does not violate the statute. *See Walker v. Fred Meyer, Inc.*, No. 3:17-CV-1791-YY, 2018 WL 3090199, at *2 (D. Or. June 21, 2018) *appeal docketed* No. 90-567 (9th Cir. July 20, 2018). Furthermore, it is persuasive that the disclosures in *Syed* and *Gilberg* both combined the consumer report disclosure and investigative consumer report disclosure. *See Gilberg*, 913 F.3d at 1178 (Disclosure included as Appendix A.); *Syed*, 853 F.3d at 508 (Disclosure included as Appendix A.). In neither case did the

---

[5] The Supreme Court in *Safeco* "did not foreclose the possibility that a party's subjective interpretation of the FCRA may be relevant in some circumstances." *Syed*, 853 F.3d at 506 n.7 (citing *Safeco*, 551 U.S. at 70 n.20). But, the *Safeco* decision makes clear that where an interpretation of the FCRA that a defendant relies upon is objectively reasonable, the subjective intent of the defendant is irrelevant. 551 U.S. at 70 n.20

MEMORANDUM DECISION AND ORDER - 11

panel find that such a combination violated § 1681b(b)(2)(A)(i).[6]

Guidance issued from a staff member of the Federal Trade Commission also weighs heavily in Winco's favor. Mitchell relied in her briefing on *FTC Advisory Opinion to Willner* (Mar. 25, 1999) *available at* https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-willner-03-25-99. That advisory opinion did suggest that "the surest way for an employer to comply, of course, would be to provide the [consumer report] notice and the [investigative consumer report] notice in separate documents." *Id.* However, the advisory opinion also indicates that "we believe that an employer may combine only a very limited [investigative consumer report disclosure] with the general [consumer report disclosure] without running afoul of the latter section's requirement that the required disclosure be in a stand-alone document." *Id.* Thus, Winco's investigative report disclosure satisfied the FTC's guidance and interpretation of the statute, if it was "very limited" and did not overshadow the consumer report disclosure. An employer, positioned as Winco was in 2015, cannot be deemed to have acted willfully in concluding, correctly or incorrectly, that the investigative report disclosure that it added to the consumer report disclosure was "very limited" and therefore satisfied the FTC's guidance.

Finally, *Safeco* instructs the Court to turn to the text of the statute to determine if it

---

[6] The Court is mindful that *Walker, Syed*, and *Gilberg* all post-date the April 2015 time-period in which Mitchell was provided with the Winco Disclosure. Dkt. 46 at ¶ 17. The Court refers to those decisions not for the purpose of showing that Winco had notice that combining the disclosures was permissible, but because they indicate that a number of courts have considered the statutory language and concluded, directly or by implication, that doing what Winco did in this case does not violate the statute.

MEMORANDUM DECISION AND ORDER - 12

was clear or, in Justice Souter's words, "pellucid." 551 U.S. at 70. The Court agrees with Mitchell that the statute means what it says by including the word "solely." But, the weight of this word was not obvious at the time the Winco Disclosure was drafted. Statutory interpretation is a difficult business. The fact that the *Gilberg* and *Syed* panels, Judge Simon in *Walker*, and the FTC staff member concluded, explicitly or implicitly, that the word "solely" does not preclude combining the two disclosures, assuredly immunizes Winco from any claim that it acted willfully or recklessly in reaching the same conclusion. At the very most, Winco's failure to appreciate the impact of the word "solely" could be considered negligent. Negligence, however, is insufficient to plausibly allege willfulness. *Syed*, 853 F.3d at 505. Accordingly, the Court concludes as a matter of law that Winco did not act willfully in violating the FCRA.

## ORDER

IT IS HEREBY ORDERED:

1. Winco's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 49) is **DENIED IN PART** with respect to Mitchell's claim under Section 1681b(b)(2)(A)(i).

2. Winco's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 49) is **GRANTED IN PART** with respect to Mitchell's claim for statutory damages under Section 1681n(a).

3. Mitchell's Motion for Leave to Conduct Discovery (Dkt. 51) is **GRANTED**. Within fourteen (14) days of the issuance of this Memorandum Decision and Order, the Parties will file a stipulated case

management order and litigation plan. In the event the Parties cannot reach a stipulation, they are instructed to meet and confer by telephone with the Court's clerk.

4. The Clerk of the Court is directed to administratively terminate the motion associated with docket entry 56. A motion appears to have been inadvertently created along with Winco's opposition to Mitchell's Motion for Leave to Conduct Discovery.

DATED: May 9, 2019

B. Lynn Winmill
U.S. District Court Judge